# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JANUARY LITTLEJOHN AND
JEFFREY LITTLEJOHN,**

      Plaintiffs,

v.                                                      **Case No.: 4:21-cv-00415-MW-MJF**

**SCHOOL BOARD OF LEON COUNTY
FLORIDA, ROCKY HANNA,
individually and in his official capacity as
Superintendent of Leon County Schools,
and KATHLEEN RODGERS,
individually and in her official capacity as
Assistant Superintendent Equity Officer
and Title IX Compliance Coordinator for
Leon County Schools,**

      Defendants.

_____/

## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

Defendants, **SCHOOL BOARD OF LEON COUNTY FLORIDA,**

**ROCKY HANNA**, individually and in his official capacity as Superintendent of

Leon County Schools, and **KATHLEEN RODGERS**, individually and in her

official capacity as Assistant Superintendent Equity Officer and Title IX Compliance

Coordinator for Leon County Schools, pursuant to Rule 12(b)(6), Fed. R. Civ. P.,

move to dismiss the Complaint and, in support hereof, state as follows:

### *Introduction*

The Complaint alleges that the Plaintiffs were not notified of discussions had with their child concerning gender identity issues at school in violation of the law. Taking the facts alleged as true, no action of the Defendants violated any law.

There are many bases for dismissal of the Complaint. First, the Complaint is a shotgun pleading. Each count incorporates every preceding allegation rendering it a classic shotgun pleading that must be dismissed.

While a defendant should not be required to plead a plaintiff's case to respond to it, repleading here is futile. Plaintiffs assert claims under 42 U.S.C. § 1983, against the School Board, Superintendent Hanna and Assistant Superintendent Rodgers in their individual and official capacities. The official capacity claims are nothing more than against the School Board, and therefore they must be dismissed as redundant.

Substantively, Plaintiffs' Section 1983 claims, which argue that the Defendants' actions abridged their rights to substantive due process under the Fourteenth Amendment, and specifically infringe on their rights to familial privacy, and to direct their child's education and mental health and welfare, fail because none of the actions alleged in the Complaint actually burdened any of Plaintiffs' rights. Plaintiffs do not allege any behavior that is "conscience-shocking" in a constitutional sense sufficient to establish a substantive due process violation. Similarly, Plaintiffs are unable to establish that any right they enjoy under the Fourteenth Amendment

extends to a constitutional obligation on the part of School Board staff to affirmatively inform parents of their child's name and pronoun preferences or of their child's gender identity.

If anything, that right was not clearly established at the time of the purported violations, meaning Superintendent Hanna and Assistant Superintendent Rodgers should be dismissed from this action entirely under the doctrine of qualified immunity.

Plaintiffs' claims under Florida Statutes and the Florida Constitution fair no better. Plaintiffs' state statutory claims, brought pursuant to the newly-enacted Florida Parents' Bill of Rights and a statute that removed the disability of nonage for persons aged 18 and 21, are not viable because neither statute creates a private enforcement action. Plaintiffs' claims under the Florida Constitution seek improper relief, name inappropriate parties, and fail to raise viable claims for an invasion of their right of privacy or a violation of their substantive due process rights.

### ***Facts[1]***

Plaintiffs are the parents of A.G., a minor child enrolled in a school in the School Board's district. (Doc. 1, p. 15). A.G. was enrolled at, and attended, Deerlake Middle School during the most relevant time periods to the Complaint. (*Id.*). A.G. is

---

[1] The following facts are from the Complaint. No part of this motion or its factual recitation should be deemed an admission the facts pled are true.

not a named party. (*Id.* at p. 1). Rather, A.G.'s parents are suing the Defendants for violations of their own rights purportedly held under state and federal law. (*Id.*).

As the 2020-2021 school year approached, A.G. asked Plaintiffs to be referred to by the name "J" and by "they/them" pronouns. (*Id.* at p. 16). Plaintiffs said A.G. could use the "J" as a nickname at school but not be referred to by the pronouns "they/them." (*Id.*). A.G. had previously come out to Plaintiffs as potentially non-binary. (*Id.*).

The crux of the Complaint revolves around the fall semester of the 2020-2021 school year, after this conversation between A.G. and Plaintiffs took place, and principally on a meeting at school on September 8, 2020 involving A.G. and School Board staff, but not the Plaintiffs. (*Id.* at pp. 17-25). Plaintiffs assert that at the September 8th meeting, Deerlake staff, including A.G.'s school counselor, developed a support plan for A.G. that touched on topics including preferred names, pronoun use, and room sharing on field trips. (*Id.* at pp. 24-25). Plaintiffs assert that teachers and staff at Deerlake had been told refer to A.G. as "J" and with the pronouns "they/they" without their involvement or consent and contrary to their requests. (*Id.* at p. 17-18, 21, 23-25). There is no allegation in the Complaint that this was contrary to the wishes of Plaintiffs' child or that any School Board employee coerced, encouraged, or forced Plaintiffs' child to participate in the meeting or coerced, encouraged, or forced Plaintiffs' child to keep anything from Plaintiffs.

