## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## (TALLAHASSEE DIVISION)

January Littlejohn,         )
Jeffrey Littlejohn,          )
            Plaintiffs    )     Case No. 4:21-CV-00415-MW/MJF
                    )
v.                          )
                    )
School Board of Leon County,  )
Florida, Rocky Hanna, individually,  )
and in his official capacity as  )
Superintendent of Leon County  )
Schools, Dr. Kathleen Rodgers,  )
individually, and in her official  )
capacity as Assistant Superintendent,  )
Equity Officer and Title IX  )
Compliance Coordinator for Leon  )
County Schools,  )
            Defendants.  )

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Plaintiffs, January and Jeffrey Littlejohn, by and through their attorneys of record, submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss:

# TABLE OF CONTENTS

INTRODUCTION AND FACTUAL SUMMARY ................................................1

LEGAL ARGUMENT ........................................................................4

  I.  Plaintiffs' Complaint Is Not A "Shotgun" Pleading. ......................................4

  II.  Claims Against Defendants Hanna and Rodgers In Their Official Capacities Are Not Duplicative of Claims Against the School Board..................6

  III.  Plaintiffs Sufficiently Allege Violations of Section 1983. .........................7

    A.  Plaintiffs Sufficient Allege Infringement of Their Fundamental Right to Make Medical and Mental Health Decisions for Their Children. ....................8

    B.  Plaintiffs Have Stated A Claim for Interference with their Fundamental Parental Rights Despite Defendants' Concealment of Facts Regarding Interactions with Their Daughter. ....................................12

  IV.  Defendants Are Not Entitled To Qualified Immunity. ..............................17

    A.  Defendants Cannot Meet Their Burden of Showing They Were Engaged in Discretionary Functions. ..............................18

    B.  Plaintiffs' Allegations Show Defendants Violated Clearly Established Constitutional Rights............................................21

  V.  Florida's Parents Bill Of Rights Includes An Implied Private Right Of Action. ................................................24

  VI.  Plaintiffs Allege Viable State Constitutional Claims.................................30

    A.  Plaintiffs State A Viable Claim for Violation of the Right of Privacy Under Article 1, §23 of the Florida Constitution...............................31

    B.  Plaintiffs State A Viable Claim for Violation of the Right to Substantive Due Process Under Article 1, §9 of the Florida Constitution.........................32

CONCLUSION........................................................................33

WORD COUNT CERTIFICATION ......................................................35

i

CERTIFICATE OF SERVICE ...............................................................36

## TABLE OF AUTHORITIES

**Cases**

*Arnold v. Bd. of Educ. of Escambia County*, 880 F.2d 305 (11th Cir.1989) .... 15, 22

*Beagle v. Beagle,* 678 So.2d 1271 (1996)..................................................31

*Blau v. Fort Thomas Public School District*, 401 F.3d 381 (6th Cir. 2005) ...........10

*Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525 (1st Cir. 1995)......2, 9

*Busby v. City of Orlando* 931 F.2d 764 (11th Cir. 1991) ........................................6

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)...................................................25

*Cort v. Ash*, 422 U.S. 66  (1975)..............................................................25

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998).............................................12

*Courson v. McMillian*, 939 F.2d 1479 (11th Cir. 1991)................................... 19, 24

*D.M.T. v. T.M.H.,* 129 So. 3d 320 (Fla. 2013)........................................................31

*Dream Defenders v. De Santis*, 4:21cv191-MW/MAF (N.D. Fla. Aug. 9, 2021).4, 5

*Epperson v. Arkansas*, 393 U.S. 97 (1968)...............................................................8

*Girard Trust Co. v. Tampashores Development Co.*, 117 So. 786 (Fla. 1928).......26

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...........................................................18

*Hatcher v. Desoto Co. Sch. Dist. Bd. of Ed.* 939 F.Supp.2d 1232 (M.D. Fla. 2013) 7

*Hillcrest Prop., LLP v. Pasco County*, 915 F.3d 1292 (11th Cir. 2019) ................12

*Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016) ....................................12

*Hollis v. School Bd. of Leon County*, 384 So. 2d 661(Fla. Dist. Ct. App. 1980) ......7

*Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004) ................ 3, 17-19

*J.B. v. Fla. Dep't of Child. & Fam. Servs.*, 768 So. 2d 1060 (Fla. 2000)...............32

*Johnson v. Dade County* 1992 WL 466902  (S.D. Fla. 1992)................................15

*Johnson v. Darnell* CASE NO. 1:17-cv-87-MW-GRJ (N.D. Fla. Jul. 13, 2018)......5

*Keating v. City of Miami,* 598 F.3d 753 (11th Cir. 2010)..........................................23

*Kentner v. City of Sanibel*, 750 F.3d 1274 (11th Cir. 2014)....................................12

*Kentucky v. Graham*, 473 U.S. 159 (1985)............................................................6, 7

*Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002).............................................. 18, 21

*Leebaert v. Harrington*, 332 F.3d 134 (2d Cir. 2003) ................................................9

*Loftus v. Clark–Moore*, 690 F.3d 1200 (11th Cir. 2012)..........................................23

*Maddox v. Stephens,* 727 F. 3d 1109 (11th Cir. 2013) ............................................12

*McDonough v. City of Homestead*, 771 Fed.Appx. 952 (11th Cir. 2019)................5

*McGowan v. Maryland*, 366 U.S. 420 (1961) ..........................................................15

*Meyer v. Nebraska*, 262 U.S. 390, (1923) .................................................... 2, 14, 15

*Morrison v. Jones*, 607 F.2d 1269 (9th Cir. 1979) ...................................................12

*N.R. v. Sch. Bd. of Okaloosa Cnty*. 418 F. Supp. 3d 957 (N.D. Fla. 2019) ..............5

*Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) ....................................9

*Parham v. J.R.,* 442 U.S. 584 (1979)....................................................... 2, 11, 14, 22

*Pearson v. Callahan*, 555 U.S. 223 (2009).............................................................23

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) .............................................. 14, 22

*Reese v. JPMorgan Chase & Co*., 686 F. Supp. 2d 1291 (S.D. Fla. 2009).............25

*Robertson v. Hecksel*, 420 F.3d 1254 (11th Cir. 2005) ...........................................12

