# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## (TALLAHASSEE DIVISION)

| | | |
|---|---|---|
| January Littlejohn, | ) | |
| Jeffrey Littlejohn, | ) | |
| Plaintiffs | ) | Case No. 4:21-CV-00415 |
| v. | ) | |
| School Board of Leon County, | ) | |
| Florida, Rocky Hanna, individually, | ) | |
| and in his official capacity as | ) | |
| Superintendent of Leon County | ) | |
| Schools, Dr. Kathleen Rodgers, | ) | |
| individually, and in her official | ) | |
| capacity as former Assistant | ) | |
| Superintendent, Equity Officer and | ) | |
| Title IX Compliance Coordinator for | ) | |
| Leon  County Schools, Rachel | ) | |
| Thomas, individually and in her | ) | |
| Official capacity as counselor at | ) | |
| Deerlake Middle School, Robin | ) | |
| Oliveri, individually and in her official | ) | |
| capacity as Assistant Principal of | ) | |
| Deerlake Middle School, | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiffs, January Littlejohn and Jeffrey Littlejohn ("Plaintiffs") by and through counsel, file this civil action and respectfully request this Court to issue a declaratory judgment and award damages for violations of the United States and Florida constitutions by Defendants, School Board of Leon County, Rocky Hanna, Dr. Kathleen Rodgers, Rachel Thomas, and Robin Oliveri.

1

In support thereof, Plaintiffs state:

## INTRODUCTION

1.      Plaintiffs bring this action to vindicate their fundamental rights to direct the upbringing of their children and to make medical and mental health care decisions for their children as established by the United States and Florida constitutions.

2.      Defendants violated Plaintiffs' fundamental rights by developing a Transgender Support Guide that authorized staff to create covert gender affirmation plans that excluded parents from being informed of and participating in critical decisions affecting their child's mental, emotional, and physical health, *i.e.,* parenting and medical decisions regarding the child's assertion of a discordant gender identity.

3.      Defendants violated Plaintiffs' fundamental rights by implementing the Transgender Support Guide and Student Support Plan with their daughter to create a covert gender affirmation plan for Plaintiffs' 13-year-old daughter who has been diagnosed with ADHD and is subject to a 504 Plan. This covert plan was to proceed without the knowledge or consent of Plaintiffs

## JURISDICTION AND VENUE

4.      This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiffs from deprivation, under color of state law, of rights

2

secured by the Fourteenth Amendment to the United States Constitution, by the laws of the United States and the laws of Florida. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a).

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in Leon County, Florida, which is situated within the district and divisional boundaries of the Northern District of Florida.  Venue is also proper in this Court because the Defendants reside or have their principal place of business in this District.

6.    This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57.

7.    An actual controversy exists between the parties involving substantial constitutional issues, in that Plaintiffs allege that Defendants' policies, procedures, directives and actions taken in accordance with them, on their face and as applied, violate the United States Constitution and have infringed Plaintiffs' rights, while Defendants allege that their policies, procedures, directives, and actions comport with the Constitution.

8.    This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

## PARTIES

9.      Plaintiffs January and Jeffrey Littlejohn are residents of Leon County, Florida and parents of children who at all times relevant to the acts and omissions alleged in this action attended Leon County Schools.

10.      Defendant School Board of Leon County ("School Board") is the governing body for public schools in Leon County, Florida, with the authority to sue and be sued, and was at all times material acting within the course and scope of its authority pursuant to Article IX, § 4 of the Florida Constitution, Fla. Stat. §§ 1001.41-1001.42 and further under color of law.

11.      Defendant Rocky Hanna is the Superintendent of Leon County Schools ("LCS"), having been elected by the citizens of Leon County pursuant to Article IX, § 5 of the Florida Constitution. He is and was at all times relevant herein, acting within the course and scope of his lawful authority as Superintendent and his duties under Fla. Stat. §§ 1001.49, 1001.51, and other applicable Florida law and consistent with the customs, policies, and practices of Leon County Schools. He is sued in his individual and official capacities.

12.      Defendant Dr. Kathleen Rodgers was at all times relevant to the acts and omissions alleged in this matter the Assistant Superintendent, Equity Officer and Title IX Compliance Coordinator for LCS. She was at all times relevant herein, acting within the course and scope of her employment, under color of state law and

4

consistent with the customs, policies, and practices of LCS. She is sued in her individual and official capacities.

13.    Defendant Rachel Thomas was at all times relevant to the acts and omissions alleged in this matter, employed as a counselor at Deerlake Middle School operated by LCS. She was at all times relevant herein, acting within the course and scope of her employment, under color of state law and consistent with the customs, policies, and practices of LCS. She is sued in her individual and official capacities.

14.    Defendant Robin Oliveri was at all times relevant to the acts and omissions alleged in this matter, employed as Assistant Principal at Deerlake Middle School operated by LCS. She was at all times relevant herein, acting within the course and scope of her employment, under color of state law and consistent with the customs, policies, and practices of LCS. She is sued in her individual and official capacities.

## STATEMENT OF FACTS

### Plaintiffs' History With The District

15.    Plaintiffs believe in the individual rights of all people and are against all forms of invidious discrimination. They seek to instill these values in their children as part of their family's values of being truth tellers and following sound moral principles.

16.    Plaintiffs are supportive of their children and very involved in their education.

17.    January Littlejohn was well-known to the staff at Deerlake Middle School particularly through her frequent volunteer work supporting the students and teacher. She was awarded the Volunteer of the Year award for Deerlake Middle School in the 2019-2020 school year.

18.    Plaintiffs' child, A.G., was a student at Deerlake Middle School during the 2018-2018, 2019-2020 and 2020-2021 school years. A.G. had been diagnosed with ADHD and had in place an Accommodation Plan under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et. seq.* ("504 Plan").

19.    January Littlejohn is a licensed mental health professional. She was present at all 504 Plan meetings required by the Rehab Act and facilitated by Defendant Thomas and others in the guidance department for A.G. at Deerlake Middle School, and was well known by Ms. Thomas as both A.G.'s mother and a mental health professional.

**Defendants Develop Transgender Guidance**

20.    Plaintiffs are informed and believe and based thereon allege that as of 2018 the District's LGBTQ+ Equity Committee created the "LCS Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming and Questioning Support Guide"

6

(the "2018 Guide").  A true and correct copy of the 2018 Guide is attached hereto, marked as Exhibit A and incorporated herein by reference.

21.    Plaintiffs are informed and believe and based thereon allege that the 2018 Guide was prepared under the supervision of Defendant Rodgers as part of the course and scope of her employment as Assistant Superintendent and Equity Officer for Leon County Schools. Dr. Rodgers is listed as a contact person on page 28 of the 2018 Guide from whom further information about the Guide may be obtained.

22.    Plaintiffs are informed and believe and based thereon allege that Defendant Hanna was aware of the committee's preparation of the 2018 Guide and its contents as part of the exercise of his duties as Superintendent of Leon County Schools under, *inter alia,* Fla. Stat. §§ 1001.49, 1001.51 and 1012.27. Mr. Hanna is listed as a contact person on page 28 of the Guide from whom further information about the Guide may be obtained.

23.    Plaintiffs are informed and believe and based thereon allege that Defendant Hanna was responsible for supervising the implementation and enforcement of the policies and protocols contained within the 2018 Guide as part of the exercise of his duties as Superintendent of Leon County Schools under, *inter alia,* Fla. Stat. §§ 1001.49, 1001.51 and 1012.27.

24.    Plaintiffs are informed and believe and based thereon allege that Mr. Hanna was aware of and approved of the development of the 2018 Guide.

7

25.    Plaintiffs are informed and believe and based thereon allege that Mr. Hanna met personally with LGBTQ+ Committee members to discuss development of the 2018 Guide and approved adding other members to the Committee to ensure all voices were heard and appropriate procedures put in place in the 2018 Guide.

26.    Plaintiffs are informed and believe and based thereon allege that Mr. Hanna was provided with the draft of the 2018 Guide and reviewed and approved of its contents.

27.    Plaintiffs are informed and believe and based thereon allege that School Board members were aware of the development of the 2018 Guide and its contents.

28.    Plaintiffs are informed and believe and based thereon allege that School Board Chairwoman Georgia "Joy" Bowen publicly listed development of the 2018 Guide as a "success story" for LCS's efforts to promote equity and access for LGBTQ+ students during a presentation at "All Together Now 2021: School Board Policies: Procedures that Promote Equity and Access for LGBTQ+ Students" hosted by Equality Florida February 25-26, 2021.[1]

29.    Plaintiffs were not aware of the 2018 Guide or the protocols contained within the Guide until November 6, 2020 after LCS staff had implemented the

---

[1]    https://m.youtube.com/watch?v=m1-djGJpXI&list= PLUWXEguBhw7y BHiPXADDAc6tGtsvkNlDe&index=17 at 29:19.

protocols with Plaintiffs' child without Plaintiffs' knowledge or consent, in violation of their parental rights, as described *infra*.

30.    Even then, the information was provided only after Plaintiffs had repeatedly requested that LCS staff provide legal justification for the actions taken.

31.    The 2018 Guide is described as "a tool for schools, students and their parents and legal guardians to effectively navigate existing laws, regulations and policies that support LGBTQ+ LCS students." (Exhibit A, p. 3).

32.    Plaintiffs were not notified about, directed to, or provided with a copy of the 2018 Guide as part of communications and notifications from LCS staff to parents.

33.    The 2018 Guide authorized LCS administrators and staff to exclude parents from critical decisions regarding their children's care, upbringing, and physical, emotional, and mental health in contravention of rights established under the United States and Florida constitutions and federal statutes.

34.    For example, the 2018 Guide states:

Under the Family Educational Rights and Privacy Act (FERPA), students, current or former, have a right to seek to amend their school records if said records are "inaccurate, misleading, or in violation of the student's rights of privacy." (34 C.F.R. § 99.7(a)(2)(ii)). Transgender students wishing to change their name and gender marker on their educational records can seek such an amendment of certain records under this federal law. (Exhibit A, p. 14).

9

35.    The statement in the 2018 Guide incorrectly suggests that students of any age can unilaterally change their educational records when, in fact, only parents possess such rights under the law until the child is 18. 34 C.F.R. § 99.7(a)(2)(ii)

36.    FERPA provides that **parents**, not students, have the right to review and request amendments to misleading or inaccurate school records until the student reaches age 18 or is legally emancipated. 20 U.S.C. § 1232g(a)1(a), (7)(d); 34 C.F.R. §§ 99.3, 99.7(a)(2)(ii).

37.    The federal regulation referenced in the 2018 Guide provides that **parents or eligible students** have the right to "[s]eek amendment of the student's education records that the **parent or eligible student** believes to be inaccurate, misleading, or otherwise in violation of the student's privacy right" 34 C.F.R. §99.7(a)(2)(ii) (emphasis added). "Eligible student" is defined for purposes of FERPA as "a student who has reached 18 years of age or is attending an institution of postsecondary education." 34 C.F.R. § 99.3.

38.    As trained educational professionals, Defendants Hanna, Rodgers, Thomas and Oliveri knew or should have known that FERPA and its implementing regulations grant parents sole authority over their children's educational records until the child is 18 or has finished secondary school, particularly since the full text of the statute and regulation referenced in the 2018 Guide so state.

10

39.    The 2018 Guide prepared under the direction and supervision of Dr. Rodgers and approved by Mr. Hanna and the School Board misrepresented the provisions of FERPA so as to create a legal fiction that children have separate and unique privacy rights vis-a-vis their parents.

40.    Florida law incorporates by reference the provisions of FERPA and its implementing regulations to explicitly grant parents the right to privacy over their children's records and the right to review and make changes to their children's records. Fla. Stat. §§ 1002.20, 1002.22(2).

41.    Contrary to the representations in the 2018 Guide and the actions taken by Defendants, as described by Chairwoman Bowen, *infra*, FERPA and Florida Law do not authorize students under age 18 or still in elementary or secondary school to change their name or gender marker on their educational records because they claim a transgender identity. Prior to that time, parents must be involved in the decision.

42.    The 2018 Guide's assertion that administrators and staff can change a student's name at the student's request under FERPA represents a *de facto* policy sanctioned by the School Board.

43.    Chairwoman Bowen affirmed that the statements in the 2018 Guide represent *de facto* School Board policy when she publicly stated that permitting children to change their name and gender marker was one of the School Board's "success stories" in increasing equity and access for LGBTQ+ students.

44.   At the All Together Now Conference Chairwoman Bowen said: "We have allowed students to have diplomas with their affirmed names at their request." "We have put measures in place to allow students to use their 'affirmed' name at school. Students' affirmed name is placed in the system at their request so that substitute teachers are aware that they go by a name different from their legal name."[2]

45.   In publicly stating that 1) the School Board had put measures in place to allow students to use their affirmed names at school, 2) students would direct whether their affirmed name would be placed in school records, and 3) students, current or former, have a right to seek to amend their school records if said records are "inaccurate, misleading, or in violation of the student's rights of privacy," Mrs. Bowen represented that it was the Board's policy that students had the right to make changes to their educational records with regard to names and pronouns without parents being involved.