Plaintiffs allege the actions of School Board staff in this regard were taken pursuant to a version of Leon County Schools Lesbian, Gay, Bisexual, Gender Nonconforming and Questioning Support Guide ("Guide"). (Doc. 1-1). The Guide states that the Leon County School District strives to "ensure that students are healthy, present, and positive members of a safe learning community." (Doc. 1-1, p. 3).

Plaintiffs characterize the Guide's content in varying ways, but its actual contents provide its best evidence. Plaintiffs primarily take issue with one of the questions-and-answers in the guide which provides:

> **Q. A student has exhibited behavior in school leading administrators or teachers to believe the student is LGBTQ+. Should the parents or legal guardians be notified?**
>
> A. No. Outing a student, especially to parents, can be very dangerous to the students health and well-being. Some students are not able to be out at home because their parents are unaccepting of LGBTQ+ people out. As many as 40% of homeless youth are LGBTQ+ many of whom have been rejected by their families for being LGBTQ+. Outing students to their parents can literally make them homeless.

(*Id*. at p. 15). Plaintiffs also object to various portions of the "Leon County School District Transgender/Gender Nonconforming Student Support Plan" attached to the Complaint. Plaintiffs object to portions of this document purporting to task School Board staff with inquiring whether parents or legal guardians are aware of a student's gender transition and whether they support it, and also take that information into account when considering the student's privacy interests. (*Id.* at pp. 19-24). The

Complaint's majority recounts dialogue between Plaintiffs and Superintendent Hanna and Assistant Superintendent Rodgers concerning updates to this Guide's question-and-answer portion.

Plaintiffs do not allege the School Board did not sufficiently involve them in any aspect of their child's education post-dating the September 8th meeting or that any other meeting occurred involving their child without their involvement. (*See* Doc. 1). With respect to that meeting, and the core of Plaintiffs' claims, Plaintiffs essentially argue that they should have been informed and involved in these gender identity discussions had at school and that the failure to inform violated their rights under the United States and Florida Constitutions, and provisions of Florida law. (*See id.*).

The following charts the Complaint's counts:

| Count | Title | Defendants |
|---|---|---|
| I | Violation of Section 1983 and specifically of Plaintiffs' Substantive Due Process Right to Direct the Education and Upbringing of Their Children under the U.S. Constitution | All |
| II | Violation of Section 1983 and specifically of Plaintiffs' Fundamental Right to Direct the medical and Mental Health Decision-making for their Children Under the U.S. Constitution | All |
| III | Violation of Section 1983 and specifically Plaintiffs' Right to Familial Privacy Under the U.S. Constitution | All |
| IV | Violation of Plaintiffs' Right to Privacy Under Article 1, §23 of the Florida Constitution | All |

6

| V | Violation of Plaintiffs' Right to Substantive Due Process under Art. I, §9 of the Florida Constitution | All |
| VI | Violation of Chapter 1014 of the Florida Parents Bill of Rights | School Board |
| VII | Violation of §743.07, Fla. Stat., for abridging Plaintiffs' right to choose medical treatment for their child | All |

None of the counts have merit and the Complaint should be dismissed.

### ***Argument[2]***

#### I.   *The Complaint is a Shotgun Pleading*

Rule 8 of the Federal Rules of Civil Procedure sets forth the general rules of pleading. Rule 8(a)(2) instructs pleaders to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) instructs that "each allegation must be simple, concise, and direct ..." The purpose of Rule 8 is to provide a defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under Rule 10(b) of the Federal Rules of Civil Procedure a party must "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and "[i]f doing so would

---

[2] Because this Court is well-versed in the standard for adjudicating a motion to dismiss, it is omitted.

promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense."

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings "wreak havoc on the judicial system" by "divert[ing] already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (quotation and citation omitted).

"Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act." *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019) (citing *Weiland*, 792 F.3d at 1321–23). Shotgun pleadings are disfavored because they make it difficult, if not impossible, for a defendant to have fair notice of the claims against it and to respond in kind. *See Weiland*, 792 F.3d at 1323. Compliance with Rules 8(a)(2) and 10(b) is necessary so "the court can determine which facts support which claims and whether the plaintiff has stated any

claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Id.* at 1320-21.

Here, Plaintiffs' Complaint is a classic shotgun pleading because it incorporates each and every factual allegation along with each and every one of the paragraphs contained in the preceding counts into each count. (*See* Doc. 1 at pp. 37, 41, 45, 48, 50, 54, 56). Complaints, like this one, where each count incorporates each preceding count, are textbook examples of a shotgun pleading. *Weiland*, 792 F.3d at 1321 (explaining that complaints incorporating the preceding counts into each count are not in compliance with the Rules of Civil Procedure); *Davis v. Main St. Fam. Pharmacy, LLC*, No. 5:16CV45-MW/GRJ, 2016 WL 9185284, at *1 (N.D. Fla. Apr. 18, 2016) (dismissing complaint as a shotgun pleading where each count incorporated all of the allegations of the counts before it).