*School Bd. of Orange Cty. v. Coffey*, 524 So. 2d 1052 (Fla. Dist. Ct. App. 1988) ...6

*Smith v. Piezo Tech. & Prof'l Adm'rs*, 427 So. 2d 182 (Fla. 1983). ................ 25, 26

*Thomas v. Evansville-Vanderburgh Sch Corp.*, 258 Fed.Appx. 50 (7th Cir. 2007) .9

*Troxel v. Granville*, 530 U.S. 57 (2000) .......................................................... 22, 33

*Vazzo v. City of Tampa*, 415 F.Supp.3d 1087 (M.D. Fla. 2019) .............................25

*Von Eiff v. Azicri*, 720 So.2d 510 (1998) ................................................................31

*Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300 (11th Cir. 2003)..........12

*Weiland v. Palm Beach*, 792 F.3d 1313 (11th Cir. 2015)..........................................5

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ................................................................14

**Statutes**

Fla. Stat § 743.07 ................................................................................24

Fla. Stat. §1014.03 ..............................................................................27

Fla. Stat. §1014.04 ........................................................................ 27, 28

## INTRODUCTION AND FACTUAL SUMMARY

Eschewing their roles as school board members and educators, Defendants took on the role of parents and mental health professionals to undercut the decisions of Plaintiffs, one of whom is a mental health professional (Complaint, ¶85), and their retained professional, regarding care for their 13-year-old daughter. Surreptitious meeting(s) with a special needs student developmentally age 10 or 11 (Complaint, ¶59) —in which she was permitted to decide whether her parents would be invited, what name and pronouns she would use, and whether she would use the restroom, undress with, and room with boys or girls—are cast by Defendants as "educational decisions" outside the purview of parental decision-making. (Motion to Dismiss, "MTD," pp. 18-19). However, Defendant Rodgers and School Board member Georgia Bowen have publicly stated that gender identity issues, including names and pronouns, are not merely academic decisions but are critical to children's identity, *i.e.,* their mental health, must be respected by teachers and peers, and must be the subject of advocacy efforts with "unsupportive" parents. (Complaint, ¶¶24, 93). Defendants' written guidance regarding LGBTQ+ children also explicitly states that questions about a child's gender identity are matters of personal and psychological well-being, not matters affecting a child's academic performance. (Complaint, Exhibit A). That being the case, they fall squarely within the parents' fundamental right to make medical and mental health decisions for their child, *Parham v. J.R.,*

442 U.S. 584 (1979), not curriculum choices or school discipline which are the purview of educators, *Meyer v. Nebraska*, 262 U.S. 390, (1923); *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995). Nevertheless, Defendants now claim that creating written guidance and training staff that **under the law** parents are not to be told when their children express questions about their sex or gender identity and are to be deliberately deceived about their children's gender identity "in no way burdened or infringed on any rights Plaintiffs enjoy under the Due Process clause." (MTD, p. 20).

Having prevented Plaintiffs from being informed about meeting(s) with their minor daughter, Defendants are now claiming that Plaintiffs' claims should be dismissed because there are no allegations about whether their daughter was coerced or required to conceal information from her parents. (MTD, p. 20). Defendants directed staff that they could not tell Plaintiffs anything about their daughter's meeting(s) with LCS staff, or the decisions made during the meeting(s), and that the young girl was "protected" under a non-discrimination law that does not include parental notification or input. (Complaint, ¶56). Consequently, Defendants provided Plaintiffs no information regarding who instituted the meeting(s), how many meetings there were, what was said by their daughter or by others in attendance. The only information provided to Plaintiffs after repeated requests was a Transgender Student Support Plan given to them on November 2, 2020.  (Complaint ¶¶ 57-64).

That document offered information on a meeting on September 8, 2020, the participants, and decisions purportedly made by Plaintiffs' daughter at that meeting. (Complaint ¶¶ 71-76). Plaintiffs were told that another private meeting between their daughter and staff was scheduled for November 3, 2020. (Complaint, ¶¶ 65-66). They were not informed whether there had been other meetings with their daughter, let alone who was present or what was said or decided. Nevertheless, Defendants now allege that Plaintiffs' claims should be dismissed because "Plaintiffs' child was not required, coerced, or encouraged to conceal anything from Plaintiffs." (MTD p. 20). It is readily conceivable that a middle school child could feel required, encouraged, or compelled to participate without her parents in a meeting initiated by adults in authority during the school day. Nevertheless, it remains to be disclosed during discovery the extent to which Plaintiffs' daughter "was required to do anything or coerced into taking any action" (*Id.*) because Defendants concealed that information from Plaintiffs. Defendants are not entitled to benefit from their bad faith actions.

Similarly, Defendants cannot hide behind qualified immunity without having to demonstrate, not just assert, that they were acting within their discretionary authority. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). At this stage in the litigation they cannot meet that burden, particularly since they have concealed much of what they did from Plaintiffs. Furthermore, Mr. Hanna cannot escape

liability as a party in his official capacity by alleging that claims against him are duplicative of claims against the School Board. Mr. Hanna is a constitutional officer elected by the people of Leon County, not an employee of the School Board, so there is no duplication of claims that would confuse a jury. (Complaint, ¶11).

Defendants' conclusory allegations regarding the availability of a private right of action under the Parents' Bill of Rights do not comport with Florida Supreme Court precedent, and allegations that Plaintiffs did not allege facts regarding conduct occurring after July 1, 2021 are contradicted by the allegations of the Complaint. (Complaint ¶¶ 108-110). Finally, Defendants' claim that Plaintiffs' Complaint is a "shotgun pleading" strains credulity.

Defendants' motion should be denied. Alternatively, Plaintiffs must be granted leave to amend.