46.   Neither FERPA nor Section 1002.22 exempts from disclosure to parents information regarding their child's preferred names and pronouns.

47.   The 2018 Guide put together under the direct supervision of Defendant Rodgers with the knowledge and approval of Defendants Hanna and School Board, authorized and directed administrators and staff to act contrary to federal statutes

---

[2]   *Id.* at 32:40

12

and the constitutional rights of parents by concealing from parents information related to their children's assertion of a discordant gender identity:

> Q: A student has exhibited behavior in school leading administrators or teachers to believe the student is LGBTQ+. Should the parents or legal guardians be notified?
> A: **No**. Outing a student, especially to parents, can be very dangerous to the students [sic] health and well-being. Some students are not able to be out at home because their parents are unaccepting of LGBTQ+ people out. As many as 40% of homeless youth are LGBTQ+, many of whom have been rejected by their families for being LGBTQ+. Outing students to their parents can literally make them homeless. (Exhibit A, p. 15) (emphasis added).

48.    Plaintiffs are informed and believe and based thereon allege that the 2018 Guide's authorization to conceal from parents their children's gender identity issues represented a *de facto* policy of the School Board, in accordance with Chairwoman Bowen's statement at the "All Together Now" conference in which she telegraphed the District's underlying position that school staff need not honor parents' guidance with respect to a child's claimed gender identity. [3]

49.    The 2018 Guide put together under the direct supervision of Defendant Rodgers with the knowledge and approval of Defendants Hanna and School Board members, further authorized and directed administrators and staff to deliberately disregard the rights of parents in a document titled "Leon County School District

---

[3]    *Id.* at 23:00.

Transgender/Gender Nonconforming Student Support Plan." ("2018 Student Support Plan") (Exhibit A, pp. 19-27).

50.     Part A of the 2018 Student Support Plan includes an intake checklist that asks whether the student's parents are aware of the student's asserted discordant gender identity, whether the parents are "supportive," and whether they should be notified.

51.     The 2018 Guide authorized **the minor student** to decide whether his or her parents will be notified of something as significant as the child's belief that he is not a boy or she is not a girl or distress concerning his or her biological sex. (Exhibit A, p. 19).

52.     Part B of the 2018 Student Support Plan, which was to be completed during a meeting with the student, LCS staff, and —only if the student consents— the parents, included the question:

> Are guardians(s) of this student aware and supportive of their child's gender transition? __Y __N. If not, what considerations must be accounted for in implementing this plan? (Exhibit A, p. 20).

53.     Under the Plan, it is the child who determines whether his or her parents are "supportive" of his or her "gender transition," and, therefore "entitled" to be notified and involved in addressing the issues surrounding the child's belief.

54.      Part B of the Student Support Plan includes questions regarding which name and pronoun the child will use, which communal sex-separated restroom,

locker room or shower they will use and with which sex-separated group the child will room on overnight trips.

55.    If the child indicated that his or her parents are not "supportive" and therefore not present at the meeting, then the Student Support Plan authorized minor children to make these profoundly consequential decisions with no notification to, input from or consent of their parents.

56.    Plaintiffs are informed and believe and based thereon allege that LCS administrators and staff were provided with the 2018 Guide and were trained and instructed by Dr. Rodgers and her staff to adhere to and implement the 2018 Guide whenever a child announced that he or she believed that he was not a boy or she was not a girl, or expressed distress with his or her biological sex (expressed a discordant "gender identity.").

57.    Plaintiffs are further informed and believe and based thereon allege that at least between 2018 and 2021 Dr. Rodgers and her staff instructed LCS staff that students who express a discordant gender identity are "protected by law" from having their parents notified without the child's consent.

58.    Plaintiffs are further informed and believe and based thereon allege that that at least between 2018 and 2021 Dr. Rodgers and her staff instructed LCS staff that under the law parents were not permitted to attend gender support plan meetings unless the child agreed.

59.    Plaintiffs are informed and believe and based thereon allege that at least between 2018 and 2021 Dr. Rodgers and her staff instructed LCS staff that parents could not by law be told anything about their child's expression of a discordant gender identity unless the child consented, in contravention of FERPA, Section 1002.22 and constitutional protections of parental rights to direct the upbringing and mental/medical health care of their children.

60.    The 2018 Guide authorizes LCS staff to permit children to use any sex-separated privacy facility that the child said corresponds to the "gender identity" the child asserts:

> Q: A student has complained about a person of the wrong sex in the bathroom or locker room area. What action should be taken?
> A: As part of LCS policy against discrimination based on gender identity, any student may use restroom and locker room facilities in accordance with their gender identity. Students cannot be singled out, such as requiring them to use a separate bathroom from their peers (i.e., using the nurse's bathroom or single occupancy bathroom only). Students may request additional privacy in locker rooms and should be provided with a private area where they can change clothes for gym class or athletic activities. Again, LGBTQ+ students cannot be singled out. The privacy areas should be offered to all students who wish to change with a higher level of privacy for any reason. Toilet stalls are not changing areas. (Exhibit A, p. 14).

61.    The purpose of sex-separate communal privacy facilities is to maintain the separation of the sexes to preserve personal privacy while in a state of undress or dealing with their toileting or personal hygiene and Plaintiffs reasonably expected

that Defendants would preserve that protective separation, especially in elementary and middle school.

62.    The 2018 Guide stated that children's choice of privacy facility is part of LCS's non-discrimination policy.

63.    LCS's Nondiscrimination and Equal Educational Opportunity Policy, 2260, provides in pertinent part:

> Any form of discrimination or harassment can be devastating to an individual's academic progress, social relationship, and/or personal sense of self-worth. As such the School Board will not discriminate nor tolerate harassment in its educational programs or activities on the basis of race, color, national origin, sex, disability (including HIV, AIDS, or sickle cell trait), marital status, age (except as authorized by law), religion, military status, ancestry, or genetic information, which are classes protected by State and/or Federal law (Protected Classes). In addition, the Board will not discriminate nor tolerate harassment in its educational programs or activities on the basis of sexual orientation or gender identity.

64.    Plaintiffs are informed and believe and based thereon allege that neither the non-discrimination policy nor any other published School Board policy, nor published School Board Administrative Procedure between 2018 and 2021 contained language alerting parents and students that the 2018 Guide authorized children to unilaterally choose which sex-separated privacy facility they would use based on their asserted gender identity.

65.    At least between 2018 and 2021 Defendant Rodgers and other administrators with the knowledge and consent of Mr. Hanna and the knowledge and

approval of the School Board authorized LCS staff to permit children who assert a discordant gender identity to unilaterally choose which sex-separated privacy facility they would use without the knowledge, input, or consent of their parents.

66.    Plaintiffs are informed and believe and based thereon allege that the 2018-2021 protocol granting children the unilateral choice of privacy facility represents a *de facto* policy sanctioned by the School Board.

67.    Chairwoman Bowen affirmed that authorizing children to choose which privacy facility to use was a *de facto* School Board policy when she publicly described facility choice as a "success story" for LCS's efforts to increase access and equity for LGBTQ+ students at the "All Together Now" conference: "We have worked with **students** on a case-by-case basis for bathroom usage when they bring to our attention issues on identity."[4]

68.    Plaintiffs were not notified that, pursuant to LCS policy, their children, including their 13-year-old daughter, could encounter and would be required to accept opposite sex students in their privacy facilities regardless of safety issues posed by the present of opposite sex students.

69.    The 2018 Guide also stated that the LCS nondiscrimination policy requires that LCS staff and students comply with a child's assertion that he or she must be called by a new name and/or pronouns or face a harassment charge:

---

[4]    *Id.* at 32:40.

Q: A student has complained that a teacher, student, or school employee has intentionally "misgendered" them. What does this mean and what should be done about it?

A: Misgendering a student is intentionally using the wrong gender pronouns. As part of LCS policy against discrimination based on gender identity, misgendering is considered harassment. Students, faculty and staff are expected to treat their peers with respect, including using their preferred gender pronouns, even if those pronouns are gender neutral, (i.e., "they", "them"). Similarly, consistent, intentional "deadnaming", or using the discarded birth name of a student, faculty, or staff member that is not the preferred name of that person is considered harassment. (Exhibit A, p. 14).

70.    Plaintiffs are informed and believe and based thereon allege that neither the non-discrimination policy nor any other published School Board policy, nor published School Board Administrative Procedure at least between 2018 and 2021 contained language alerting Plaintiffs or other parents and students that children would be permitted to unilaterally choose a new name and/or pronouns and that the school would coerce other children, teachers, and staff to use the new gender affirming name/pronouns under penalty of a harassment charge and attendant discipline.

71.    At least between 2018 and 2021 Defendant Rodgers and other administrators with the knowledge and consent of Mr. Hanna and the knowledge and approval of the School Board authorized and directed LCS staff to permit children who assert a discordant gender identity to unilaterally assert a new name and new pronouns and require that fellow students, teachers, staff, and other adults use the new identifiers or face harassment charges and attendant discipline.

19

72.     Plaintiffs were not notified that their children could be compelled to use a new name or pronoun for a classmate, *i.e.,* utter something that is false, or be subject to a harassment charge and attendant discipline, with no consideration given for the children's First Amendment rights.

73.     Plaintiffs are informed and believe and based thereon allege that the 2018-2021 protocol granting children the authority to choose an alternative name and pronouns without the knowledge and consent of their parents represents a *de facto* policy sanctioned by the School Board.

74.     Chairwoman Bowen affirmed that granting children the authority to choose an alternative name and pronouns without the knowledge and consent of their parents represents a *de facto* School Board policy at the "All Together Now" conference when she stated that name and pronoun choice was a challenge facing LGBTQ+ students that the School Board had addressed: "Affirmed names and pronouns are a central part of a student's identity. We want to get those right, so we include our pronouns in Zoom, or in class we say, 'Hi I am Mr. Stewart and I use the pronouns he/him.'"[5]

75.     Chairwoman Bowen further publicly affirmed that the School Board viewed parents, particularly parents who would not accede to their child's demands as obstacles to be overcome. She described rising family tensions, "stress of living

---

[5]     *Id.* at 15:11.

in a non-affirming household," and "parent/community pushback on LGBTQ+ inclusion" as challenges LGBTQ+ students were facing that the LCS Board had to address.[6]

76.    Chairwoman Bowen also publicly affirmed that the School Board was seeking to circumvent parents in her statement that "unmet medical needs" including puberty blockers (medications that arrest pubertal development in children) were a challenge for LGBTQ+ students that "hopefully we [the School Board] can" have remedies in place for.[7]

77.    Chairwoman Bowen did not mention parental involvement in providing such medical "remedies" to minor students as is required under the Constitution and Florida law.

78.    In asserting that "affirmed names and pronouns are a central part of a student's identity," Defendants acknowledge that names and pronouns are matters of a child's mental health and well-being, not academic concerns.

79.    Assertion of an alternate name and pronouns as authorized under the 2018 Guide is part of "social transitioning," which is recognized as a medical/ mental health treatment for children with gender dysphoria[8]:

---

[6]    *Id.*

[7]    *Id.*

[8]    By describing gender affirmation as a medical/mental health treatment for gender dysphoria, plaintiffs are not waiving any claims to challenge the medical or scientific validity of such therapies.

For young transgender children, the treatment of gender dysphoria consists of social transition, which involves changes that bring the child's outer appearance and lived experience into alignment with the child's core gender. Changes often associated with a social transition include changes in clothing, name, pronouns, and hairstyle. *Adams v. The Sch. Bd. of St. Johns Cty, Fla.,* No. 3:17-cv-00739, (M.D.Fla. June 28, 2017), Diane Ehrensaft Exp. Rep. 10-11 ECF 137-2.

80.    Under Florida law, medical/mental health care decisions for children under age 18 are to be made solely by parents, and no decisions can be made without parental consent. Fla. Stat. § 743.07.

81.    The 2018 Guide, prepared under the direction of Dr. Rodgers, approved by Mr. Hanna and implemented under Mr. Hanna's supervision by LCS staff, authorized LCS staff to violate Fla. Stat. § 743.07 by preparing and implementing Transgender Support Plans, which include medical/mental health decisions, for minor children without the knowledge or consent of parents.

82.    As described more fully *below,* by deliberately excluding Plaintiffs, including Mrs. Littlejohn, a licensed mental health professional, from discussions regarding what courts have acknowledged are mental health issues of A.G.'s assertion of a discordant gender identity, Defendants violated Fla. Stat. § 743.07, and fundamental rights guaranteed under the U.S. and Florida constitutions.

**Defendants Create A Secret Transgender Support Plan for A.G.**

83.    During spring 2020 A.G. was having difficulty adjusting to the remote learning that was in place because of the COVID-19 pandemic.

84.    Online learning was not conducive to A.G.'s ADHD and she began to get agitated and depressed sitting at the computer all day.