Truth be told, the Complaint arguably qualifies as a shotgun pleading for numerous other reasons. For example, six of the seven counts are brought against all defendants, but those counts fail to specify whether they are brought against the individual defendants in their individual or official capacities or both. There is only one *ad damnum* clause that conceivably encompasses and incorporates all of the preceding counts, but as will be set forth herein, the damages pled are not available under each and every cause of action. Such prayers for relief indicate a shotgun pleading. *See Allen v. Cypress Vill., Ltd.*, No. 3:10-CV-994-WKW, 2011 WL

9

1667055, at *2 (M.D. Ala. May 3, 2011)(citing *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Comty. Coll.*, 77 F.3d 364, 366 (11th Cir.1996) and holding that complaint that incorporated every claim into the prayer for relief was a shotgun pleading.). Finally, the Complaint is 63 pages and contains 207 paragraphs, exclusive of the prayer for relief. Many of these paragraphs contain legal conclusions, belabored recitations of elements of Guide and back and forth between School Board staff and the Plaintiffs about the Guide, and excerpts of correspondence.

In any event, Plaintiffs' Complaint is at the very least a shotgun pleading because it incorporates into each count every factual allegation of the Complaint, including all of the preceding counts. Dismissal is therefore warranted. *See U.S. ex rel. Atkins v. McInteer*, 470 F. 3d 1350, 1354 n.6 (11th Cir. 2006) ("When faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader."); *see also Vibe Micro, Inc. v. Shabanets*, 87 8 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.").[3]

---

[3] To the extent a more definite statement is the appropriate remedy, Defendants also move for a more definite statement under Fed. R. Civ. P. 12(e).

II.   *Plaintiffs' Claims Against Superintendent Hanna and Assistant Superintendent Rodgers in their Official Capacities are Duplicative of their Claims Against the School Board*

"[O]fficial capacity suits generally represent only another way of pleading an action against the entity of which an officer is an agent." *Brandon v. Holt,* 469 U.S. 464, 472 n. 21 (1985). Suits against an individual acting in his official capacity impose liability on the governmental entity the official represents. *See Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon,* 469 U.S. at 471–72).

"Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly...." *Busby,* 931 F.2d at 776. Thus, when a suit is filed against both a governmental entity and its officers and employees in their official capacities, it is appropriate for a court to dismiss the named individual defendants in their official capacities as "redundant and possibly confusing to the jury." *Id.* The same rationale applies to the state law claims pled against the individual defendants in their official capacities. *See Braden Woods Homeowners*

*Ass'n, Inc. v. Mavard Trading, Ltd.*, 277 So. 3d 664, 671 (Fla. 2d DCA 2019). *See also Kubany by Kubany v. School Bd. of Pinellas County*, 818 F. Supp 1504, 1507 (M.D. Fla. 1993) (filing a Section 1983 claim against school board members and principal in their official capacities was improper, because the plaintiff had sued the school board directly).

Here, all of the counts brought against the individual defendants, ostensibly in their official capacities, are also lodged against the School Board. These redundant claims in Counts I-V and VII should be dismissed.

III.   *Defendants are not Liable for any Alleged Violation of Section 1983*

Plaintiffs' substantive due process claims brought pursuant to Section 1983 contained in counts I through III fail to state a claim with respect to any defendant. While Plaintiffs' Complaint contains buzzwords sounding in a substantive due process claim, the facts pled in support fall short of establishing any Constitutional violation.

Plaintiffs bring claims for interference with parental rights secured by the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 65-66 (2000); *see also Pierce v. Soc'y of Sisters,* 268 U.S. 510 (1925) (recognizing "liberty of parents and guardians to direct the upbringing and education

of children under their control"). State interference with the parent-child relationship may give rise to a Section 1983 action for damages. *See Morrison v. Jones*, 607 F.2d 1269, 1275-76 (1979). "Absent a 'compelling state interest' and an infringement 'narrowly tailored' to serve that interest, the government may not violate" a fundamental right. *Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1297 (11th Cir. 2019). However, "[s]ubstantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) (citing *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013)).

Nevertheless, Plaintiffs face a high bar because they are asserting a substantive due process violation. *Maddox v. Stephens,* 727 F. 3d 1109, 1119 (11th Cir. 2013)*.* Indeed, "the Constitution does not protect against all encroachments by the state onto the interests of individuals," *Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir. 2005). "[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox*, 727 F.3d at 1119 (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)) (internal quotation marks omitted). "A deprivation is of constitutional stature if it is undertaken for

improper motive and by means that were pretextual, arbitrary and capricious, and without rational basis." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (citation omitted).

"Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor must be egregious – that is, shock the conscience – the time the government actor made the decision." *Waddell*, 329 F.3d at 1305. Conduct intended to injure and unjustified by any government interest is most likely to be conscience-shocking. *Id.* Courts must conduct an "exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Cnty. of Sacramento*, 523 U.S. at 850.

Significantly, "the Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Maddox*, 727 F.3d at 1120 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). The Eleventh Circuit explained in *Maddox v. Stephens* that cases involving the assertion of a violation of parental liberty interests is a murky area of unenumerated constitutional rights and that courts thus must be careful and exercise the utmost care in analyzing claims in this subject area because the judiciary's constitutionalizing purported violations of parental liberty interests takes

14

governmental decisionmaking outside the arena of public debate and legislative action. *Id.*

That is especially true here because the case involves school administration. Public education of children is unquestionably entrusted to the control, management, and discretion of school boards. *Epperson v. Arkansas,* 393 U.S. 97, 104 (1968). "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Id*. And the state of course, separate from any parental interest, has an interest in the wellbeing of its youth. *Ginsberg v. New York*, 390 U.S. 629, 640 (1968).

Plaintiffs' Section 1983 claims must be dismissed as to all Defendants because no constitutional rights of the Plaintiffs are implicated by any of Defendants' alleged actions. The crux of this case is Plaintiffs' contention they had the right to be informed of discussions had between School Board personnel and their child concerning gender identity issues, such as preferred names and pronouns. The problem is there is no Constitutional liberty interest requiring such notification. Indeed, in cases involving a viable allegation of interference with parental liberty interests the state has either required or prohibited some activity. These cases focus on an element of state coercion missing here.

Take for instance the cases cited by Plaintiffs for the purposes of establishing the existence of a parental liberty interest. *Troxel v. Granville*, involved parental liberty interests but in the context of the state's interference with the visitation rights of a minor child. 530 U.S. at 67-73. Similarly, *Parham v. J. R.*, involved state procedures governing the admission of children to psychiatric hospitals. 442 U.S. 584 (1979). *Prince v. Massachusetts*, involved a situation where child labor laws were construed to prohibit sales of religious tracts by children which the Supreme Court found unreasonably interfered with parental rights to raise those children. 321 U.S. at 166. There are numerous other cases, and the central point of them, is that the interference of parental rights is only actionable where the state is requiring or prohibiting some activity. *See*, *e.g.*, *Meyer v. Nebraska*, 262 U.S. 390, (1923)(striking down state's prohibition on teaching any language other than English).

Here, there is no allegation in the Complaint that Plaintiffs' child was forced to participate in a meeting with school personnel to discuss gender identity issues. There is no allegation school personnel directed, coerced, or encouraged, Plaintiffs' child to conceal anything from Plaintiffs, or that there was any attempt to do so. There is no allegation Plaintiffs' child requested parental involvement in meetings with school personnel. This sets this case apart from others finding interference with parental liberty interests secured by the Fourteenth Amendment. Indeed, Plaintiffs'

claims fail for the simple reason that they cannot show how their rights were burdened by state action.

*Doe v. Irwin*, a case out of the Sixth Circuit Court of Appeals, is instructive. 615 F.2d 1162 (6th Cir. 1980). At issue in *Doe*, was a condom distribution program for minors set up by a state-run clinic. Parents challenged the program arguing it interfered with their parental rights secured by the Due Process clause because it provided no notice to parents their minor children were using the clinic's services. The Sixth Circuit found there was no unconstitutional interference with parental rights stressing the fact the program was completely voluntary and there was no requirement minors avail themselves of the services of the birth control clinic, nor was there any prohibition on parents participating in decisions related to sexual activity or birth control concerning their minor children. *Id.* at 1166–69. Cogently, the Sixth Circuit summed up the issue thusly:

> In the absence of a constitutional requirement for notice to parents, it is clearly a matter for the state to determine whether such a requirement is necessary or desirable in achieving the purposes for which the Center was established. There is no basis for a federal court to impose conditions in the absence of an overriding constitutional requirement.

> The desire of the parents to know of such activities by their children is understandable. However the only issue before the district court and this court is whether there is a constitutional obligation on the Center to notify them. The record before us does not establish that the Center infringes a constitutional right of the plaintiffs by its practice of distributing contraceptive devices and medication to unemancipated minors without notice to their parents.

*Id.* at 1169.