## LEGAL ARGUMENT

### I.      Plaintiffs' Complaint Is Not A "Shotgun" Pleading.

As was true of the complaint in *Dream Defenders v. De Santis*, 4:21cv191-MW/MAF (N.D. Fla. Aug. 9, 2021), "Plaintiffs' Complaint is not a shotgun pleading." "Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple

claims against multiple defendants without specifying which defendant is responsible for which act." *Id.* (citing *McDonough v. City of Homestead*, 771 Fed.Appx. 952, 955 (11th Cir. 2019)). The Eleventh Circuit has explained that incorporating all the factual allegations into each claim can constitute a shotgun pleading when it is nearly impossible for defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief. *Id.* (citing *Weiland v. Palm Beach*, 792 F.3d 1313, 1325 (11th Cir. 2015)). As the Eleventh Circuit held in *Weiland,* the key feature of shotgun pleadings that will subject a complaint to dismissal is that they fail to give defendants "adequate notice" of the claims being bought against them and the supporting factual allegations for each claim. *Id.* (citing *Weiland*, 792 F.3d at 1323).

That is not the case here, as it was not in *Dream Defenders.* Defendants' lengthy and detailed motion to dismiss "belie[s] any assertion that it is virtually impossible for Defendants to understand which allegations of fact are intended to support which claims for relief." *Id.* A multi-count complaint that incorporates the preceding allegations by reference does not *ipso* facto constitute a "shotgun pleading." *Johnson v. Darnell* CASE NO. 1:17-cv-87-MW-GRJ (N.D. Fla. Jul. 13, 2018). "Neither dismissal as a shotgun pleading nor further delay of discovery for re-pleading is justified." *N.R. v. Sch. Bd. of Okaloosa County* 418 F. Supp. 3d 957, 976 n.13 (N.D. Fla. 2019).

## II.     Claims Against Defendants Hanna and Rodgers In Their Official Capacities Are Not Duplicative of Claims Against the School Board.

Defendants disingenuously claim that Mr. Hanna and Dr. Rodgers must be dismissed as defendants in their official capacities because a "§1983 suit against an official of the government in his official capacity is deemed to be a suit against the entity that employs the official." *Busby v. City of Orlando* 931 F.2d 764, 776 (11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). In fact, precedent is not nearly so conclusive as Defendants claim it is.

Defendants' argument that Mr. Hanna should be dismissed pursuant to *Busby* and *Graham* is fatally flawed because Mr. Hanna is not an employee of the School Board. Pursuant Article IX, § 5 of the Florida Constitution, Mr. Hanna has been elected to the position of Superintendent of Leon County Schools by the citizens of Leon County. (Complaint, ¶11). "The school superintendent was not a mere agent or employee of the school board improperly joined as a defendant. He was properly sued as an agency separate from the school board." *School Bd. of Orange County v. Coffey*, 524 So. 2d 1052, 1054 (Fla. Dist. Ct. App. 1988).

> The district school superintendent, like members of the school board, is a constitutional officer. Article IX, § 5, Florida Const. (1968). While the superintendent may be appointed by the school board in a district in which the people by resolution approve the appointive system, Section 230.24, the Leon County School Superintendent has at all times been elected by the people of Leon County.

6

*Hollis v. School Bd. of Leon County*, 384 So. 2d 661, 664 (Fla. Dist. Ct. App. 1980). Therefore, Mr. Hanna cannot be dismissed in his official capacity.

Even as to Dr. Rodgers, who is employed by the School Board, *Busby* and *Graham* do not require dismissal, particularly at this stage in the litigation. *Hatcher v. Desoto County Sch. Dist. Bd. of Educ.* 939 F. Supp. 2d 1232, 1236 (M.D. Fla. 2013). "It is true that an official capacity claim may be redundant when the entity is also a named defendant." *Id.* (citing *Busby*). "The School Board, however, is contesting any liability based on Fusco's conduct, and therefore it remains plausible at this stage of the proceedings that a separate official capacity claim can be maintained against Fusco." *Id.* Similarly here, discovery may reveal questions regarding whether Dr. Rodgers was acting within her authority, *see discussion infra,* and the School Board might contest liability for her actions. Until the factual record is developed, it remains plausible that a separate official capacity claim can be maintained against Dr. Rodgers. Therefore, precedent does not require dismissing her in her official capacity.

### III.   Plaintiffs Sufficiently Allege Violations of Section 1983.

Defendants' assertion that "Plaintiffs' Section 1983 claims must be dismissed as to all Defendants because no constitutional rights of the Plaintiffs are implicated by any of Defendants' alleged actions" (MTD, p. 15), is breathtaking in its misrepresentation of the allegations of the Complaint, misstatement of the "crux" of

Plaintiffs' claims, and misinterpretation of constitutional principles. It is also breathtakingly specious and disingenuous. Defendants have deliberately and actively concealed facts from Plaintiffs (Complaint, ¶¶43-59, 63, 65, 71-76), refused to provide authority for their assertion that the law prohibits disclosure of children's gender identity issues (Complaint, ¶¶60, 64, 68-70), refused to provide promised remedies for their acknowledged wrongful failure to involve Plaintiffs in decisions related to their child (Complaint, ¶¶ 88-91, 94-97, 104-106), and are now claiming that Plaintiffs' claims should be dismissed because Plaintiffs did not provide the facts withheld from Plaintiffs under the guise of unsubstantiated legal authority.

### A. Plaintiffs Sufficient Allege Infringement of Their Fundamental Right to Make Medical and Mental Health Decisions for Their Children.

Defendants assert that "there is no Constitutional liberty interest" requiring that parents be notified and involved in decisions related to their child's gender identity "because the case involves school administration," and "public education of children is unquestionably entrusted to the control, management, and discretion of school boards." (MTD, p. 15, citing *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). More specifically, Defendants claim that Plaintiffs' claims are deficient because "courts have rejected attempts by parents to establish a fundamental right to dictate curriculum and program choices at public schools where they send their children" (MTD, pp. 18-19, citing *Thomas v. Evansville-Vanderburgh School Corp.*, 258

8

Fed.Appx. 50, 53-54 (7th Cir. 2007); *Leebaert v. Harrington*, 332 F.3d 134, 140-42 (2d Cir. 2003); *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995)). Defendants further state that "both the Sixth and Ninth Circuits have held that nothing in the Constitution prohibits public schools from **making curriculum choices or to even direct the school administration more generally**." (MTD p. 19, citing *Parents for Privacy v. Barr*, 949 F.3d 1210, 1230–33 (9th Cir. 2020)) (emphasis added). Implicit in Defendants' argument is that discussions between school officials and children regarding gender identity are merely discussions about curriculum and general school administration solely within the purview of Defendants' authority as educators. The allegations of the Complaint and Defendants' own public statements illustrate the fallacy in that conclusion.