85.    LCS made counselors available for students who were having difficulty with COVID-19 remote learning and A.G. began working with Shellie Rogers, one of the counselors, in spring 2020 to address those difficulties.

86.    By late spring 2020, A.G. told her parents that she was confused about her gender.

87.    Mrs. Littlejohn learned that earlier in the year, three of A.G.'s friends had stated that they were transgender. She also observed that A.G. was receiving text messages containing transgender-related content from transgender friends.

88.    When A.G. expressed confusion about her gender, Plaintiffs informed Mrs. Rogers about the gender confusion and indicated that they were looking for a private counselor to help address those issues.

89.    Mrs. Rogers agreed to continue working with A.G. and include those issues while Plaintiffs looked for a private counselor.

90.    Plaintiffs found a new counselor who began seeing A.G. in summer 2020 and Mrs. Littlejohn informed Mrs. Rogers that A.G. was receiving therapy regarding her gender identity issues from the private counselor that the parents had chosen.

23

91.     As the school year approached, A.G. asked her parents to permit her to change her name to "J." and to use "they/them" pronouns.

92.     Plaintiffs did not agree to make those changes. Plaintiffs said that A.G. could use J. as a "nickname" at school but would continue to be referred to as A.G. and a female.

93.     On August 27, 2020, Mrs. Littlejohn emailed A.G.'s new math teacher, Rima Kelley.

94.     Mrs. Littlejohn told Mrs. Kelley that A.G. had expressed confusion about her gender during the spring semester, that the family was working on the issue including seeing a private counselor, that Plaintiffs did not consent to A.G.'s request to change her name and pronouns, but that A.G. could use J. as a "nickname" with classmates and teachers if she desired.

95.     Shortly after that communication, unbeknownst to Plaintiffs. A.G. approached Mrs. Thomas and requested to use a different name and pronouns.

96.     Without notifying Plaintiffs, Ms. Thomas and other Deerlake Middle School staff developed and implemented their covert gender affirmation plan as authorized by the 2018 Guide.

97.     But for an offhand comment by A.G., Mr. and Mrs. Littlejohn would never have known that Deerlake Middle School staff was actively and secretly implementing a formalized plan designed to affirm their daughter as "non-binary,"

24

using an alternate name and pronouns, and permitting their 13-year-old daughter to make significant decisions regarding her mental health and personal well-being without informing or involving her parents.

98.    On September 14, 2020, as she was getting into the car, A.G. told her mother that she had had a meeting with several school staff members and thought it was funny that they asked her what restroom she preferred to use as a result of changing her name.

99.    The same day, Mrs. Littlejohn emailed Defendant Thomas, asked for a time to discuss her serious concerns about A.G. being asked which restroom she wanted to use without her parents being informed.

100.    Mrs. Littlejohn repeated to Mrs. Thomas what she had told Mrs. Kelley, *i.e.* that she and Mr. Littlejohn did not consent to having A.G.'s name changed at school.

101.    Mrs. Thomas and Defendant Oliveri called Mrs. Littlejohn shortly afterwards, on September 14, 2020.

102.    Acting in accordance with the 2018 Guide and training from Dr. Rodgers, Mrs. Thomas and Ms. Oliveri told Mrs. Littlejohn that they could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff.

103.    Acting under the authorization and express direction contained in the 2018 Guide, Mrs. Thomas told Mrs. Littlejohn, a fellow mental health professional,

that she was not invited to the meeting because A.G., "by law" had to be the one to request her parents' attendance.

104.  Mrs. Thomas told Mrs. Littlejohn that [13-year-old] A.G. was now "protected" under a non-discrimination law that does not provide for parental notification or input.

105.  Mrs. Thomas instructed Mrs. Littlejohn to "contact Dr. Kathleen Rodgers at the district who oversees the policy."

106.  Mrs. Oliveri confirmed to Mrs. Littlejohn that LCS had established a protocol that she and Mrs. Thomas had implemented for students who express a desire to affirm a discordant gender identity at school and that the protocol did not require parent involvement or notification unless the student agreed.

107.  Mrs. Oliveri further stated that the protocol of not including parents without children's approval was in place to protect the children's safety, implying that A.G. would not be safe if her parents were informed about the school's affirmation of a discordant gender identity.

108.  Mrs. Thomas, who was aware of A.G.'s ADHD diagnosis, 504 Plan, and of Mrs. Littlejohn's status as a mental health professional, met with A.G. privately, in accordance with the 2018 Guide, without her parents being informed or permitted to be present to discuss A.G.'s assertion of a discordant gender identity,

26

and the school's intent to engage in gender affirming treatments, something which has been acknowledged in court cases to be medical/mental health treatment.

109.   Plaintiffs are informed and believe and based thereon allege that Mrs. Thomas raised with A.G., without the knowledge or consent of her parents, the idea of having a "Transgender Support Plan" meeting with A.G. and other Deerlake Middle School staff.

110.   Plaintiffs are informed and believe and based thereon allege Mrs. Thomas intentionally did not inform Mr. and Mrs. Littlejohn about the Transgender Support Plan meeting to discuss mental health issues related to their daughter because A.G. did not assert that she wanted them present.

111.   Plaintiffs learned from A.G. that she was never asked whether she wanted a parent present at the meeting.

112.   Plaintiffs are informed and believe and based thereon allege that Ms. Thomas was acting in accordance with the authorization and directive contained within the 2018 Guide that parents were not to be notified unless the child approved.

113.   Plaintiffs are informed and believe and based thereon allege that Ms. Thomas was acting in accordance with the 2018 Guide and training provided by Dr. Rodgers that claimed that children such as A.G. have a legal "right of privacy" vis-a-vis their parents so that information regarding children's assertion of a discordant gender identity is not to be disclosed to parents without the child's approval.

114.   Plaintiffs are informed and believe and based thereon allege that Mrs. Thomas physically filled out the Transgender Student Support Plan for A.G. as A.G. was asked about each item on the form while present in the meeting with other Deerlake Middle School staff but not her parents.

115.   On September 18, 2020, Mrs. Littlejohn sent an email to Dr. Rodgers, saying in pertinent part[9]:

> My daughter had a transgender meeting last week with multiple school officials.  Her father and I were not invited or notified of the meeting, which Mrs. Thomas explained is due to a state statute protecting transgender individuals.  My daughter told me she was not asked if she wanted a parent there, which is extremely upsetting to me as her parent. She has a 504 plan for her ADHD and we have been very involved in that process due to her inattention and focus issues.
>
> Her father and I have been supportive since she told us she was having gender identity issues in March and she has been seeing a counselor to help her process her feelings and seek help in understanding what she is going through.  My child is not opposed to having a parent involved so what do we need to do moving forward for her father or I to be present at these meetings and be involved in the plans? Just so you are aware, she is the fourth child in her friend group at Deerlake to change her name and gender identity. She has never expressed these feelings before March during quarantine. Her father and I are taking this very seriously and would like to be involved in any school plans.

116.   Dr. Rodgers told Mrs. Littlejohn that the parents would be permitted to be in future meetings and that she trusted that LCS staff would work to include the parents in future meetings.

---

[9]    Email from January Littlejohn to Dr. Kathleen Rodgers dated September 18, 2020.

28

117.   After hearing nothing further from LCS for nearly a month, on October 14, 2020, Mr. Littlejohn sent an email to Dr. Rodgers reiterating the facts as he knew them at the time.

118.   Mr. Littlejohn also expressed the parents' concerns about LCS staff holding secret meetings with A.G.[10]:

> I have several significant concerns about this situation. Our daughter is 13 years old and a minor. We are her natural parents and legal guardians. Our daughter is diagnosed with ADHD and has an active "504 Plan" on file with the school. Our daughter is also in counseling as a result of a referral by, or at least in consultation with, the school's guidance counselor. My wife and I have met with her counselor, and we have learned from her that it is common in children with ADHD to experience developmental delays in emotional maturity, among other things. In fact, our counselor believes that our daughter exhibits the emotional maturity of a typical 10 or 11 year old child.
>
> For all of these reasons, we find it incredible that she was given the opportunity to advocate for herself in this instance, without our knowledge or opportunity to participate. If it is in fact the school's position that it has the legal authority to conduct such business directly and confidentially with minors and without parental notice or consent, please send us the specific law, rule, or published policy reference that supports such a position. Further, we would like to be provided with any and all school records and other documents related to the meeting, a copy of the minutes of the meeting or, absent such minutes, a written summary of the meeting provided by a school official who was present at the meeting. If there is a law, rule, or published policy that prevents these records from being provided to us, please cite the specific authority.
>
> Finally, regarding the physical safety of our female child while at Deerlake, we have significant concerns and many questions related to

---

[10]    Email from Jeffrey Littlejohn to Dr. Kathleen Rodgers dated October 14, 2020.

29

her being given the opportunity to use the boy's restrooms. I realize that this statement is based only on our daughter's account of the meeting, and the reality may be different. Regardless, we would like to know exactly what was offered to our 13 year old female child on this subject, along with any additional limitations, conditions or precautions the school offered or was prepared to provide for our child, without our knowledge or consent. If there is a written school or District policy on the subject of "restroom preference," please provide it to us.

119.   Dr. Rodgers did not respond to the email.

120.   Mr. Littlejohn called Dr. Rodgers on October 29, 2020 and again asked for the specific Leon County school policy that allowed school officials to meet with their minor daughter without their consent.

121.   During the October 29, 2020, conversation with Dr. Rodgers, Mr. Littlejohn reiterated the parents' discontent that school staff spoke privately with their minor daughter, particularly about her bathroom preference, which is a safety issue.

122.   Exhibiting continuing disregard for the Littlejohns' concerns about the violation of their parental rights and for A.G.'s safety, during the October 29, 2020, conversation, Dr. Rodgers requested permission to meet privately with A.G. in order to get more information.

123.   Mr. Littlejohn rejected Dr. Rodgers' request for further private meetings with A.G.

124.   On November 2, 2020, Mr. and Mrs. Littlejohn met with Deerlake Principal Stephen Mills, who provided them with a copy of the Transgender/Gender

30

Nonconforming Student Support Plan that had been created on September 8, 2020, for A.G. by Deerlake Middle School staff in accordance with the 2018 Guide, without her parents' knowledge, participation, or consent.

125.    Mr. Mills was asked for but did not provide Mr. and Mrs. Littlejohn with any legal authority that permitted LCS staff to meet with their daughter or create such a plan without their knowledge or consent.

126.    Mr. Mills told Mr. and Mrs. Littlejohn that, again without notifying them and in disregard of their parental rights, Deerlake Middle School staff had scheduled a private follow up meeting with their daughter for the following day, November 3, 2020, to further discuss her Transgender Student Support Plan.

127.    Scheduling this meeting without notifying the Littlejohns contradicted their explicit directions that they be included in any future meetings and Dr. Rodgers' written statement that LCS staff would work to include the parents in any further meetings.

128.    Mr. Mills told Mr. and Mrs. Littlejohn that they could be present at the meeting.

129.    During the November 2, 2020 meeting, Mr. and Mrs. Littlejohn requested that the November 3, 2020 meeting be cancelled and advised that no further meetings regarding A.G.'s gender identity should be scheduled.

31

130.    During the November 2, 2020 meeting, Mrs. Littlejohn informed Mr. Mills that LCS's actions had harmed their relationship with their daughter and that they did not consent to any more private meetings that would exacerbate the harm and disrupt attempts to repair the relationship.

131.    Mrs. Littlejohn specifically requested that she be informed if A.G. expressed anything about gender identity to the teachers or counselors.

132.    After receiving the copy of A.G.'s Transgender Student Support Plan on November 2, 2020, Mr. and Mrs. Littlejohn for the first time learned what had been transpiring without their knowledge between LCS staff and their 13-year-old daughter since August 27, 2020.

133.    On November 2, 2020, Mr. and Mrs. Littlejohn learned that their daughter met with Veronica France, Taita Scott, and Mrs. Thomas on September 8, 2020 to create her Transgender Student Support Plan.

134.    In keeping with the 2018 Guide's authorization to conceal information from parents unless children consented, A.G.'s plan indicated her parents were aware, but not supportive of A.G.'s "gender transition," so staff needed to "engage in privacy" (*i.e.* conceal the truth) when speaking with the parents.

135.    In other words, LCS staff were directed to conceal from Mr. and Mrs. Littlejohn that their 13-year-old daughter was claiming a discordant gender identity and seeking to socially transition at school.

32

136.    Mr. and Mrs. Littlejohn also learned that as of September 8, 2020, teachers and staff at Deerlake Middle School had been told that A.G. identified as "nonbinary" and of her preferred name and pronouns.

137.    Having not received a response to the request for legal authority for LCS's actions by the time of the meeting with Mr. Mills, Mr. Littlejohn emailed Dr. Rodgers on November 2, 2020, and again requested "any written law, rule, policy and/or guidance on the process of school officials meeting with children about LGBTQ (or any other) issues without parental knowledge or consent."