There are numerous cases that stand for the proposition that a failure on the part of school staff to notify parents of issues involving their children does not amount to an infringement of parental liberty unless there is an element of coercion involved. *See, e.g.*, *Curtis v. Sch. Comm. of Falmouth*, 420 Mass. 749, 754–60, 652 N.E.2d 580, 584–87 (1995)(holding that voluntary condom distribution program in schools did not violate parental liberty interests under the Fourteenth Amendment because there was no coercion by the state, and no requirement that anyone participate in the program or prohibition of a constitutional nature); *Reardon v. Midland Cmty. Sch.*, 814 F. Supp. 2d 754, 767–72 (E.D. Mich. 2011)(holding that alleged counseling by school counselors that encouraged minor child to run away did not violate parents substantive due process rights because counselors did not exert coercive influence over minor child but merely provided counseling to her upon her request). *Doe v. Irwin, supra,* illustrates this point, as it involved coercion that is lacking in the allegations of the Complaint.

Parents certainly have liberty interests in the upbringing and education of their children, but it is not unlimited. Cases that touch upon where these rights merge with the state's provision of education have interpreted the right only to mean that the state could not make public education mandatory. *See*, *e.g.*, *Runyon v. McCrary*, 427 U.S. 160 (1976)(holding that constitutional parental liberty rights do not interfere with school rights to determine the values and standards underlying educational

programs). Indeed, courts have rejected attempts by parents to establish a fundamental right to dictate curriculum and program choices at public schools where they send their children. *Thomas v. Evansville-Vanderburgh School Corp.*, 258 Fed.Appx. 50, 53-54 (7th Cir. 2007) ("We agree that [plaintiff] has a fundamental right, secured by the due process clause, to direct the upbringing and education of her child.... But a right to choose the type of school one's child attends, or to direct the private instruction of one's child, does not imply a parent's right to control every aspect of her child's education at a public school.") (citing *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204-07 (9th Cir. 2005); *Leebaert v. Harrington*, 332 F.3d 134, 140-42 (2d Cir. 2003); *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995); *cf. Wisconsin v. Yoder*, 406 U.S. 205, 232-33 (1972)). Indeed, both the Sixth and Ninth Circuits have held that nothing in the Constitution prohibits public schools from making curriculum choices or to even direct the school administration more generally. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1230–33 (9th Cir.), cert. denied, 141 S. Ct. 894 (2020)

An Eleventh Circuit case that did find "conscience-shocking" behavior in the context of a school official's actions sufficient to support a substantive due process violation of parental liberty interests highlights show how different that case is from this one. In *Arnold v. Bd. of Educ. of Escambia Cnty. Alabama,* a school official coerced a child into seeking an abortion. 880 F.2d 305 (11th Cir.1989), *abrogated*

*in part by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993). The minor children that conceived a child, along with their parents, sued the school district contending that their constitutional rights were infringed.

Crucially, the parents alleged that the school official coerced the minor mother into obtaining an abortion and to refrain from discussing it with her parents, assisted in procuring the abortion, and hired the students for menial jobs so that they could pay for the abortion. While the Eleventh Circuit held these actions could constitute infringement on the substantive due process rights of the parents, the key to that holding was the school officials' coercive pressure on a child to seek an invasive and controversial medical procedure, and to conceal that procedure and the condition that led to it from the child's parents. *Id.* at 312-314.[4]

No coercion has been alleged here. There is no allegation that Plaintiffs' child was required to do anything or coerced into taking any action. Plaintiffs' child was not required, coerced, or encouraged to conceal anything from Plaintiffs.

Frankly, no action of the School Board or its staff or officials burdened or infringed on any rights that Plaintiffs enjoy under the Due Process clause. Certainly,

---

[4] Indeed, the Eleventh Circuit's holding in *Arnold* reinforces that coercion is necessary to establish a substantive due process violation in this context. *See Doe,* 615 F.2d at 1168.

no action of the School Board or its staff was "conscience-shocking" sufficient to establish a Constitutional violation, warranting dismissal of the Section 1983 claims. *See Doe*, 615 F.2d at 1169 (finding no need to consider whether there was a compelling state interest involved because there was no unconstitutional infringement of parental liberty interests).

IV.   *Superintendent Hanna and Assistant Superintendent Rodgers are Entitled to Qualified Immunity on Plaintiffs' Section 1983 Claims*

Qualified immunity offers complete protection for government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Critical public policy considerations, such as the "social costs [associated with claims against public officials] including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office" are bedrock principles of the qualified immunity defense. *Id.* at 814. Thus, "courts should think long and hard before stripping defendants of immunity." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*). "Because qualified immunity is a defense not only from liability, but also from suit," it must be resolved "at the earliest possible stage in litigation." *Pearson v. Callahan*,

555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam)).

Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law," *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). It is a "muscular doctrine that impacts on the reality of the workaday world as long as judges remember that the central idea is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—*before* they act or do not act—if their conduct will give rise to damage liability for them." *Foy v. Holston,* 94 F.3d 1528, 1534 (11th Cir.1996) (citing *Davis v. Scherer,* 468 U.S. 183, 195 (1984)). "If objective observers cannot predict—at the time the official acts—whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the official deserves immunity from liability for civil damages." *Id.* (citing *Elder v. Holloway,* 510 U.S. 510, 513–15 (1994)).

Qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231. Qualified immunity "operates as a shield against civil damages due to mistaken judgments." *Harris v. Coweta Cty.*, 21 F.3d 388, 390 (11th Cir.1994). Stated differently, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Carroll v.*

22

*Carman*, 574 U.S. 13, 17 (2014) (per curiam).

To receive qualified immunity, a public official must first establish they were "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194. Superintendent Hanna and Assistant Superintendent Rodgers were acting within their discretionary authority as to the acts alleged in the Complaint. "[A] government official proves that he acted within his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotation marks omitted); *see also*, *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (stating an official acts within her discretionary authority where she "perform[s] a legitimate job-related function…through means that [are] within his power to utilize"). The actions alleged by Plaintiff all implicate the discretionary authority of the individual defendants as they focus on actions core to their duties as public officials, managing the affairs of schools within the District, interpreting and applying school practice and policies, and interacting with parents concerning the education of a student in District schools.

Because Superintendent Hanna and Assistant Superintendent Rodgers were acting within their discretionary authority, the burden shifts to Plaintiffs to establish that qualified immunity is inappropriate. *Lumley v. City of Dade City, Fla.*, 327 F.3d

1186, 1194 (11th Cir. 2002). To do so, Plaintiffs must satisfy the following two-part test: (1) that they have alleged a violation of a constitutional right; and (2) that the right was "clearly established" at the time of the misconduct. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 236 and *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)). The steps in the test may be considered in whatever order is deemed appropriate for the case. *Pearson*, 555 U.S. at 241-242. Meaning, this Court can determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all. *See, e.g.*, *Loftus v. Clark–Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).

Superintendent Hanna and Assistant Superintendent Rodgers are entitled to qualified immunity under this framework. As already explained, no constitutional right was violated. At the very least, any such right was not "clearly established" at the time of the violation. A right may be clearly established for qualified immunity purposes in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis,* 561 F.3d at 1291–92 (internal citations omitted). Plaintiffs cannot establish that any purported

constitutional right violated was clearly established in any way.

First, the undersigned can identify no case establishing that the alleged actions of the defendants, as pled, give rise to a constitutional violation. The cases cited in the Complaint purporting to establish these rights are distinguishable as discussed.

Second, the undersigned can similarly identify no broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right of Plaintiffs that was abridged. It is certainly relevant to both inquiries that there are a multitude of cases, already cited and analyzed herein, that hold the exact kind of conduct purported to be unconstitutional was completely lawful. Also relevant is the historical deference that courts give to educational institutions and administrators to make decisions governing school administration. If anything, it is established that school administrators and school boards are typically given wide latitude to run schools, accountable to the will of the local electorate, and that constitutionalizing administrative decision-making in the school sphere is not done lightly.

Finally, no conduct alleged in the Complaint is so egregious that a constitutional right was clearly violated, in the total absence of case law that would put Superintendent Hanna and Assistant Superintendent Rodgers on notice that their conduct was unlawful. Indeed, this third category is "narrow" and "encompasses those situations where 'the official's conduct lies so obviously at the very core of

what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Loftus,* 690 F.3d at 1205 (quoting *Terrell v. Smith,* 668 F.3d 1244, 1257 (11th Cir. 2012)). As discussed, no conduct of any School Board staff "shocked the conscience" in a constitutional sense, and none of the conduct lies at the core of due process clause of the Fourteenth Amendment sufficient for the Plaintiffs to establish that Superintendent Hanna and Assistant Superintendent Rodgers are not entitled to qualified immunity.

"The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Loftus*, 690 F. 3d at 1204 (quoting *Coffin v. Brandau,* 642 F.3d 999, 1013 (11th Cir.2011) (en banc)). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna,* 577 U.S. ——, 136 S.Ct. 305, 308 (2015)). No reasonable person would have known that any action pled in the Complaint violated Plaintiffs' constitutional rights warranting dismissal of the Section 1983 claims against Superintendent Hanna and Assistant Superintendent Rodgers in their individual capacities.

V.   *Plaintiffs' Claims for Violations of Florida Statutes Fail Because those Statutes do not Create a Private Right of Action*

Plaintiffs bring two claims under Florida Statutes. One is lodged against the School Board under Chapter 1014, Florida Statutes, the Florida Parents' Bill of Rights. The second is brought under Section 743.07, Florida Statutes against all Defendants. Neither of these statutes creates a private right of action, warranting dismissal with prejudice of both counts.