Defendants' written guidance emphasizes that discussions regarding a child's gender identity are related to **the health and well-being** of the child. (Complaint, ¶23) (emphasis added).

> Outing a student, especially to parents, **can be very dangerous to the students [sic] health and well-being**. Some students are not able to be out at home because their parents are unaccepting of LGBTQ+ people out. As many as 40% of homeless youth are LGBTQ+, many of whom have been rejected by their families for being LGBTQ+. Outing students to their parents can literally make them homeless.

(*Id.*, citing Exhibit A, p. 15).

School Board member Bowen publicly stated that "Affirmed names and pronouns are **a central part of a student's identity**. We want to get those right, so

9

we include our pronouns in Zoom, or in class we say, 'Hi I am Mr. Stewart and I use the pronouns he/him.'" (Complaint, ¶40). Something that is "a central part of a student's identity" is not merely a curriculum choice or matter of school administration delegated to the public schools. Mrs. Bowen also stated that "unmet medical needs" including puberty blockers (medications that arrest pubertal development in children) were a challenge for LGBTQ+ students that "hopefully we [the school board] can" have remedies in place for." (Complaint, ¶42). "Unmet medical needs" are not a curriculum choice or matter of school administration within the sole purview of public schools. Defendant Rodgers publicly stated that "students need to be able to show their 'identities' to their teachers and for their peers to embrace those identities," again signaling that gender identity issues including names and pronouns are matters affecting the child's well-being (*i.e.* mental health), not a curriculum choice. (Complaint, ¶92).

In other words, by Defendants' own admissions, gender identity issues are issues critical to the safety and well-being of the child. They are not part of, *e.g.,* the school curriculum, hours of the school day, school discipline, extracurricular activities or a dress code, *i.e.,* the issues of public education generally "committed to the control of state and local authorities." *Blau v. Fort Thomas Public School District*, 401 F.3d 381, 395-96 (6th Cir. 2005). Affirming a child's discordant gender identity involves significant mental health and medical decisions affecting the well-

10

being of children. (Complaint ¶138) As issues critical to the health and well-being of their child, gender identity issues are exclusively within the sole purview of the parents. *Parham v. J.R.,* 442 U.S. 584, 604 (1979). *Parham* affirmed that parents (not public schools) "retain a substantial, if not the dominant, role in medical and mental health care decisions for their children, absent a finding of neglect or abuse." *Id.* If the parent is fit and there are no allegations of neglect or abuse, then courts should apply the traditional presumption that parents act in the best interests of their children. *Id.* Notably, the *Parham* Court affirmed that parental decision-making predominates even when the parents' choice is disagreeable to the child (such as not using a "preferred" name or pronoun). *Id.* at 603.

Plaintiffs have alleged, *inter alia*, that Defendants engaged in private meetings with their daughter in which they discussed A.G.'s gender identity, including her preferred name and pronouns, bathroom and overnight accommodation preferences. Defendants' written guidance and public statements affirm that these are not matters related to curriculum or school administration but are issues that are central to children's identity and well-being. As such, they are not part of the pedagogical interests over which Defendants have authority. Instead, they are part of the child's physical and mental health over which Plaintiffs, as fit parents, have plenary authority. Allegations of Defendants' usurpation of that authority more than sufficiently state a substantive due process claim for violation of Plaintiffs' parental

rights to direct the medical and mental health decision-making of their children. Therefore, contrary to Defendants' argument, there is a "Constitutional liberty interest requiring that parents be notified and involved in decisions related to their child's gender identity, including names and pronouns," and they have violated that interest.

### B. Plaintiffs Have Stated A Claim for Interference with their Fundamental Parental Rights Despite Defendants' Concealment of Facts Regarding Interactions with Their Daughter.

Defendants' remaining arguments regarding substantive due process and parental rights are a hodgepodge of disconnected statements citing cases regarding standards of review,[1] property rights,[2] alleged law enforcement misconduct,[3] and child protective services actions which separated children from parents.[4] (MTD pp. 12-20). Piecing together the statements, Defendants seem to be arguing that Plaintiffs' Section 1983 claims must be dismissed because Plaintiffs have failed to

---

[1]    *Hillcrest Prop., LLP v. Pasco County*, 915 F.3d 12927 (11th Cir. 2019); *Kentner v. City of Sanibel*, 750 F.3d 1274 (11th Cir. 2014).
[2]    *Id.*
[3]    *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003); *Robertson v. Hecksel*, 420 F.3d 1254, 1258 (11th Cir. 2005); *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016).
[4]    *Morrison v. Jones*, 607 F.2d 1269 (9th Cir. 1979); *Maddox v. Stephens,* 727 F. 3d 1109, 1119 (11th Cir. 2013).

alleged concealment of information and failed to allege coercion. Defendants' cases do not support their arguments.

Furthermore, regardless of whether allegations of coercion are necessary (which they are not, *infra*), any asserted insufficiency in such factual allegations arises from Defendants' deliberate concealment of information from Plaintiffs. Defendants' written guidance and continuing actions in implementing it, evidence their intent to conceal information regarding children's gender identity questions from parents, even since passage of the Parents' Bill of Rights. The written guidance unequivocally states that parents are not to be notified if their child "has exhibited behavior in school leading administrators or teachers to believe the student is LGBTQ+." (Complaint, ¶23). Plaintiffs allege that LCS staff were trained to follow that guidance and to not disclose to parents information regarding their child's gender identity without the child's permission. (Complaint ¶¶29-31). Mrs. Littlejohn was told directly by LCS staff that she could not receive information regarding her daughter's interactions with staff related to her gender identity because "A.G. was now 'protected' under a non-discrimination law that does not include parental notification or input," a policy overseen by Dr. Rodgers. (Complaint, ¶56). Dr. Rodgers told Mr. Littlejohn that LCS was not required by law to inform parents of conversations with their children regarding gender identity and emphasized the need for protecting children's "privacy" against their own parents. (Complaint, ¶70). Even

13

after Mr. Hanna represented to the Littlejohns that LCS policy would be that parents must be notified, Dr. Rodgers told them she instructed staff only that they were "encouraged" to tell parents. (Complaint, ¶¶89, 94). As recently as September 29, 2021, after the effective date of the Parents' Bill of Rights, LCS staff has been told that "privacy laws" prohibit teachers from revealing to parents that their child has expressed a discordant gender identity, and that they should not "out" children to their parents by notifying parents when their children state a belief that they are something other than their biological sex. (Complaint ¶¶109-110).