138.    Dr. Rodgers did not respond.

139.    On November 6, 2020, Mr. Littlejohn sent another email repeating the request to Dr. Rodgers and indicating that he was ready to take further action to obtain the information.

140.    Dr. Rodgers then responded, "We currently do not have any Florida specific law **that obligates us to inform the parents or says we cannot listen to the student without their parent present**."[11]

141.    Dr. Rodgers further stated, "we do want to create a safe space for the student and honor their right to privacy while at the same time encourage their parent

---

[11]    Email from Dr. Kathleen Rodgers to Jeffrey Littlejohn dated November 6, 2020.

involvement in their support system as it relates to their issue – in this case one that is an orientation of non-binary."[12]

142.   Dr. Rodgers did not explain how LCS intended to encourage parent involvement without informing parents that there is an issue related to their child's gender identity.

143.   Dr. Rodgers did not explain how students' right to privacy was dishonored when their parents are informed of their child's assertion of a discordant gender identity.

144.   Staff had also been authorized by the 2018 Guide to actively and intentionally deceive A.G.'s parents by not using her preferred name or gender specific pronouns when talking to A.G.'s parents while using the preferred name and pronouns at other times.

145.   The 2018 Guide authorized staff to leave the decision regarding which privacy facilities to use up to the child, which meant that A.G. could begin using the male restroom at any time without her parents' knowledge.

146.   On November 2, 2020, Mr. and Mrs. Littlejohn also learned that their 13-year-old daughter indicated at the September 8, 2020, meeting with LCS staff, that she was "comfortable with" rooming with either boys or girls on overnight trips.

---

[12]   *Id.*

147.    On or about November 6, 2020, Mr. and Mrs. Littlejohn for the first time became aware of the existence and contents of the 2018 Guide which authorized LCS staff to affirm children's assertion of a discordant gender identity without question, without informing parents and concealing the truth from parents.

148.    On or about November 6, 2020, Mr. and Mrs. Littlejohn learned for the first time that for at least two years, LCS staff had been following a protocol, written under the direction of Dr. Rodgers with the knowledge and approval of Mr. Hanna and the School Board, that stated in no uncertain terms that parents were NOT to be told when their children asserted a discordant gender identity unless the minor child consented to telling the parents.

149.    On or about November 6, 2020, Mr. and Mrs. Littlejohn learned for the first time that for at least two years, LCS staff had been following a protocol written under the direction of Dr. Rodgers that authorized LCS staff to give children, like their 13-year-old daughter, authority to determine whether their parents would be informed of their gender identity decisions, including giving children the authority to decide which sex-separated privacy facilities they would use and with which sex they would room on overnight trips.

150.    On or about November 6, 2020, Mr. and Mrs. Littlejohn learned for the first time that for at least two years, LCS staff had been following a protocol, written under the direction of Dr. Rodgers and approved by Mr. Hanna, that actually

authorized and directed LCS staff to deceive parents by using different names and pronouns to refer to children in the presence of their parents than were used to refer to the children at school.

151.   On November 9, 2020, Mr. Littlejohn emailed Mr. Hanna to request a meeting regarding the 2018 Guide and the unauthorized interactions between LCS staff and their daughter.

152.   Mr. Littlejohn said "[W]e cannot understand the District's current policies regarding students changing their gender identities without parental notice or consent. It is particularly troubling to us that the District policy also prohibits school staff from disclosing this information to parents and in some circumstances, actually directs the deception of parents by using different names and pronouns around parents than at school."[13]

153.   Mr. and Mrs. Littlejohn met with Mr. Hanna on December 14, 2020 and discussed what had transpired with their daughter at Deerlake Middle School.

154.   During the December 14, 2020 meeting, Mr. Hanna did not dispute what had transpired and did not deny that there was a District protocol that provided that parents would not be notified when their children asserted a discordant gender identity unless their minor child consented.

---

[13]   Email from Jeffrey Littlejohn to Rocky Hanna dated November 9, 2020.

155.   On February 25 and 26, 2021, at the All Together Now conference, Ms. Bowen was promoting the development of the 2018 Guide, Transgender Student Support Plan, and the associated district protocols as school board success stories and non-affirming parents as "challenges" for LCS with respect to LGBTQ+ students.

156.   Dr. Rodgers also presented at the 2021 All Together Now conference said that students need to be able to show their "identities" to their teachers and for their peers to embrace those identities.[14]

157.   Dr. Rodgers did not say anything about parents being notified and consenting before their minor children's "identities" were announced and embraced by classmates and teachers.

158.   The actions taken by Defendants in undertaking a covert gender affirmation plan with Plaintiffs' daughter as authorized by the 2018 Guide and implemented under the direction of Dr. Rodgers with the approval of Mr. Hanna have caused great harm to Plaintiffs and their daughter, including exacerbation of psychological challenges for A.G., and disruption of the privacy and integrity of their family.

---

[14]    https://www.youtube.com/watch?v=KnCG2qJCc1s&list=PLUWXEguBhw7yBHiPXADDAc6tGtsvkNlDe&index=10 at 7:50.

159.   Defendants' actions have ruptured the family relationship between A.G. and her parents, sending the message to A.G. that her parents cannot be trusted and do not support her best interests.

160.   The rift created by the district between A.G. and her parents is profound and unlikely to be fully rectified.

161.   By cutting the Littlejohns out of the decision-making process for A.G., Defendants profoundly harmed a teenage girl whom Defendants knew to have learning difficulties and emotional delays and whom they knew had a therapist chosen by her parents and a mental health professional as a parent.

162.   It is not yet known if it will be possible to fully reverse this profound psychological and emotional damage caused by Defendants' actions.

163.   As a direct result of Defendants' actions and their deliberate disregard of Plaintiffs' parental rights, Plaintiffs and their daughter have suffered and are continuing to suffer, *inter alia,* a) emotional distress, b) exacerbation of A.G.'s psychological and educational difficulties, requiring ongoing counseling and other interventions, c) ongoing emotional and psychological damage to their family dynamic, requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, d) increased costs for providing alternatives for A.G. in order for her to receive an appropriate education

untainted by ideological distractions which exacerbate her developmental difficulties and diminish her academic potential.

### FIRST CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Substantive Due Process Right to Direct the Upbringing of Their Children under the U.S. Constitution)
### (Against All Defendants)

164. Plaintiffs incorporate the factual allegations in paragraphs 16-163 by reference as if set forth in full.

165. The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 68 (2000)

166. Defendants together, and each of them individually, violated Plaintiffs' fundamental right to make decisions concerning the care, custody, and control of their children, as described more particularly below.

**Allegations against Defendant School Board**

167. Defendant School Board violated Plaintiffs' fundamental right to make decisions regarding the custody, care, and control of their children through its prior knowledge and authorization of preparation of the 2018 Guide and its contents.

168. Defendant School Board violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children through its prior

knowledge and authorization of preparation of the 2018 Guide and approved of its contents, including its directive to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

169.   Defendant School Board violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children through its prior knowledge and authorization of the preparation of the 2018 Guide and approval of its contents, including its directive to actively and intentionally deceive parents by using a particular name for their child at school and another name in the presence of the parents.

170.   Defendant School Board violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children through its prior knowledge and authorization of the preparation of the 2018 Guide and approval of its contents, including its statements that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

171.   Defendant School Board deliberately chose to continue promoting and using the 2018 Guide for at least three years even after Chairwoman Bowen publicly acknowledged that the 2018 Guide authorized active concealment and deception of parents regarding their children's gender identity, thereby affirming it was a custom

and practice of the School Board to conceal from parents information regarding their children's assertion of a discordant gender identity in violation of parents' fundamental rights to direct the upbringing of their children.

172. Defendant's custom and practice of concealing from parents information regarding their children's assertion of a discordant gender identity was ratified by Chairwoman Bowen's public statements in 2021 promoting the 2018 Guide and its contents as a success story for LCS's efforts to protect LGBTQ+ students.

173. Defendant acted with deliberate indifference to Plaintiffs' fundamental parental rights through its prior knowledge and authorization of development and implementation of the 2018 Guide and approving its contents which 1) authorized LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) deliberately

misrepresented federal law and regulations regarding parental rights to their children's education records.

174.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

175.   Plaintiffs' constitutionally protected right to direct the care, custody and control of their children was violated as the plainly obvious consequence of the School Board's actions in authorizing development and implementation of the 2018 Guide and approving its contents that authorized and directed actions that violated Plaintiffs' fundamental parental rights as stated above.

176.   Defendant School Board cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing and education of their children.

177.   Defendant's ratification of a directive to conceal information from and actively deceive parents is not narrowly tailored.

178.   Defendant School Board's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Hanna**

179.   Defendant Hanna violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when he

supervised the development of the 2018 Guide and approved of its contents, including its misstatement of parental rights under federal statutes and regulations.

180.   Defendant Hanna violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when he supervised the development and implementation of the 2018 Guide, approved of and/or failed to review and require revision of its contents, including its authorization to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

181.   Defendant Hanna violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when he supervised the preparation and implementation of the 2018 Guide and approved or failed to review and require revision of its contents, including authorizing LCS staff to actively deceive parents by using a particular name for their child at school and another name in the presence of the parents.

182.   Defendant Hanna violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when he supervised the preparation and application of the 2018 Guide, nd approved of and/or reviewed and failed to revise its contents, including its statements that information

regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

183.   Defendant Hanna acted with deliberate indifference to Plaintiffs' fundamental parental rights by failing to adequately supervise and direct preparation of the 2018 Guide so that it was implemented with contents which 1) authorized LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) deliberately misrepresented federal law and regulations regarding parental rights to their children's education records.

184.   Defendant Hanna violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children by failing to properly supervise the training of or failing to train LCS staff regarding parental rights to be informed of and included in decisions related to their children's safety and well-being.

44

185. Defendant Hanna violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children by failing to properly supervise the training of or failing to train LCS staff regarding the provisions of federal law according parents the sole right to make changes to their children's educational records.

186. Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

187. Plaintiffs' constitutionally protected right to direct the upbringing and education of their children was violated as the plainly obvious consequence of Mr. Hanna's actions in supervising development and implementation of the 2018 Guide and approving or failing to review and revise its contents that authorized and directed actions that violated Plaintiffs' fundamental parental rights as stated above.

188. Defendant Hanna cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, health, welfare, and education of their children, and Defendant's implicit approval of authorizing that 1) information be concealed from parents, and that 2) staff deceive parents, is not narrowly tailored.

189. Defendant Hanna's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Rodgers**

190. Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she supervised the development and implementation of the 2018 Guide and drafted and/or approved of its contents, including its deliberate misstatement of parental rights under federal statutes and regulations.

191. Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she supervised the development and implementation of the 2018 Guide, and drafted and/or approved of its contents, including its authorization to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

192. Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including authorizing and directing LCS staff to actively deceive parents by using a particular name for their child at school and another name in the presence of the parents.

193.    Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including its directive that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

194.    Defendant Rodgers acted with deliberate indifference to Plaintiffs' fundamental parental rights by directing preparation of the 2018 Guide so that it was implemented with contents which 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, 5) deliberately misrepresented federal law and regulations regarding parental rights to their children's education records and 6) failed to timely and directly respond to Plaintiffs' repeated requests for information.

195.    Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children by training and instructing LCS staff that parents were not to be notified when their children asserted a discordant gender identity unless the child consented to informing the parents.

196.    Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children by training and directing LCS staff to create covert gender affirmation plans for children who assert a discordant gender identity and to not permit parent participation in the plans unless the child consented.

197.    Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children by training and directing LCS staff to actively deceive parents by using one name and set of pronouns for children while at school and another when parents are present.

198.    Defendant Rodgers violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children by training and instructing LCS staff that the law protects the confidentiality of children's assertion of a discordant gender identity and that under the law parents cannot be told about their children's gender identity issues or the District's covert gender affirmation plans unless the child consents.

199.  Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

200.  Plaintiffs' constitutionally protected right to direct the upbringing, health, welfare and education of their children was violated as the plainly obvious consequence of Dr. Rodgers' actions in supervising development of the 2018 Guide and drafting and/or approving its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

201.  Defendant Rodgers cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, health, welfare and education of their children, and Defendant's drafting or approval of language authorizing that information be concealed from parents and that staff deceive parents is not narrowly tailored.

202.  Defendant Rodgers' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Thomas**

203.  Defendant Thomas violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she met with A.G., whom she knew to be subject to a 504 Plan and to have ADHD, in private to

49

discuss A.G.'s request to use a new name and pronouns and otherwise be affirmed as having a "nonbinary" gender identity without notifying Plaintiffs.

204.   Defendant Thomas violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she implemented the 2018 Guide's covert gender affirmation plan for A.G. by scheduling a meeting between A.G. and Deerlake Middle School staff and intentionally excluding Mr. and Mrs. Littlejohn from the meeting, despite Mrs. Littlejohn being present at all 504 meetings for A.G., being a licensed mental health professional, and being aware of and actually disclosing A.G.'s discordant gender identity to Defendant Thomas.