The Florida Supreme Court instructs that "[w]hether a violation of a statute can serve as the basis for a private cause of action is a question of legislative intent" and courts "must determine legislative intent from the plain meaning of the statute." *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 23 (Fla. 2004) ("A statute creates a new cause of action if it provides a remedy unavailable under the common law.") (citing *Fla. E. Coast Ry. Co. v. McRoberts*, 111 Fla. 278, 149 So. 631, 632 (1933)). "To discern legislative intent, [courts] look 'primarily' to the actual language used in the statute." *Borden v. East–European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006). "Further, '[w]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent.'" *Id.* (quoting *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005)); *Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1197 (Fla. 4th DCA 2006) (courts may imply a private cause of action "only

where the statutory scheme and statute itself indicate a legislative purpose to do so.").

Here, neither statute forming the basis of Plaintiffs' claims creates a private cause of action. First, Section 743.07, Florida Statutes, merely removes the disability of nonage as to those over 18 except with respect to the consumption of alcoholic beverages. Nothing in the statutory language remotely suggests that parents would have a cause of action under statute to enforce their own rights with respect to the family unit and the rearing of their children.

Similarly, nothing in the language of Chapter 1014, the Parents Bill of Rights, suggests the Legislature intended to permit parents a private cause of action under the statute. In fact, the language suggests otherwise. Section 1014.04(3) states: "[a]n employee of the state, any of its political subdivisions, or any other governmental entity who encourages or coerces, or attempts to encourage or coerce, a minor child to withhold information from his or her parent may be subject to disciplinary action." The Legislature's inclusion of a specific non-private remedy for a statutory violation, here a disciplinary action, and its exclusion of language that even suggests the creation of a private right of action, undercuts any argument that such a private right exists. *See Gunn v. Robles*, 100 Fla. 816, 817, 130 So. 463, 463 (Fla. 1930) ("Where a particular remedy is conferred by statute, it can be invoked only to the extent and manner prescribed."); *Dep't of Professional Regulation v. Florida Society of*

*Professional Land Surveyors*, 475 So. 2d 939 (Fla. 1st DCA 1985) (noting same as *Gunn*); *City of Miami v. Cosgrove*, 516 So. 2d 1125, 1127 (Fla. 3d DCA 1987) (holding that a statute granting a right to injunctive relief did not thereby grant a right to collect damages).

It should also be noted that Section 1014.06(5) imposes criminal liability for some statutory violations. Where a statute imposes criminal liability for violations, this is further evidence of the legislative intent to not create a private civil cause of action to remedy violations of its provisions. *See Mallery v. Norman L. Bush Auto Sales & Serv., Inc.*, 301 So. 3d 361, 363-66 (Fla. 2d. DCA 2020); *Mantooth v. Richards*, 557 So. 2d 646, 646 (Fla. 4th DCA 1990) (holding that a violation of a criminal statute did not afford a civil remedy).

Of course, the Legislature knows how to pass a law that provides for a civil remedy or cause of action and "courts must presume that the Legislature passes statutes with the knowledge of prior existing statutes...." *Knowles v. Beverly Enterprises-Florida, Inc.*, 898 So. 2d 1, 9 (Fla. 2004) (citation omitted). Indeed, the Legislature has provided for private enforcement rights in very similar statutory schemes in language or purpose. *See, e.g.*, § 393.13(5), Fla. Stat. (creating a private cause of action for violations of The Bill of Rights of Persons with Developmental Disabilities).

Surely, the Parents' Bill of Rights was intended to inure to parents' benefit. That is not enough to create a private right of action though. "[L]egislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists where a statute does not expressly provide for one." *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 984 (Fla. 1994). What controls is the Legislature intention to create a private action and nothing in the language of the Parents' Bill of Rights, or Section 743.07 for that matter, remotely indicates the Legislature intended to create such a right. *See Horowitz v. Plantations Gen. Hosp. Ltd. P'ship*, 959 So.2d 176, 182 (Fla. 2007)("The primary guide to our analysis of whether the Legislature intended to impose civil liability is, as in all cases of statutory construction, the actual language used in the statute.").[5] Accordingly, the Court should dismiss Counts VI and VII with prejudice.[6]

---

[5] To the extent Plaintiffs are asserting a common law claim in these counts, they still fail. Common law claims cannot be based on violations of a statute where that statute does not create a private right of action. *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 Fed.Appx. 907, 909 (11th Cir. 2008) (noting that a statute which lacks a cause of action for its violation does not establish civil liability on common law claims); *Curtis v. City of West Palm Beach*, 82 So. 3d 894 (Fla. 4th DCA 2011) (explaining that remedy is limited to what is set forth in the statute and the violation of a statute lacking a private cause of action cannot be a premise for some type of broader claim for damages based solely on the violation of the statute).

[6] There are other bases to dismiss these claims. At least with respect to claims under the Parents' Bill of Rights, Plaintiffs do not plead any facts establishing a violation occurring after the effective date of the statute, July 1, 2021.

*VI.   Plaintiffs' State Constitutional Claims are Not Viable*

Counts IV (Article 1, §23 – Right to Privacy) and V (Article I, §9 – Substantive Due Process) are claims brought directly under the Florida Constitution. (Doc. 1, pp. 50-54). Plaintiffs seek, among other forms of relief, nominal and compensatory damages as well as attorneys' fees and costs. (Doc. 1, p. 61-62). These claims are subject to dismissal for a myriad of reasons.