These allegations evidence actions by Defendants to prohibit the disclosure of information regarding children's gender identity to parents. This interferes with the parents' right to direct the upbringing and make mental health decisions for their children under *Parham,* 442 U.S. at 604. Therefore, even if, as Defendants claim, "interference of parental rights is only actionable where the state is requiring or prohibiting some activity," (MTD, p.16), Plaintiffs have alleged such a prohibition. Just as Nebraska violated parental rights by prohibiting teaching the German language, *Meyer v. Nebraska*, 262 U.S. 390, (1923); Oregon violated parental rights by prohibiting private schools, *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) and Wisconsin violated parental rights by prohibiting parents from disenrolling their children from school before age 16, *Wisconsin v. Yoder*, 406 U.S. 205 (1972), so too, here, the allegations of the Complaint show that Defendants can be found to

14

have violated Plaintiffs' rights by prohibiting disclosure of gender identity information to parents.

Defendants allege that Plaintiffs must prove "coercion" to establish a violation of their fundamental parental rights but offer no precedential support for their statement. Coercion is a factor for claims based on the Establishment Clause based on the genesis of the right, *i.e.,* prohibition of state-mandated religions present at the founding of the country. *McGowan v. Maryland*, 366 U.S. 420, 563 (1961). However, there is no similar genesis and no need to address coercion for the parental right, which arises from the nature of the family as an institution long recognized at common law as "essential to the orderly pursuit of happiness by free men." *Meyer,* 262 U.S. at 399. In fact, the Southern District of Florida has specifically stated that "government coercion, specifically in the form of inducing children to refrain from communicating with their parents on a given subject, is not a necessary element of a cause of action for infringement with parental rights." *Johnson v. Dade County* 1992 WL 466902 at 5 (S.D. Fla. 1992). In this case, Plaintiffs' parental rights may not be interfered with by LCS staff unless it is related to the pedagogical purposes delegated to Defendants. As discussed in Section IIIA, *supra*, the concealment of information regarding children's gender identity is not so related.

The Eleventh Circuit's use of the term "coercive" to describe the actions of the counselors in *Arnold v. Bd. of Educ. of Escambia County*, 880 F.2d 305 (11th

Cir.1989) does not translate into a requirement of coercion to provide a parental rights violation by school staff. While the actions of the counselors in *Arnold* were coercive (convincing the students to obtain an abortion and helping fund it), the court did not determine that plaintiffs had to allege coercion, but that in alleging it they more than satisfied the notice pleading standards for a civil rights claim. *Id* at 312. Notably, *Arnold* involved similar interference with parental notification as is alleged here. *Id.* at 312-13. In *Arnold*, school staff convinced the students not to tell their parents about the pregnancy and abortion. *Id.* That directive "unduly interferes with parental authority in the household and with the parental responsibility to direct the rearing of their child." *Id.* at 313. "This deprives the parents of the opportunity to counter influences on the child the parents find inimical to their religious beliefs or the values they wish instilled in their children." *Id.*

Plaintiffs do not allege specifics of conversations between A.G. and LCS staff regarding communicating with her parents because Defendants have concealed those facts from Plaintiffs. Plaintiffs have alleged that Defendants developed and implemented protocols prohibiting staff from disclosing the information, and in particular from discussing the specifics of conversations with parents. Plaintiffs have alleged that Defendants informed staff that children like A.G. were "protected by law" from having this information revealed to their parents. Plaintiffs have alleged that their special needs daughter participated in at least one private meeting with

16

authority figures at school who had been instructed not to disclose to parents what occurred. Whether those authority figures actively encouraged or coerced A.G. to refrain from communicating with her parents cannot be known without further discovery. Plaintiffs must be permitted to obtain an answer to that question. Plaintiffs have sufficiently alleged facts showing Defendants deliberately set out to conceal information from them about their daughter's mental health to state a claim that their parental rights have been violated.

## IV.   Defendants Are Not Entitled To Qualified Immunity.

Qualified immunity applies to preclude liability for damages against a governmental actor if he was acting in his discretionary authority and violated a clearly established constitutional right.  Here, Plaintiffs are seeking equitable relief as well as damages, so even if qualified immunity did apply it would not require dismissal of all claims against the individual defendants.

In addition, at this early stage in the litigation Defendants cannot establish they are entitled to qualified immunity. Because determining the questions of discretionary functions and clearly established constitutional rights require factual development, qualified immunity is usually addressed at the summary judgment phase. *Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). Government officials may seek to have the complaint dismissed on qualified immunity grounds

prior to discovery, but the questions must be answerable based solely on the allegations in the pleadings. *Id.* at 1263 n.6. That is not the case here.

### A. Defendants Cannot Meet Their Burden of Showing They Were Engaged in Discretionary Functions.

To even be potentially eligible for summary judgment due to qualified immunity, Defendants must prove that they were engaged in a "discretionary function" when they performed the acts of which the Plaintiffs complain. *Id.* at 1263-64, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "While a number of our cases omit this step of the analysis, binding Supreme Court and Eleventh Circuit precedents require us to consider expressly this critical threshold matter." *Holloman,* 370 F.3d at 1264.

In the qualified immunity context, courts in the Eleventh Circuit do not focus on whether the acts in question involved the exercise of actual discretion, but whether the acts are of a type that fell within the employee's job responsibilities. *Id.* It is a two-fold inquiry: "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1266. The Defendants' acts cannot be characterized and assessed at too high a level of generality. *Id.* Nearly every act performed by a government employee can be described, in general terms,

as ostensibly "furthering the public interest," which make it impossible to determine whether the employee was truly acting within the proper scope of his job-related activities. *Id.* Consequently, courts consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. *Id.* "After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second part of the inquiry and determine whether he is executing that job-related function — that is, pursuing his job-related goals — in an authorized manner." *Id.* at 1266-67.