205.   Defendant Thomas violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff because [at age 13] A.G. was protected under the law from having the information disclosed to her parents.

206.   As an experienced educator, Mrs. Thomas knew or should have known that under FERPA and its implementing regulations, Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

207. Defendant Thomas violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she told Mrs. Littlejohn that 13-year-old A.G. was now "protected" under a non-discrimination law that does not include parental notification or input.

208. As an experienced educator, Mrs. Thomas knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input regarding their child's gender identity.

209. Defendant Thomas acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient, Mrs. Littlejohn's knowledge of such discordant gender identity and status as a licensed mental health professional, and the absence of legal basis for a claim of confidentiality on the part of A.G.

210. Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

211. Plaintiffs' constitutionally protected right to direct the upbringing, health, welfare, care, and control of their children was violated as the plainly obvious consequence of Mrs. Thomas' actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s well-being and safety as stated above.

212.    Defendant Thomas cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing and education of their children.

213.    Defendant's actions in preparing and implementing a covert gender affirmation plan, actively concealing information from parents and excluding parents from significant decision-making related to their child's safety and welfare as described above are not narrowly tailored.

214.    Defendant Thomas' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Oliveri**

215.    Defendant Oliveri violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she implemented the 2018 Guide's authorized covert gender affirmation plan for A.G. and intentionally excluding Mr. and Mrs. Littlejohn from participation in development of the plan.

216.    Defendant Oliveri violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September

8, 2020, meeting with LCS staff because at age 13 A.G. was protected under the law from having the information disclosed to her parents.

217.   As an experienced educator, Mrs. Oliveri knew or should have known that under FERPA and its implementing regulations Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

218.   Defendant Oliveri violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their children when she told Mrs. Littlejohn that 13-year-old A.G. was now "protected" under a non-discrimination law that does not include parental notification or input.

219.   As an experienced educator, Mrs. Oliveri knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input regarding their child's gender identity.

220.   Defendant Oliveri acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 plan recipient and the absence of legal basis for a claim of confidentiality on the part of A.G.

221.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

222.   Plaintiffs' constitutionally protected right to direct the upbringing and education of their children was violated as the plainly obvious consequence of Mrs. Oliveri's actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s well-being and safety. as stated above.

223.   Defendant Oliveri cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, health, welfare and education of their children.

224.   Defendant's actions in preparing and implementing a covert gender affirmation plan, actively concealing information from parents and excluding parents from significant decision-making related to their child's safety and welfare as described above are not narrowly tailored.

225.   Defendant Oliveri's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

### (Violation of Plaintiffs' Fundamental Right to Direct the Medical and Mental Health Decision-making for Their Children Under the U.S. Constitution) (Against All Defendants)

226.   Plaintiffs incorporate the factual allegations in Paragraphs 16-163 by reference as if set forth in full.

54

227.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the medical and mental health decision-making for their children. *Parham v. J. R.*, 442 U.S. 584 (1979); *Arnold v. Bd. of Educ. of Escambia Cty*., 880 F.2d 305, 314 (11th Cir.1989).

228.   Social transitioning of a child through, *inter alia*, use of an alternate name and pronouns, is part of a mental health treatment protocol for gender dysphoria. *Adams v. School Bd. of St. Johns County*, 318 F. Supp. 3d 1293, 1299-1300 (M.D. Fla. 2018); *Grimm v. Gloucester County Sch. Bd*., 972 F.3d 586, 596 (4th Cir. 2020).

229.   Social transition is also regarded as part of medical treatment for transgender children, *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dept. of Educ*., No. 2:16-524(S.D.Ohio May 20, 2016) Diane Ehrensaft Decl. 8 ECF 35-4.

230.   By excluding parents from discussions regarding their child's/children's assertion of a discordant gender identity, authorizing and implementing covert gender affirmation plans, authorizing concealment of information and active deception of parents regarding children's social transitioning, Defendants have made decisions that affect the medical and mental health care of children in contravention of Plaintiffs' fundamental rights.

231.   As described more particularly below, Defendants have deprived Plaintiffs of their fundamental right to direct decisions regarding the health and well-

55

being of their children and sought to supplant their authority for Plaintiffs' authority as fit parents to be the ultimate decisionmakers regarding the physical and mental health of their child, including decisions related to their child's confusion or distress about her sex or gender identity.

**Allegations against Defendant School Board**

232.    Defendant School Board violated Plaintiffs' fundamental right to direct the medical and mental health care for their children through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approved of its contents, including its authorization to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity, *i.e.,* engage in mental health treatment, without the knowledge and consent of parents.

233.    Defendant School Board violated Plaintiffs' fundamental right to make medical and mental health decisions for their children through its prior knowledge and authorization of preparation of the 2018 Guide and approved of its contents, including its statements that information regarding affirmation of children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

234.    Defendant School Board deliberately chose to continue promoting and implementing the 2018 Guide for at least three years despite its authorization of

active concealment and deception of parents regarding their children's gender identity, thereby affirming it was a custom and practice of the School Board to conceal from parents information regarding social affirmation of a discordant gender identity, *i.e.,* mental health treatment, in violation of parents' fundamental rights to direct medical and mental health care decision making for their children.

235. Defendant's custom and practice of concealing from parents information regarding their children's assertion of a discordant gender identity and social affirmation, *i.e.,* mental health treatment, was ratified by Chairwoman Bowen's public statements in 2021 promoting the 2018 Guide and its contents as a success story for LCS's efforts to protect LGBTQ+ students.

236. Defendant acted with deliberate indifference to Plaintiffs' fundamental parental rights through its prior knowledge and authorization of development and implementation of the 2018 Guide and approving its contents which 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's social affirmation of their child's asserted discordant gender identity, *i.e.,* mental health treatment, 2) authorized and directed LCS staff to prepare and implement covert gender affirmation plans, *i.e.,* direct mental health care for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, and 4) authorized and

directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations.

237.  Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

238.  Plaintiffs' constitutionally protected right to direct the medical and mental health decision making for their children was violated as the plainly obvious consequence of the School Board's actions in authorizing development and implementation of the 2018 Guide and approving its contents that authorized and directed actions that violated Plaintiffs' fundamental parental rights as stated above.

239.  Defendant School Board cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing and education of their children.

240.  Defendant's explicit authorization to conceal information from and actively deceive parents and to exclude parents from decisions that affect the medical and mental health of their children as described above is not narrowly tailored.

241.  Defendant School Board's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Hanna**

242.   Defendant Hanna violated Plaintiffs' fundamental right to make medical and mental health decisions for their children when he supervised the development and implementation of the 2018 Guide,  approved of and/or failed to review and require revision of its contents, including its authorization and direction to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

243.   Defendant Hanna violated Plaintiffs' fundamental right to make medical and mental health care decisions for their children when he supervised the preparation and implementation of the 2018 Guide and approved of and/or reviewed and failed to revise its contents, including its statements that information regarding children's assertion of a discordant gender identity, a mental health issue, must be concealed from parents to protect children's safety.

244.   Defendant Hanna acted with deliberate indifference to Plaintiffs' fundamental parental rights by failing to adequately supervise and direct preparation of the 2018 Guide so that it was approved by the Board and implemented with contents which 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, *i.e.*, mental health treatment 2) authorized and

directed LCS staff to prepare covert gender affirmation plans for children, *i.e.,* engage in mental health treatments, without notifying parents, and 3) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations.

245.    Defendant Hanna violated Plaintiffs' fundamental right to make medical and mental health care decisions for their children by failing to properly supervise the training of or failing to train LCS staff regarding parental rights to be informed of and included in decisions related to their children's mental health.

246.    Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

247.    Plaintiffs' constitutionally protected right to direct medical and mental health care decisions for their children was violated as the plainly obvious consequence of Mr. Hanna's actions in supervising development and implementation of the 2018 Guide and approving or failing to review and revise its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

248.    Defendant Hanna cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct medical and mental health care decision making for their children.

249.    Defendant's approval authorizing and directing that information be concealed from parents and that staff deceive parents and exclude parents from decisions that affect the medical and mental health of their children as described above is not narrowly tailored.

250.    Defendant Hanna's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Rodgers**

251.    Defendant Rodgers violated Plaintiffs' fundamental right to make medical and mental health decisions for their children when she supervised the development and implementation of the 2018 Guide and drafted and/or approved of its contents, including its authorization to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity, *i.e.,* engage in mental health treatment, without the knowledge and consent of parents.

252.    Defendant Rodgers violated Plaintiffs' fundamental right to make medical and mental health decisions for their children when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including its statements that information regarding children's assertion

of a discordant gender identity must be concealed from parents to protect children's safety.

253.   Defendant Rodgers acted with deliberate indifference to Plaintiffs' fundamental parental rights by directing preparation of the 2018 Guide so that it was implemented with contents which 1) authorized LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, *i.e.,* mental health treatment, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children, *ie.,* engage in mental health treatment, without notifying parents, and 3) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations.

254.   Defendant Rodgers violated Plaintiffs' fundamental right to make medical and mental health decisions for their children by training LCS and instructing staff that parents were not to be notified when their children asserted a discordant gender identity, a mental health issue, unless the child consented to informing the parents.

255.   Defendant Rodgers violated Plaintiffs' fundamental right to make medical and mental health decisions for their children by training and directing LCS staff to create covert gender affirmation plans for children who assert a discordant

gender identity, *i.e.,* engage in mental health treatment, and to not permit parent participation in the plans unless the child consented.

256.    Defendant Rodgers violated Plaintiffs' fundamental right to make medical and mental health decisions for their children by training and instructing LCS staff that the law protects the "confidentiality" of children's assertion of a discordant gender identity vis-à-vis their parents and that under the law parents cannot be told about their children's gender identity, mental health, issues or the District's covert gender affirmation plans, *i.e.,* mental health treatment, unless the child consents.

257.    Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

258.    Plaintiffs' constitutionally protected right to make medical and mental health decisions for their children was violated as the plainly obvious consequence of Dr. Rodgers' actions in supervising development and implementation of the 2018 Guide and drafting and/or approving its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

259.    Defendant Rodgers cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to make medical and mental health decisions for their children.

63

260.   Defendant's drafting or approval of language authorizing and directing that information be concealed from parents and that staff deceive parents and exclude parents from decisions that affect the medical and mental health of their children as described above is not narrowly tailored.

261.   Defendant Rodgers' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Thomas**

262.   Defendant Thomas violated Plaintiffs' fundamental right to make medical and mental health decisions for their child when she met with A.G., whom she knew to be subject to a 504 plan and to have ADHD, in private to discuss A.G.'s request to use a new name and pronouns and otherwise be affirmed as having a "nonbinary" gender identity, which is a mental health issue, without notifying Plaintiffs.

263.   Defendant Thomas violated Plaintiffs' fundamental right to make medical and mental health decisions for their child when she implemented the 2018 Guide's authorized covert gender affirmation plan, *i.e.*, mental health treatment, for A.G. by scheduling a meeting between A.G. and Deerlake Middle School staff and intentionally excluded Mr. and Mrs. Littlejohn from the meeting, despite Mrs.

Littlejohn's being present at all 504 Plan meetings for A.G. and being a licensed mental health professional.

264. Defendant Thomas acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient, Mrs. Littlejohn's status as a licensed mental health professional, and the absence of legal basis for a claim of confidentiality on the part of A.G. vis-à-vis her parents.

265. Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

266. Plaintiffs' constitutionally protected right to make medical and mental health decisions for their child was violated as the plainly obvious consequence of Mrs. Thomas' actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s mental health as stated above.

267. Defendant Thomas cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to make medical and mental health decisions for their children.

268. Defendant's actions in preparing and implementing a covert gender affirmation plan, actively concealing information from parents and excluding

65

parents from decisions that affect the medical and mental health of their children as described above are not narrowly tailored.

269.   Defendant Thomas' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Oliveri**

270.   Defendant Oliveri violated Plaintiffs' fundamental right to make medical and mental health decisions for their children when she implemented the 2018 Guide's authorized covert gender affirmation plan for A.G. and intentionally excluded Mr. and Mrs. Littlejohn from participation in development of the mental health treatment plan.

271.   Defendant Oliveri acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient and the absence of legal basis for a claim of confidentiality on the part of A.G.

272.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

273.   Plaintiffs' constitutionally protected right to make medical and mental health decisions for their children was violated as the plainly obvious consequence

66

of Mrs. Oliveri's actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s mental health as stated above.

274.   Defendant Oliveri cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to make medical and mental health decisions for their children.

275.   Defendant's actions in preparing and implementing a covert gender affirmation plan, actively concealing information from parents and excluding parents from decisions that affect the medical and mental health of their children as described above are not narrowly tailored.