First, it is axiomatic that a claim for damages for a violation of the Florida Constitution cannot be maintained. *Holcy v. Flagler County Sheriff,* 3:05-CV-1324J-32HTS, 2007 WL 2669219, at *6 (M.D. Fla. Sept. 6, 2007) (Florida constitutional claims do not support claims for damages absent a separate enabling statute). *See also Smith v. Bell*, No. 06-60750, 2008 WL 868253, at **2, 9-10 (S.D. Fla. Mar. 31, 2008) (concluding that "no private cause of action exists under the constitutional right to due process" and no claim for money damages can be maintained for violations of the Florida Constitution); *Hill v. Dep't of Corrs.*, 513 So. 2d 129, 133 (Fla. 1987). Likewise, Article I, §§9 and 23 of the Florida Constitution contain no right to an award of attorneys' fees and costs for a prevailing party. Generally, attorneys' fees are not recoverable in the absence of a statute or contractual agreement authorizing their recovery. *See Bidon v. Dep't of Prof'l Regulation, Florida Real Estate Com'n*, 596 So. 2d 450, 452 (Fla. 1992). There is no such authority for fees here. As such, Counts IV and V should be dismissed.

Second, the Florida Constitution does not create a cause of action against private persons. Therefore, the individual capacity claims in Counts IV and V against Superintendent Hanna and Assistant Superintendent Rodgers should be dismissed. *Blanco v. City of Clearwater, Fla.*, 9 F. Supp. 2d 1316, 1319 (M.D. Fla. 1998). *See also Riggins v. Beseler*, 3:10-CV-1187-J-25JBT, 2013 WL 12086790, at *17 (M.D. Fla. Mar. 26, 2013), *aff'd*, 568 Fed. Appx. 850 (11th Cir. 2014)("a violation of the privacy provision of the Florida Constitution does not serve as a basis for a cause of action against an individual…"); *Garcia v. Reyes*, 697 So. 2d 549, 550 (Fla. 4th DCA 1997)(affirming dismissal of claim under Article I, §9 of the Florida Constitution against and holding, "[t]o allow Garcia to bring a cause of action based on a violation of our state's constitution, where no concomitant duty arises for private citizens, would extend the waiver of sovereign immunity beyond the stated intent of the statute. It would also create a duty of care arising from the state constitution where none has previously existed").

Third, Defendants recognize that parents have a fundamental right to parent their children and that such right is protected through the Florida Constitution. *D.M.T. v. T.M.H.*, 129 So. 3d 320, 335 (Fla. 2013). But nothing about the Defendants' alleged actions interferes with Plaintiffs' right to parent their child. Instead, Count IV surmises that school personnel in Florida have an affirmative duty under the Florida Constitution to notify parents every time their child requests that

their school treat them as a particular gender, refer to them by a preferred name, or address "other matters" related to their gender identity regardless of the circumstances. (Doc. 1 at p. 49, ¶166). The Florida Constitution does not create such a broad duty to provide such notification. *See In re T.W.*, 551 So. 2d 1186 (Fla. 1989)(finding Florida law that required minors to obtain parental consent before getting an abortion to be a violation of minors' rights of privacy under the Florida Constitution). Therefore, Count IV should be dismissed.

Finally, as it pertains to Count V, Florida courts recognize that the due process clause in the Florida Constitution provides no greater protection than the U.S. Constitution. *See Barrett v. State*, 862 So. 2d 44, 47 (Fla. 2d DCA 2003)(case involving alleged procedural due process violation); *Fla. Canners Ass'n v. Fla. Dep't of Citrus*, 371 So. 2d 503, 513 (Fla. 2d DCA 1979) ("We consider the federal and Florida constitutional guarantees as imposing the same standard"). Thus, substantive due process claims arising under the Florida Constitution and U.S. Constitution are analyzed under the same framework. As such, Count V fails for the same reasons as Counts I through III.

## ***Conclusion***

For the foregoing reasons, the Complaint should be dismissed with prejudice.

33

### *Request for Oral Argument*

Defendants request oral argument on this motion. Defendants estimate that one hour is needed for argument.

Respectfully submitted this 29th day of November 2021.

*/s/ Jeffrey D. Slanker*
**JEFFREY D. SLANKER**
Florida Bar No. 100391
jslanker@sniffenlaw.com
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
mspellman@sniffenlaw.com
**TERRY J. HARMON**
Florida Bar No. 0029001
tharmon@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Defendants*

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and contains 7,902 words, which includes headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

*/s/ Jeffrey D. Slanker*
**JEFFREY D. SLANKER**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 29th day of November 2021, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Jeffrey D. Slanker*
**JEFFREY D. SLANKER**