To meet their initial burden of proof, Defendants must show "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991). Defendants do not make the necessary showing here. Defendants claim that they have met their burden because the actions alleged by Plaintiffs "focus on actions core to their duties as public officials, managing the affairs of schools within the District, interpreting and applying school practice and policies, and interacting with parents concerning the education of a student in District schools." (MTD, p. 23). That misleading conclusory statement does not provide the objective proof required under *Courson* and disregards the Eleventh Circuit's admonition that a defendant's

duties cannot be characterized at too high a level of generality. *Holloman,* 370 F.3d at 1266.

Most telling in the Defendants' conclusory statement regarding their job-related functions is the assertion that they were "interacting with parents concerning the education of a student in District schools." The allegations in the Complaint describe, and indeed the crux of Plaintiffs' claims are, that Defendants were **not** interacting with them regarding their daughter. Also, the allegations in the Complaint describe interactions with Plaintiffs' daughter that were **not** concerning the education of their daughter, but rather her mental health. Furthermore, Plaintiffs allege that Defendants did far more than merely "interpreting and applying school practice and policies." Defendant Rodgers oversaw creation of a transgender student guidance document that directed school staff that: 1) parents were not to be notified regarding their child's gender identity (Exhibit A, p. 15), 2) non-discrimination laws required that children be permitted to choose which sex-separated privacy facilities and overnight accommodations they would use without parent input (Exhibit A, p.14), and 3) calling a child by their legal name instead of a preferred alternative constitutes actionable harassment. (Exhibit A, p. 14). Defendants offer no objective evidence that Dr. Rodgers was acting within the scope of her authority or competency when she provided legal advice to LCS staff by telling them that parents

could not by law be told anything about their child's expression of a discordant gender identity unless the child consented. (Complaint, ¶31).

Defendants offer no objective circumstances which would compel the conclusion that Mr. Hanna's actions were undertaken pursuant to the performance of his duties and within the scope of his constitutional authority. Since the allegations of the Complaint describe interactions with Plaintiffs' daughter directly affecting mental health decision-making it cannot reasonably be asserted that their actions were "core to their duties" or competencies as neither Defendants Rodgers nor Hanna is a mental health professional.

Finally, since discovery has not occurred, the nature and extent of the Defendants' acts and omissions are not known. This makes it impossible for Defendants to establish that they were acting pursuant to the performance of their duties based upon the allegations of the Complaint. Neither Defendant can meet the burden of demonstrating that he or she was engaged in a "discretionary function" when he or she performed the acts of which the Plaintiffs complain. Therefore, Defendants are not eligible to claim qualified immunity. *Lee v. Ferraro*, 284 F.3d at 1194.

### B. Plaintiffs' Allegations Show Defendants Violated Clearly Established Constitutional Rights

Even if Defendants were able to meet their burden, they still would not be entitled to qualified immunity. Looking at the allegations of the Complaint rather

21

than Defendants' specious reinterpretation of constitutional precedent leads to the conclusion that Defendants flouted long-established constitutional principles. Defendants acknowledge that "[t]he Due Process Clause of the Fourteenth Amendment 'protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.' *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *see also Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) (MTD, p. 12), and that parents' fundamental right to parent their children is protected through the Florida Constitution." (MTD p. 32). Defendants also acknowledge that state interference with those rights is actionable when the state is requiring or prohibiting some activity. (MTD p. 16, citing *Meyer,* 262 U.S. 390). In this case, as discussed *supra*, Defendants have prohibited disclosure of children's gender identity information to parents. This is the same type of prohibition the Eleventh Circuit found violative of parental rights in *Arnold,* 880 F.2d at 312-14. The Eleventh Circuit established that a directive to students to not disclose information to their parents "unduly interferes with parental authority in the household and with the parental responsibility to direct the rearing of their child," and that schools must refrain from such directives. *Id.* at 313-14. As well as referencing *Meyer, Pierce,* and *Troxell*, the Eleventh Circuit relied on *Parham'*s holding that "[t]he law's concept of the family presumes that parents possess what a child lacks in maturity, experience and capacity for judgment," as authority for its finding that withholding information from parents

22

unduly interferes with their fundamental rights. *Id*. at 314 (citing *Parham,* 442 U.S. at 602).

At the time that Defendants created the written transgender student guidance, trained staff regarding the guidance and interacted with Plaintiffs' daughter in 2020, it had been clearly established in the Eleventh Circuit for more than 30 years that school officials violate parents' fundamental rights to direct their children's upbringing when they direct that parents not be informed about medical and mental health issues regarding their children. That clearly established right was in turn based on constitutional rights that had been clearly established by the Supreme Court for nearly 100 years in the case of *Meyer* and *Pierce* and more than 40 years in the case of *Parham.* As was true of the police officers in *Keating v. City of Miami,* 598 F.3d 753, 767 (11th Cir. 2010), it should have been obvious to Defendants Rodgers and Hanna that their conduct would violate Plaintiffs' constitutional rights.

Plaintiffs' allegations establish a constitutional violation. *Id.* at 762. This satisfies one part of the two-part test for determining whether a state official is entitled to qualified immunity. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In addition, the long-standing Eleventh Circuit precedent in *Arnold* building on *Meyer, Pierce,* and *Parham* provides a materially similar case that has been decided so as to be clear to reasonable state officials that prohibiting school staff from disclosing gender identity information to parents was unlawful. *Loftus v.*

*Clark–Moore*, 690 F.3d 1200, 1204-05 (11th Cir. 2012). That would satisfy the other prong of the two-prong test. *Id.*

At this pleading stage of the case, Defendants cannot meet their threshold burden of providing "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Courson*, 939 F.2d at 1487. Therefore, they are not entitled to qualified immunity. Even if the threshold showing were made, the allegations of the Complaint, if proven, show that their actions violated Plaintiffs' clearly established fundamental parental rights so as to foreclose qualified immunity.

## V.   Florida's Parents Bill Of Rights Includes An Implied Private Right Of Action.

Florida's commitment to protecting parental rights to direct the upbringing, education, and medical decision-making of their children is further established in Florida Statutes § 743.07 and Chapter 1014, known as the Parents' Bill of Rights. In both enactments, the Legislature emphasized the fundamental nature of these parental rights and that actions such as those taken by Defendants here unduly interfere with those rights. Defendants question whether Plaintiffs can seek relief under these statutes. A judicial decision citing Section 743.07 and the language of Chapter 1014 evidence the viability of Plaintiffs' claims under these statutes.