276.   Defendant Oliveri's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

<div align="center">

**THIRD CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Right to Familial Privacy Under the U.S. Constitution)**
**(Against All Defendants)**

</div>

277.   Plaintiffs incorporate the factual allegations in Paragraphs 16-163 by reference as if set forth in full.

278.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this Nation's history and tradition through which moral and cultural values are passed

67

down. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

279.    In adopting and implementing the directives in the Guide, and particularly in implementing the directives with Plaintiffs' daughter with no notice to or consent by Plaintiffs, Defendants have impermissibly injected themselves into the private realm of Plaintiffs' family and violated Plaintiffs' rights to make decisions regarding their children's well-being, as described more particularly below.

**Allegations against Defendant School Board**

280.    Defendant School Board violated Plaintiffs' fundamental right to familial privacy through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approval of its contents, including its misstatement of parental rights under federal statutes and regulations.

281.    Defendant School Board violated Plaintiffs' fundamental right to familial privacy through its prior knowledge and authorization of the preparation and implementation of the 2018 Guide and approval of its contents, including its authorization to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

282.    Defendant School Board violated Plaintiffs' fundamental right to familial privacy through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approval of its contents, including its authorization to actively and purposely deceive parents by using a particular name and pronouns for their child at school and another name and pronouns in the presence of the parents.

283.    Defendant School Board violated Plaintiffs' fundamental right to familial privacy through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approval of its contents, including its statements and directives that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

284.    Defendant School Board deliberately chose to continue promoting and implementing the 2018 Guide for at least three years despite its authorization of active concealment and deception of parents regarding their children's gender identity, thereby affirming and establishing it as a custom and practice of the School Board to conceal from parents information regarding their children's assertion of a discordant gender identity in violation of parents' fundamental rights to familial privacy.

285.   Defendant's custom and practice of concealing from parents information regarding their children's assertion of a discordant gender identity was ratified by Chairwoman Bowen's public statements in 2021 promoting the 2018 Guide and its contents as a success story for LCS's efforts to protect LGBTQ+ students.

286.   Defendant acted with deliberate indifference to Plaintiffs' fundamental parental rights by authorizing the development and implementation of the 2018 Guide and approving its contents which: 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare and implement covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) misrepresented federal law and regulations regarding parental rights to their children's education records.

287.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

288. Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of the School Board's actions in the development and implementation of the 2018 Guide and approving its contents which authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

289. Defendant School Board cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to familial privacy.

290. Defendant's explicit authorization to conceal information from, actively deceive parents and exclude parents from decisions that directly affect their familial relations and privacy as described above is not narrowly tailored.

291. Defendant School Board's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Hanna**

292. Defendant Hanna violated Plaintiffs' fundamental right to familial privacy when he supervised the development and implementation of the 2018 Guide and approved of its contents, including its misstatement of parental rights under federal statutes and regulations.

293.   Defendant Hanna violated Plaintiffs' fundamental right to familial privacy when he supervised the development and implementation of the 2018 Guide, approved of and/or failed to review and require revision of its contents, including its authorization and direction to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

294.   Defendant Hanna violated Plaintiffs' fundamental right to familial privacy when he supervised the preparation and implementation of the 2018 Guide and approved or failed to review and require revision of its contents, including authorizing and directing LCS staff to actively deceive parents by using a particular name and pronouns for their child at school and another name and pronouns in the presence of the parents.

295.   Defendant Hanna violated Plaintiffs' fundamental right to familial privacy when he supervised the preparation and implementation of the 2018 Guide and approved of or failed to require revision of its contents, including its statements that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

296.   Defendant Hanna acted with deliberate indifference to Plaintiffs' fundamental parental rights by failing to adequately supervise and direct preparation of the 2018 Guide so that it was approved by the Board and implemented with

72

contents which: 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) misrepresented federal law and regulations regarding parental rights to their children's education records.

297.   Defendant Hanna violated Plaintiffs' fundamental right to familial privacy by failing to properly supervise the training of or failing to train LCS staff regarding parental rights to be informed of and included in decisions that affect their family relations and privacy.

298.   Defendant Hanna violated Plaintiffs' fundamental right to familial privacy by failing to properly supervise the training of or failing to train LCS staff regarding the provisions of federal law according parents the sole right to make changes to their children's educational records and the lack of an exemption for gender identity issues.

299.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

300.   Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of Mr. Hanna's actions in supervising development and implementation of the 2018 Guide and approving or failing to review and revise its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

301.   Defendant Hanna cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to familial privacy.

302.   Defendant's approval authorizing that information be concealed from parents and that staff deceive parents and exclude parents from decisions that directly affect their familial relations and privacy as described above is not narrowly tailored.

303.   Defendant Hanna's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Rodgers**

304.   Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy when she supervised the development and implementation of the 2018

Guide and drafted and/or approved of its contents, including its misstatement of parental rights under federal statutes and regulations.

305.  Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy when she supervised the development and implementation of the 2018 Guide, and drafted and/or approved of its contents, including its authorization and direction to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

306.  Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including authorizing and directing LCS staff to actively deceive parents by using a particular name and pronouns for their child at school and another name and pronouns in the presence of the parents.

307.  Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including its statements and directives that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

308.  Defendant Rodgers acted with deliberate indifference to Plaintiffs' fundamental parental rights by directing preparation of the 2018 Guide so that it was

implemented with contents which: 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) misrepresented federal law and regulations regarding parental rights to their children's education records.

309.   Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy by training and instructing LCS staff that parents were not to be notified when their children asserted a discordant gender identity unless the child consented to informing the parents.

310.   Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy by training and instructing LCS staff to create and implement covert gender affirmation plans for children who assert a discordant gender identity and to not permit parent participation in the plans unless the child consented.

311.   Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy by training and instructing LCS staff to actively deceive parents by using one name and set of pronouns for children while at school and another when parents are present.

312.   Defendant Rodgers violated Plaintiffs' fundamental right to familial privacy by training and instructing LCS staff that the law protects the confidentiality of children's assertion of a discordant gender identity vis-à-vis their parents and that under the law parents cannot be told about their children's gender identity issues or the District's covert gender affirmation plans unless the child consents.

313.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

314.   Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of Dr. Rodgers' actions in supervising development and implementation of the 2018 Guide and drafting and/or approving its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

315.   Defendant Rodgers cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to familial privacy.

316.   Defendant's drafting or approval of language authorizing and directing that information be concealed from parents and that staff deceive parents and exclude parents from decisions that directly affect their familial relations and privacy as described above is not narrowly tailored.

317.   Defendant Rodgers' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Thomas**

318.   Defendant Thomas violated Plaintiffs' fundamental right to familial privacy when she met with A.G., whom she knew to be subject to a 504 Plan and to have ADHD, in private to discuss A.G.'s request to use a new name and pronouns and otherwise be affirmed as having a "nonbinary" gender identity without notifying Plaintiffs.

319.   Defendant Thomas violated Plaintiffs' fundamental right to familial privacy when she implemented the 2018 Guide's authorized covert gender affirmation plan for A.G. by scheduling a meeting between A.G. and Deerlake Middle School staff and intentionally excluded Mr. and Mrs. Littlejohn from the meeting, despite Mrs. Littlejohn's being present at all 504 plan meetings for A.G. and being a licensed mental health professional.

320.   Defendant Thomas violated Plaintiffs' fundamental right to familial privacy when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff because at age 13 A.G. was protected under the law from having the information disclosed to her parents.

321.   As an experienced educator, Mrs. Thomas knew or should have known that under FERPA and its implementing regulations Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

322.   Defendant Thomas violated Plaintiffs' fundamental right to familial privacy when she told Mrs. Littlejohn that 13-year-old A.G. was now "protected" under a non-discrimination law against her parents that does not include parental notification or input.

323.   As an experienced educator, Mrs. Thomas knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input on issues regarding their child's gender identity.

324.   Defendant Thomas acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient, Mrs. Littlejohn's status as a licensed mental health

professional, and the absence of legal basis for a claim of confidentiality on the part of A.G. vis-à-vis her parents.

325. Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

326. Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of Mrs. Thomas' actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions directly affecting A.G.s familial relations and privacy as stated above.

327. Defendant Thomas cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to familial privacy.

328. Defendant's actions in preparing and implementing a covert gender affirmation plan, actively concealing information from parents and excluding parents from decisions that directly affect their familial relations and privacy as described above are not narrowly tailored.

329. Defendant Thomas' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Oliveri**

330.   Defendant Oliveri violated Plaintiffs' fundamental right to familial privacy when she implemented the 2018 Guide's authorized covert gender affirmation plan for A.G. and intentionally excluding Mr. and Mrs. Littlejohn from participation in development of the plan.

331.   Defendant Oliveri violated Plaintiffs' fundamental right to familial privacy when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff because at age 13 A.G. was protected under the law from having the information disclosed to her parents.

332.   As an experienced educator, Mrs. Oliveri knew or should have known that under FERPA and its implementing regulations Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

333.   Defendant Oliveri violated Plaintiffs' fundamental right to familial privacy when she told Mrs. Littlejohn that 13-year-old A.G. was now "protected" under a non-discrimination law that does not include parental notification or input.

334.   As an experienced educator, Mrs. Oliveri knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input regarding their child's gender identity.

81

335.   Defendant Oliveri acted with deliberate indifference to Plaintiffs'
fundamental parental rights by concealing information from Plaintiffs regarding
A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status
as a 504 Plan recipient and the absence of legal basis for a claim of confidentiality
on the part of A.G.

336.   Defendant's deliberate indifference to Plaintiffs' rights resulted in
deprivation of their fundamental constitutional rights.

337.   Plaintiffs' constitutionally protected right to familial privacy was
violated as the plainly obvious consequence of Mrs. Oliveri's actions in
implementing the authorized covert gender affirmation plan and concealment of
information from parents to exclude Plaintiffs from critical decisions related to
A.G.'s familial relations and privacy as stated above.

338.   Defendant Oliveri cannot assert a compelling governmental interest for
disregarding Plaintiffs' long-established fundamental constitutional right to familial
privacy,

339.   Defendant's actions in preparing a covert gender affirmation plan,
actively concealing information from parents and excluding parents from decisions
that directly affect their familial relations and privacy as described above are not
narrowly tailored.

340.   Defendant Oliveri's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

### FOURTH CAUSE OF ACTION
### Violation of Plaintiffs' Right to Privacy Under Article 1, § 23 of the Florida Constitution.
### (Against all Defendants)

341.   Plaintiffs incorporate the factual allegations in Paragraphs 16-163 by reference as if set forth in full.

342.   Plaintiffs, as Floridians, enjoy an explicit right of privacy under Article 1, § 23 of the Florida Constitution, which provides in pertinent part that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life."

343.   Under Article 1, § 23 of the Florida Constitution, "the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." *Von Eiff v. Azicri*, 720 So.2d 510 (FL 1998).

344.   As set forth more particularly below, Defendants have intentionally intruded upon Plaintiffs' fundamental right to raise their children by drafting and implementing the 2018 Guide and its directives that exclude parents from decision-making about their children's assertion of a discordant gender identity, conceal information from parents regarding actions taken by LCS staff related to their child's

asserted discordant gender identity, deceive parents about identifiers used to describe their children at school and other matters related to their child's asserted discordant gender identity and otherwise interfere with parents' ability to direct their children's upbringing.

345. Defendants have intruded upon Plaintiffs' fundamental rights as described below without any evidence that Plaintiffs' daughter was or would be threatened with harm if Plaintiffs are permitted to participate in decision-making related to her assertion of a discordant gender identity.

**Allegations against Defendant School Board**

346. Defendant School Board violated Plaintiffs' fundamental right of privacy to raise their children through its prior knowledge and authorization of the preparation and implementation of the 2018 Guide and approval of its contents, including its misstatement of parental rights under federal statutes and regulations.

347. Defendant School Board violated Plaintiffs' fundamental right of privacy to raise their children through its prior knowledge and authorization of the preparation and implementation of the 2018 Guide and approval of its contents, including its authorization and directives to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

348.   Defendant School Board violated Plaintiffs' fundamental right of privacy to raise their children through its prior knowledge and authorization of the preparation and implementation of the 2018 Guide and approval of its contents, including its authorization and directive to actively deceive parents by using a particular name for their child at school and another name in the presence of the parents.

349.   Defendant School Board violated Plaintiffs' fundamental right of privacy to raise their children through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approval of its contents, including its statements and directives that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

350.   Defendant School Board deliberately chose to continue promoting and implementing the 2018 Guide for at least three years despite its authorization of active concealment and deception of parents regarding their children's gender identity, thereby affirming and establishing it as a custom and practice of the District and the School Board to conceal from parents information regarding their children's assertion of a discordant gender identity in violation of parents' fundamental rights of privacy to raise their children.

351. Defendant's custom and practice of concealing from parents information regarding their children's assertion of a discordant gender identity was ratified by Chairwoman Bowen's public statements in 2021 promoting the 2018 Guide and its contents as a success story for LCS's efforts to protect LGBTQ+ students.