Under Fla. Stat. § 743.07 parents are responsible for selecting the manner of medical/mental health treatment received by their child until the child reaches age

18. The Middle District of Florida utilized that statute to find that municipalities improperly diminished that fundamental parental right when it enacted an ordinance prohibiting talk therapy aimed at helping children struggling with unwanted same-sex attractions and gender identity confusion. *Vazzo v. City of Tampa*, 415 F.Supp.3d 1087, 1098 (M.D. Fla. 2019). Defendants' actions here similarly burden Plaintiffs' rights to direct the mental health treatment of their children.

When analyzed in the context of United States and Florida Supreme Court precedent, the Parents' Bill of Rights, Florida Statutes Chapter 1014, includes an implied private right of action. The United States and Florida supreme courts use a four-part test, first articulated in *Cort v. Ash*, 422 U.S. 66  (1975), to determine whether a private remedy should be implied in a statute that does not expressly provide one: (1) whether the statute was enacted for the benefit of a special class of which the plaintiff is a member, (2) whether there is any indication of legislative intent to create a private remedy, (3) whether implication of such a remedy is consistent with the underlying purposes of the legislative scheme, and (4) whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the States. *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979); *Reese v. JPMorgan Chase & Co*., 686 F. Supp. 2d 1291, 1301 (S.D. Fla. 2009). Florida courts also look at whether the affected statute can serve a useful

purpose without a private remedy. *Smith v. Piezo Tech. & Prof'l Adm'rs*, 427 So. 2d 182, 184 (Fla. 1983).

In *Smith,* the Florida Supreme Court held that a statute prohibiting employers from discharging an employee in retaliation for asserting a workers' compensation claim implicitly created a statutory cause of action for wrongful discharge. *Id.* at 183–84. "A private right of action may be implied from a statutory provision that would serve no useful purpose in the absence of a private right of action." *Id.* at 184. "[B]ecause the legislature enacted a statute that clearly imposes a duty and because the intent of the section is to preclude retaliatory discharge, the statute confers by implication every particular power necessary to insure the performance of that duty." *Id.* (citing *Girard Trust Co. v. Tampashores Development Co.*, 117 So. 786, 788 (Fla. 1928)). "That which is clearly implied is as much a part of the law and is as effectual as that which is expressed." *Girard Trust*, 117 S. at 788. "Where a statute requires an act to be done for the benefit of another or forbids the doing of an act which may be to his injury, though no action be given in express terms by the statute for the omission or commission, the general rule of law is that the party injured should have an action; for, where a statute gives a right, there, although in express terms it has not given a remedy, the remedy which by law is properly applicable to that right follows as an incident." *Id.*

26

A private right of action may be implied in the Parents' Bill of Rights under *Girard Trust* and *Smith* because absent such a private right of action, the law would serve no useful purpose. The law's extensive recitation of the rights held by parents vis-a-vis their children in the context of education and medical care, Fla. Stat. §1014.04, will be meaningless if parents cannot take legal action against educators and health care providers when those rights are violated. The statute provides for disciplinary action against school employees and health care providers and possible criminal penalties for provision of nonconsensual medical care. However, neither of those provisions provides any remedy for parents whose rights have been and are being violated. Other than speaking at a school board meeting if they are denied access to materials, parents have no explicit administrative or legal remedy available to redress the actions of rogue educators and health care providers. Without a private right of action there would be no motivation on the part of educators to comply with the law if they could not be held accountable to parents whose statutory rights they have violated.

Examining the Parents' Bill of Rights under the *Cort* factors also leads to the conclusion that there is an implied private right of action. The fourth factor is not at issue in a state law context. As to the first factor, there is no doubt that the statute was enacted for the benefit of a special class, *i.e.*, parents, as opposed to the general public at large. As to whether there is any indication of legislative intent to create a

27

private remedy (the second *Cort* factor), there are numerous indications of such an

intent in the statutory language. Among the strongest is the provision in Section

1014.03:

> The state, any of its political subdivisions, any other governmental
> entity, or any other institution may not infringe on the fundamental
> rights of a parent to direct the upbringing, education, health care, and
> mental health of his or her minor child **without demonstrating that
> such action is reasonable and necessary to achieve a compelling
> state interest and that such action is narrowly tailored and is not
> otherwise served by a less restrictive means.** (emphasis added).

The language in bold is a recitation of the strict scrutiny standard used by

courts to analyze fundamental rights under the Constitution. By including it in the

law, the Legislature is saying that state actors cannot infringe upon the rights listed

in the statute unless they prove that their actions can withstand strict judicial

scrutiny. Implicit in that statement is that state actors will have to make an offer of

proof to a judge which will determine whether the showing is sufficient. Therefore,

implicit in the recitation of the standard of proof for infringement of parental rights

is that an aggrieved party, *i.e.,* the parent, will challenge the state actor's acts or

omissions in court, where the state must make such offer of proof. Since it is the

individual parents' rights, not the public's at large, that are affected by the state's

actions, it is parents who have standing to bring such a lawsuit.

Similarly, the Legislature made clear that "All parental rights are reserved to

the parent of a minor child in this state without obstruction or interference from the

state, any of its political subdivisions, any other governmental entity, or any other institution." Fla.Stat. § 1014.04(1). By stating that the rights are not to be obstructed or interfered with, the Legislature evinces its intent that governmental entities will be held accountable for violations of parental rights. The only way that can be assured is if parents aggrieved by the governmental actions can seek judicial relief.

Analysis of the second *Cort* factor also informs the third, *i.e.*, whether implication of such a remedy is consistent with the underlying purposes of the legislative scheme. The Legislature repeatedly asserts the fundamental, expansive nature of parental rights intended and the prohibition against any infringement or obstruction of them by the state. It makes clear that its purpose in enacting this legislation is to prevent and/or cease governmental interference with parents' decision-making regarding education, religious upbringing, medical or mental health care and other aspects of child-rearing. Accomplishing that prevention or cessation of government action will inevitably require intervention by courts. Therefore, it is consistent with, even necessary to, the purposes of the statute, to imply that aggrieved holders of the rights, *i.e.*, parents, may seek judicial relief. Otherwise, the legislature will have created rights without a remedy, and thus effectively no right at all. That cannot be the intent of the legislation.