352. Defendant acted with deliberate indifference to Plaintiffs' fundamental right of privacy to raise their children by authorizing the development and implementation of the 2018 Guide and approving its contents which 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) misrepresented federal law and regulations regarding parental rights to their children's education records.

353. Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

354.  Plaintiffs' constitutionally protected right of privacy to raise their children was violated as the plainly obvious consequence of the School Board's actions in authorizing development and implementation of the 2018 Guide and approving its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

355.  Defendant School Board cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right of privacy to raise their children.

356.  Defendant's explicit authorization to conceal information from and actively deceive parents and exclude parents from decisions that directly affect their child's upbringing and well-being as described above is not narrowly tailored.

357.  Defendant School Board's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Hanna**

358.  Defendant Hanna violated Plaintiffs' fundamental right of privacy to raise their children when he supervised the development and implementation of the 2018 Guide and approved of its contents, including its deliberate misstatement of parental rights under federal statutes and regulations.

359.    Defendant Hanna violated Plaintiffs' fundamental right of privacy to raise their children when he supervised the development and implementation of the 2018 Guide, approved of and/or failed to review and require revision of its contents, including its authorization directive to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

360.    Defendant Hanna violated Plaintiffs' fundamental right of privacy to raise their children when he supervised the preparation and implementation of the 2018 Guide and approved or failed to review and require revision of its contents, including authorizing and directing LCS staff to actively deceive parents by using a particular name for their child at school and another name in the presence of the parents.

361.    Defendant Hanna violated Plaintiffs' fundamental right of privacy to raise their children when he supervised the preparation and implementation of the 2018 Guide and approved of or failed to require revision of its contents, including its statements and directives that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

362.    Defendant Hanna acted with deliberate indifference to Plaintiffs' fundamental rights of privacy to raise their children by failing to adequately

supervise and direct preparation of the 2018 Guide so that it was approved by the Board and implemented with contents which 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) deliberately misrepresented federal law and regulations regarding parental rights to their children's education records.

363. Defendant Hanna violated Plaintiffs' fundamental right to familial privacy by failing to properly supervise the training of or failing to train LCS staff regarding parental rights to be informed of and included in decisions related to their children's safety and well-being.

364. Defendant Hanna violated Plaintiffs' fundamental right of privacy to raise their children by failing to properly supervise the training of or failing to train LCS staff regarding the provisions of federal law according parents the sole right to

make changes to their children's educational records and the lack of an exemption for gender identity issues.

365.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

366.   Plaintiffs' constitutionally protected right of privacy to raise their children was violated as the plainly obvious consequence of Mr. Hanna's actions in supervising development and implementation of the 2018 Guide and approving or failing to review and revise its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

367.   Defendant Hanna cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to of privacy to raise their children.

368.   Defendant's approval authorizing that information be concealed from parents and that staff deceive parents and exclude parents from decisions that directly affect their child's upbringing and well-being as described above is not narrowly tailored.

369.   Defendant Hanna's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Rodgers**

370.   Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children when she supervised the development and implementation of the 2018 Guide and drafted and/or approved of its contents, including its deliberate misstatement of parental rights under federal statutes and regulations.

371.   Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children when she supervised the development and implementation of the 2018 Guide, and drafted and/or approved of its contents, including its authorization and directives to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

372.   Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including authorizing and directing LCS staff to actively deceive parents by using a particular name and pronouns for their child at school and another name and pronouns in the presence of the parents.

373.   Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including its statements and

directives that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

374. Defendant Rodgers acted with deliberate indifference to Plaintiffs' fundamental right of privacy to raise their children by directing preparation of the 2018 Guide so that it was implemented with contents which: 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) deliberately misrepresented federal law and regulations regarding parental rights to their children's education records.

375. Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children by training and instructing LCS staff that parents were not to be notified when their children asserted a discordant gender identity unless the child consented to informing the parents.

376.   Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children by training and instructing LCS staff to create and implement covert gender affirmation plans for children who assert a discordant gender identity and to not permit parent participation in the plans unless the child consented.

377.   Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children by training and instructing LCS staff to actively deceive parents by using one name and set of pronouns for children while at school and another when parents are present.

378.   Defendant Rodgers violated Plaintiffs' fundamental right of privacy to raise their children by training and instructing and instructing LCS staff that the law protects the confidentiality of children's assertion of a discordant gender identity vis-à-vis their parents and that under the law parents cannot be told about their children's gender identity issues or the District's covert gender affirmation plans unless the child consents.

379.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

380.   Plaintiffs' constitutionally protected right to to raise their children was violated as the plainly obvious consequence of Dr. Rodgers' actions in supervising development and implementation of the 2018 Guide and drafting and/or approving

its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

381.   Defendant Rodgers cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to familial privacy.

382.   Defendant's drafting or approval of language authorizing that information be concealed from parents and that staff deceive parents and exclude parents from decisions that directly affect their child's upbringing and well-being as described above is not narrowly tailored.

383.   Defendant Rodgers' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Thomas**

384.   Defendant Thomas violated Plaintiffs' fundamental right of privacy to raise their children when she met with A.G., whom she knew to be subject to a 504 Plan and to have ADHD, in private to discuss A.G.'s request to use a new name and pronouns and otherwise be affirmed as having a "nonbinary" gender identity without notifying Plaintiffs.

385.   Defendant Thomas violated Plaintiffs' fundamental right of privacy to raise their children when she implemented the 2018 Guide's authorized covert

gender affirmation plan for A.G. by scheduling a meeting between A.G. and Deerlake Middle School staff and intentionally excluded Mr. and Mrs. Littlejohn from the meeting, despite Mrs. Littlejohn's being present at all 504 plan meetings for A.G. and being a licensed mental health professional.

386.    Defendant Thomas violated Plaintiffs' fundamental right of privacy to raise their children when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff because at age 13 A.G. was protected under the law from having the information disclosed to her parents.

387.    As an experienced educator, Mrs. Thomas knew or should have known that under FERPA and its implementing regulations Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

388.    Defendant Thomas violated Plaintiffs' fundamental right of privacy to raise their children when she told Mrs. Thomas told Mrs. Littlejohn that 13-year-old A.G. was now "protected" under a non-discrimination law that does not include parental notification or input.

389.    As an experienced educator, Mrs. Thomas knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input regarding their child's gender identity.

390.   Defendant Thomas acted with deliberate indifference to Plaintiffs' fundamental right of privacy to direct their children by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient, Mrs. Littlejohn's status as a licensed mental health professional, and the absence of legal basis for a claim of confidentiality on the part of A.G. vis-à-vis her parents.

391.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

392.   Plaintiffs' constitutionally protected right of privacy to raise their children was violated as the plainly obvious consequence of Mrs. Thomas' actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s well-being and safety. as stated above.

393.   Defendant Thomas cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right of privacy to raise their children.

394.   Defendant's actions in preparing a covert gender affirmation plan and actively concealing information from parents and exclude parents from decisions that directly affect their child's upbringing and well-being as described above is not narrowly tailored.

395.   Defendant Thomas' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Oliveri**

396.   Defendant Oliveri violated Plaintiffs' fundamental right of privacy to raise their children when she implemented the 2018 Guide's authorized covert gender affirmation plan for A.G. and intentionally excluding Mr. and Mrs. Littlejohn from participation in development of the plan.

397.   Defendant Oliveri violated Plaintiffs' fundamental right of privacy to raise their children when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff because at age 13 A.G. was protected under the law from having the information disclosed to her parents.

398.   As an experienced educator, Mrs. Oliveri knew or should have known that under FERPA and its implementing regulations Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

399.   Defendant Oliveri violated Plaintiffs' fundamental right of privacy to raise their children when she told Mrs. Littlejohn that 13-year-old A.G. was now

"protected" under a non-discrimination law that does not include parental notification or input.

400.   As an experienced educator, Mrs. Oliveri knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input regarding their child's gender identity.

401.   Defendant Oliveri acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient and the absence of legal basis for a claim of confidentiality on the part of A.G. vis-à-vis her parents.

402.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

403.   Plaintiffs' constitutionally protected right of privacy to raise their children was violated as the plainly obvious consequence of Mrs. Oliveri's actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s well-being and safety as stated above.

404.   Defendant Oliveri cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right of privacy to raise their children.

405.   Defendant's actions in preparing a covert gender affirmation plan and actively concealing information from parents and excluding parents from decisions that directly affect their child's upbringing and well-being as described above are not narrowly tailored.

406.   Defendant Oliveri's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

## FIFTH CAUSE OF ACTION
**(Violation of Plaintiffs' Right to Substantive Due Process under Art. I § 9 of the Florida Constitution)**
**(Against All Defendants)**

407.   Plaintiffs incorporate the factual allegations in Paragraphs 16-163 by reference as if set forth in full.

408.   Art. I, § 9, Fla. Const., like the 14th Amendment to the U.S. Constitution, provides that "[n]o person shall be deprived of life, liberty or property without due process of law."

409.   Substantive due process under Art. I, § 9 of the Florida Constitution protects the "full panoply of individual rights" and in particular, the long-established fundamental right of parents to direct the upbringing of their children, from unwarranted encroachment by the government. *J.B. v. Fla. Dep't of Child. & Fam. Servs.*, 768 So. 2d 1060, 1063 (Fla. 2000).

410.    Defendants have encroached on Plaintiffs' fundamental right to direct the upbringing, care and control of their children as set forth more particularly below.

**Allegations against Defendant School Board**

411.    Defendant School Board violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approval of its contents, including its misstatement of parental rights under federal statutes and regulations.

412.    Defendant School Board violated Plaintiffs' fundamental right to direct upbringing, care and control of their children when it authorized the preparation and implementation of the 2018 Guide and approval of its contents, including its authorization and directive to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

413.    Defendant School Board violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approval of its contents, including its authorization to actively deceive parents by using a particular name and pronouns for their child at school and another name and pronouns in the presence of the parents.

414.    Defendant School Board violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children through its prior knowledge and authorization of preparation and implementation of the 2018 Guide and approval of its contents, including its statements and directive that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

415.    Defendant School Board deliberately chose to continue promoting and implementing  the 2018 Guide for at least three years despite its authorization of active concealment and deception of parents regarding their children's gender identity, thereby affirming and establishing it as a custom and practice of the School Board to conceal from parents information regarding their children's assertion of a discordant gender identity in violation of parents' fundamental rights to direct the upbringing of their children.

416. Defendant's custom and practice of concealing from parents information regarding their children's assertion of a discordant gender identity was ratified by Chairwoman Bowen's public statements in 2021 promoting the 2018 Guide and its contents as a success story for LCS's efforts to protect LGBTQ+ students.

417.    Defendant acted with deliberate indifference to Plaintiffs' fundamental right to direct the upbringing of their children by authorizing the development and

implementation of the 2018 Guide and approving its contents which 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) misrepresented federal law and regulations regarding parental rights to their children's education records.

418.    Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

419.    Plaintiffs' constitutionally protected right to direct the upbringing, care, and control of their children was violated as the plainly obvious consequence of the School Board's actions in authorizing development and implementation of the 2018 Guide and approving its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

420.   Defendant School Board cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, care, and control of their children.

421.   Defendant's explicit authorization to conceal information from and actively deceive parents and exclude parents from decisions that directly affect their child's upbringing and well-being as described above is not narrowly tailored.

422.   Defendant School Board's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Hanna**

423.   Defendant Hanna violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when he supervised the development and implementation of the 2018 Guide and approved of its contents, including its deliberate misstatement of parental rights under federal statutes and regulations.

424.   Defendant Hanna violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when he supervised the development and implementation of the 2018 Guide, approved of and/or failed to review and require revision of its contents, including its authorization and directive to conceal from parents information regarding their children's assertion of a discordant gender

identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

425.   Defendant Hanna violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when he supervised the preparation and implementation of the 2018 Guide and approved or failed to review and require revision of its contents, including authorizing and directing LCS staff to actively deceive parents by using a particular name and pronouns for their child at school and another name and pronouns in the presence of the parents.

426.   Defendant Hanna violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children when he supervised the preparation and implementation of the 2018 Guide and approved of and/or review and failed to revise its contents, including its statements and directive that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

427.   Defendant Hanna acted with deliberate indifference to Plaintiffs' fundamental right direct the upbringing of their children by failing to adequately supervise and direct preparation of the 2018 Guide so that it was approved by the Board and implemented with contents which 1) authorized and directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and

104

directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) misrepresented federal law and regulations regarding parental rights to their children's education records.

428.   Defendant Hanna violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children by failing to properly supervise the training of or failing to train LCS staff regarding parental rights to be informed of and included in decisions related to their children's safety and well-being.

429.   Defendant Hanna violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children by failing to properly supervise the training of or failing to train LCS staff regarding the provisions of federal law according parents the sole right to make changes to their children's educational records and the lack of an exemption for gender identity issues.

430.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

431.   Plaintiffs' constitutionally protected right to direct the upbringing, care, and control of their children was violated as the plainly obvious consequence of Mr. Hanna's actions in supervising development and implementation of the 2018 Guide and approving or failing to review and revise its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

432.   Defendant Hanna cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing health, welfare and education of their children.