In exercising their implied private right of action, Plaintiffs have alleged facts showing that Defendants have engaged in actions that violate Plaintiffs' rights under

29

the statute after its effective date of July 1, 2021. As recently as September 29, 2021, LCS staff were instructing other staff that "privacy laws" prohibited teachers from revealing to parents that their child has expressed a discordant gender identity and that children should not be "outed" to their parents. (Complaint, ¶¶109-110,194-195). It is believed Defendants continue to use the Gender Student Support Plan that conditions notification of parents on a minor child's authorization. (Complaint ¶113). These actions to bypass parental notice and consent on issues related to children's upbringing and mental health, violate the Parents' Bill of Rights.

## VI.   Plaintiffs Allege Viable State Constitutional Claims.

Defendants cannot deny that the Florida Constitution accords equal or superior rights of privacy and substantive due process than are provided under the United States Constitution. Nevertheless, Defendants claim that Plaintiffs' claims for relief should be dismissed based on another potpourri of arguments about private citizens, damages, and attorneys' fees, none of which defeat Plaintiffs' claims for equitable relief and damages against these state actor Defendants. In fact, Defendants' claims that Plaintiffs' state constitutional claims should be dismissed are nothing more than rehashing of their flawed analysis of the federal constitutional claims. Since Plaintiffs have stated claims for federal constitutional violations, they have also stated viable claims for violations of the Florida Constitution.

### A. Plaintiffs State A Viable Claim for Violation of the Right of Privacy Under Article 1, §23 of the Florida Constitution

Defendants "recognize that parents have a fundamental right to parent their children and that such right is protected through the Florida Constitution." *D.M.T. v. T.M.H.,* 129 So. 3d 320, 335 (Fla. 2013). The right is not merely "protected" under the Florida Constitution, but is recognized as a fundamental right under the explicit right of privacy enacted by the people of Florida in Article 1, §23 of the Florida Constitution. *Von Eiff v. Azicri*, 720 So.2d 510, 514 (1998). The Florida Supreme Court has determined that this explicit right of privacy "is a fundamental right which we believe demands the compelling state interest standard." *In re T.W*, 551 So. 2d 1186, 1192 (Fla. 1989). Under that standard, state intrusion was justified in some cases dealing with public disclosure of private facts, such as bank records, but no government intrusion has survived review in cases dealing with personal decision-making. *Id.* Parental decisions regarding child rearing and education fall into the latter category so that "the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child **is threatened with harm**." *Beagle v. Beagle,* 678 So.2d 1271, 1276 (1996) (emphasis added). "[I]t appears to be an unassailable proposition that otherwise fit parents ... who have neither abused, neglected, or abandoned their child, have a reasonable expectation that the state will not interfere" with their decision-making. *Von Eiff,* 720 So.2d at 515.

Plaintiffs here had the reasonable expectation that Defendants would neither interfere with nor undermine their decision regarding A.G.'s gender identity concerns, which they were addressing as a family and with a mental health professional. (Complaint ¶¶47-50). There are no allegations that A.G. was threatened with harm by her parents' decision, so no basis upon which Defendants could interfere with that decision. Defendants' written guidance and actions show a clear and unequivocal intent to interfere with parental decision-making regardless of a threat of harm, as seen in the guidance's provision unequivocally stating that parents were NOT to be told about a child's gender identity (Exhibit A, p. 15) and their instruction to staff that under the law they could not inform parents. (Complaint, ¶¶30-31). These allegations state a viable claim for violation of Plaintiffs' fundamental parental rights under the Florida Constitution.

### B. Plaintiffs State A Viable Claim for Violation of the Right to Substantive Due Process Under Article 1, §9 of the Florida Constitution.

Likewise, Plaintiffs state a viable substantive due process claim under Article 1, §9 of the Florida Constitution, which protects the "full panoply of individual rights" and in particular, the long-established fundamental right of parents to direct the upbringing of their children, from unwarranted encroachment by the government. *J.B. v. Fla. Dep't of Child. & Fam. Servs*., 768 So. 2d 1060, 1063 (Fla. 2000). As the Florida Supreme Court said in *J.B.,* "The significance of the rights at

issue here cannot be overstated." *Id.* at 1064. "[I]t is plain beyond the need for multiple citation that a natural parent's desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right." *Id.* (citation omitted). That is reflected in the Florida Supreme Court's treatment of fundamental parental rights under Article 1, §23, and in the United States Supreme Court's labeling of parental rights as "fundamental" in *Troxel*, 530 U.S. at 65-66.

As discussed more fully in Sections IIIA and IIIB, Plaintiffs have alleged facts that state claims for violation of their fundamental parental rights under the United States Constitution. Since Florida's due process clause incorporates the same "panoply of rights," Plaintiffs have also alleged sufficient facts to state a claim for violation of fundamental parental rights under the Florida Constitution.

## CONCLUSION

Plaintiffs' Complaint states causes of action for violation of Plaintiffs' fundamental parental rights under the United States Constitution, Florida Constitution and Florida Statutes against all Defendants. Defendants Hanna and Rodgers are not subject to dismissal in their official capacities and are not entitled to qualified immunity in their individual capacities.

For these reasons, Defendants' motion to dismiss should be denied. Alternatively, if this Court determines that there are insufficiencies in the Complaint, Plaintiffs should be granted leave to amend.

Dated: December 13, 2021.

/s/Mary E. McAlister
Mary E. McAlister (FL Bar No. 0010168)
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles (GA Bar No. 593026)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org

Ernest G. Trakas (MO Bar 33813)*
Evans & Dixon, LLC
211 N. Broadway
St. Louis, MO 63102
 (314) 552-4188
etrakas@evans-dixon.com

* pro hac vice admissions pending

Attorneys for Plaintiffs

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and contains 7,987 words, which includes headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

/s/ *Mary E. McAlister*
MARY E. MCALISTER

## CERTIFICATE OF SERVICE

I certify that on this 13th day of December 2021, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Mary E. McAlister*
MARY E. MCALISTER