433.   Defendant's approval authorizing that information be concealed from parents and that staff deceive parents is not narrowly tailored.

434.   Defendant Hanna's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Rodgers**

435.   Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when she supervised the development and implementation of the 2018 Guide and drafted and/or approved of its contents, including its misstatement of parental rights under federal statutes and regulations.

436.   Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children when she supervised the development

and implementation of the 2018 Guide, and drafted and/or approved of its contents, including its authorization and directive to conceal from parents information regarding their children's assertion of a discordant gender identity and District actions to affirm the discordant gender identity without the knowledge and consent of parents.

437. Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including authorizing and directing LCS staff to actively deceive parents by using a particular name and pronouns for their child at school and another name and pronouns in the presence of the parents.

438. Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when she supervised the preparation and implementation of the 2018 Guide and drafted and/or approved of its contents, including its statements and directive that information regarding children's assertion of a discordant gender identity must be concealed from parents to protect children's safety.

439. Defendant Rodgers acted with deliberate indifference to Plaintiffs' fundamental right to direct the upbringing of their children by directing preparation of the 2018 Guide so that it was implemented with contents which 1) authorized and

directed LCS staff to actively and deliberately conceal from parents information regarding the District's affirmation of their child's asserted discordant gender identity, 2) authorized and directed LCS staff to prepare covert gender affirmation plans for children without notifying parents, 3) authorized and directed LCS staff to deliberately deceive parents by using one name and set of pronouns for their child at school and another set when communicating with parents, 4) authorized and directed LCS staff to exclude parents from significant decision-making related to their child's safety and welfare, such as use of communal privacy facilities and overnight accommodations, and 5) misrepresented federal law and regulations regarding parental rights to their children's education records.

440.   Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children by training and instructing LCS staff that parents were not to be notified when their children asserted a discordant gender identity unless the child consented to informing the parents.

441.   Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children by training and instructing LCS staff to create and implement covert gender affirmation plans for children who assert a discordant gender identity and to not permit parent participation in the plans unless the child consented.

442.   Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children by training and instructing LCS staff to actively deceive parents by using one name and set of pronouns for children while at school and another when parents are present.

443.   Defendant Rodgers violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children by training and instructing LCS staff that the law protects the confidentiality of children's assertion of a discordant gender identity and that under the law parents cannot be told about their children's gender identity issues or the District's covert gender affirmation plans unless the child consents.

444.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

445.   Plaintiffs' constitutionally protected right to direct the upbringing, care and control of their children was violated as the plainly obvious consequence of Dr. Rodgers' actions in supervising development and implementation of the 2018 Guide and drafting and/or approving its contents that authorized actions that violated Plaintiffs' fundamental parental rights as stated above.

446.   Defendant Rodgers cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing of their children.

447.   Defendant's drafting and approval of language authorizing and directing that information be concealed from parents and that staff deceive parents and exclude parents from decisions that directly affect their child's upbringing and well-being as described above is not narrowly tailored.

448.   Defendant Rodgers' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Thomas**

449.   Defendant Thomas violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when she met with A.G., whom she knew to be subject to a 504 Plan and to have ADHD, in private to discuss A.G.'s request to use a new name and pronouns and otherwise be affirmed as having a "nonbinary" gender identity without notifying Plaintiffs.

450.   Defendant Thomas violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when she implemented the 2018 Guide's authorized covert gender affirmation plan for A.G. by scheduling a meeting between A.G. and Deerlake Middle School staff and intentionally excluded Mr. and Mrs. Littlejohn from the meeting, despite Mrs. Littlejohn's being present at all 504 Plan meetings for A.G. and being a licensed mental health professional.

451.   Defendant Thomas violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff because at age 13 A.G. was protected under the law from having the information disclosed to her parents.

452.   As an experienced educator, Mrs. Thomas knew or should have known that under FERPA and its implementing regulations Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

453.   Defendant Thomas violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children when she told Mrs. Thomas told Mrs. Littlejohn that 13-year-old A.G. was now "protected" under a non-discrimination law that does not include parental notification or input.

454.   As an experienced educator, Mrs. Thomas knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input regarding their child's gender identity.

455.   Defendant Thomas acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient, Mrs. Littlejohn's status as a licensed mental health

professional, and the absence of legal basis for a claim of confidentiality on the part of A.G. vis-à-vis her parents.

456.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

457.   Plaintiffs' constitutionally protected right to direct the upbringing, care, and control of their children was violated as the plainly obvious consequence of Mrs. Thomas' actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s upbringing, well-being and safety as stated above.

458.   Defendant Thomas cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, care, and control of their children.

459.   Defendant's actions in preparing and implementing a covert gender affirmation plan, actively concealing information from parents and excluding parents from decisions that directly affect their child's upbringing and well-being as described above are not narrowly tailored.

460.   Defendant Thomas' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

**Allegations against Defendant Oliveri**

461.   Defendant Oliveri violated Plaintiffs' fundamental right to direct the upbringing, care, and control of their children when she implemented the 2018 Guide's authorized covert gender affirmation plan for A.G. and intentionally excluded Mr. and Mrs. Littlejohn from participation in development of the plan.

462.   Defendant Oliveri violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children when she told Mrs. Littlejohn that she could not tell her anything about her daughter's September 8, 2020, meeting with LCS staff because at age 13 A.G. was protected under the law from having the information disclosed to her parents.

463.   As an experienced educator, Mrs. Oliveri knew or should have known that under FERPA and its implementing regulations Mr. and Mrs. Littlejohn had sole authority to make changes to A.G.'s educational records until age 18, and that there were no exemptions for gender identity information.

464.   Defendant Oliveri violated Plaintiffs' fundamental right to direct the upbringing, care and control of their children when she told Mrs. Littlejohn that 13-year-old A.G. was now "protected" under a non-discrimination law that does not include parental notification or input.

465.   As an experienced educator, Mrs. Oliveri knew or should have known that there is no state or federal "non-discrimination" law that excludes parents from notification or input regarding their child's gender identity.

466.   Defendant Oliveri acted with deliberate indifference to Plaintiffs' fundamental parental rights by concealing information from Plaintiffs regarding A.G.'s assertion of a discordant gender identity with full knowledge of A.G.'s status as a 504 Plan recipient and the absence of legal basis for a claim of confidentiality on the part of A.G.

467.   Defendant's deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

468.   Plaintiffs' constitutionally protected right to direct the upbringing, care, and control of their children was violated as the plainly obvious consequence of Mrs. Oliveri's actions in implementing the authorized covert gender affirmation plan and concealment of information from parents to exclude Plaintiffs from critical decisions related to A.G.'s well-being and safety as stated above.

469.   Defendant Oliveri cannot assert a compelling governmental interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, care, and control of their children.

470.   Defendant's actions in preparing and implementing a covert gender affirmation plan, actively concealing information from parents, and excluding

114

parents from decisions that directly affect their child's upbringing and well-being as described above are not narrowly tailored.

471.    Defendant Oliveri's violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

**Under The First Cause of Action:**

1.    A declaration that Defendants violated Plaintiffs' fundamental rights as parents, to direct the care, custody and control of their children under the United States Constitution through development and implementation of  Leon County Schools' 2018 Guide and associated policies and procedures, to the extent that they: (a) enabled Plaintiffs' child to change gender identity at school by, *inter alia,* selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's discordant gender identity, including any desired change in name and pronouns, educational records, privacy facilities use, and overnight accommodations, without first obtaining the children's consent; and (c) instructed, directed, or permitted teachers and other staff to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

2.      For nominal damages for violation of Plaintiffs' constitutional rights;

3.      For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including  a) emotional distress, b) exacerbation of A.G.'s psychological and educational difficulties  requiring ongoing counseling and other interventions, c) ongoing emotional and psychological damage to their family dynamic, requiring therapeutic interventions to rebuild trust between parents and child, d) increased costs for providing alternatives for A.G. in order for her to receive an appropriate education untainted by ideological distractions which exacerbate her developmental difficulties and diminish her academic potential, and other injuries as proven at trial;

**Under The Second Cause of Action:**

4.      A declaration that Defendants violated Plaintiffs' fundamental rights as parents, to direct medical and mental health decision-making under the United States Constitution, through development and implementation of Leon County Schools' 2018 Guide and associated policies and procedures,  to the extent that they: (a) enabled Plaintiffs' child to change gender identity at school by, *inter alia,* selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's gender dysphoria, including any desired change in name and pronouns, educational records, privacy facilities use, and overnight accommodations, without

116

first obtaining the children's consent; and (c) instructed, directed or permitted teachers and other staff to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

5.    For nominal damages for violation of Plaintiffs' constitutional rights;

6.    For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including  a) emotional distress, b) exacerbation of A.G.'s psychological and educational difficulties  requiring ongoing counseling and other interventions, c) ongoing emotional and psychological damage to their family dynamic, requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, d) increased costs for providing alternatives for A.G. in order for her to receive an appropriate education untainted by ideological distractions which exacerbate her developmental difficulties and diminish her academic potential, and other injuries as proven at trial;

**Under The Third Cause of Action:**

7.    A declaration that Defendants violated Plaintiffs' fundamental rights to familial privacy under the United States Constitution through development and implementation of Leon County Schools' 2018 Guide and associated policies and procedures,  to the extent that they: (a) enabled Plaintiffs' child to change gender identity at school by, *inter alia,* selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff

from communicating with parents about their children's gender dysphoria, including any desired change in name and pronouns, educational records, privacy facilities use, and overnight accommodations, without first obtaining the children's consent; and (c) instructed or permitted teachers and other staff to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

8.      For nominal damages for violation of Plaintiffs' constitutional rights;

9.      For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including  a) emotional distress, b) exacerbation of A.G.'s psychological and educational difficulties  requiring ongoing counseling and other interventions, c) ongoing emotional and psychological damage to their family dynamic, requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, d) increased costs for providing alternatives for A.G. in order for her to receive an appropriate education untainted  by  ideological  distractions  which  exacerbate  her  developmental difficulties and diminish her academic potential, and other injuries as proven at trial;

**Under The Fourth Cause of Action:**

10.      A declaration that Leon County Schools' 2018 Guide and associated policies and procedures violated Plaintiffs' fundamental right of privacy  to raise their children under the Florida Constitution, to the extent that they: (a) enabled Plaintiffs' child to change gender identity at school by, *inter alia,* selecting a new

118

"affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's gender dysphoria, including any desired change in name and pronouns, educational records, privacy facilities use, and overnight accommodations, without first obtaining the children's consent; and (c) instructed or permitted teachers and other staff to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

11.  For nominal damages for violation of Plaintiffs' constitutional rights;

12.  For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including  a) emotional distress, b) exacerbation of A.G.'s psychological and educational difficulties  requiring ongoing counseling and other interventions, c) ongoing emotional and psychological damage to their family dynamic, requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, d) increased costs for providing alternatives for A.G. in order for her to receive an appropriate education untainted by ideological distractions which exacerbate her developmental difficulties and diminish her academic potential, and other injuries as proven at trial;

**Under The Fifth Cause of Action:**

13.  A Declaration that Defendants violated Plaintiffs' fundamental parental rights to direct the upbringing of their children under the Florida

Constitution through development and implementation of Leon County Schools' 2018 Guide and associated policies and procedures, to the extent that they: (a) enabled Plaintiffs' child to change gender identity at school by, *inter alia,* selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's gender dysphoria, including any desired change in name and pronouns, educational records, privacy facilities use, and overnight accommodations, without first obtaining the children's consent; and (c) instructed, directed or permitted teachers and other staff to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

14.    For nominal damages for violation of Plaintiffs' constitutional rights;

15.    For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including  a) emotional distress, b) exacerbation of A.G.'s psychological and educational difficulties requiring ongoing counseling and other interventions, c) ongoing emotional and psychological damage to their family dynamic, requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, d) increased costs for providing alternatives for A.G. in order for her to receive an appropriate education untainted by ideological distractions which exacerbate her developmental difficulties and diminish her academic potential, and other injuries as proven at trial;

120

**Under All Causes of Action:**

16.    For attorneys' fees and costs under 42 U.S.C. § 1988;

17.    For such other relief as the Court deems proper.

Dated: May 27, 2022.

<div style="margin-left:40%">

/s/*Mary E. McAlister*
Mary E. McAlister (FL Bar No. 0010168)
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles (GA Bar No. 593026)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
*admitted pro hac vice


Ernest G. Trakas (MO Bar 33813)*
Evans & Dixon, LLC
211 N. Broadway
St. Louis, MO 63102
 (314) 552-4188
etrakas@evans-dixon.com
* pro hac vice admission pending

Attorneys for Plaintiffs

</div>

121

## CERTIFICATE OF SERVICE

I certify that on this 27th day of May 2022, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Mary E. McAlister*
MARY E. MCALISTER