## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JANUARY LITTLEJOHN AND
JEFFREY LITTLEJOHN,**

      Plaintiffs,

**v.**                                    **Case No.: 4:21-cv-00415-MW-MJF**

**SCHOOL BOARD OF LEON COUNTY
FLORIDA, ROCKY HANNA,
individually and in his official capacity as
Superintendent of Leon County Schools,
and KATHLEEN RODGERS,
individually and in her official capacity as
Assistant Superintendent Equity Officer
and Title IX Compliance Coordinator for
Leon County Schools, RACHEL
THOMAS, individually and in her official
capacity as counselor at Deerlake Middle
School, ROBIN OLIVERI, individually
and in her official capacity as Assistant
Principal of Deerlake Middle School,**

      Defendants.

_____/

## DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

All Defendants, pursuant to Rules 12(b)(1) & 12(b)(6), Fed. R. Civ. P., move

to dismiss the Amended Complaint.

### *Introduction*

Much like the initial Complaint, the Amended Complaint alleges Plaintiffs were not notified of a single meeting held between School Board personnel and their child (A.G.) at Deerlake Middle School ("Deerlake") in Leon County, Florida, during which gender identity issues were discussed. The Amended Complaint is substantively the same as Plaintiffs' initial Complaint but adds two new defendants, School Board employees Oliveri (an assistant principal) and Thomas (a guidance counselor). Despite their amendments and accepting as true all the facts alleged in the Amended Complaint, none of the claims against any of the Defendants are viable.

First, this case has always principally centered on Plaintiffs' gripes with the contents of Leon County Schools' ("District") Lesbian, Gay, Bisexual, Gender Nonconforming and Questioning Support Guide ("Guide"). Indeed, Plaintiffs devoted a substantial portion of their Amended Complaint to detailing their objections to the Guide and its implementation.

Well, the Guide has been revised. Specifically, during a June 28, 2022, publicly-noticed meeting of the School Board, the School Board approved a revised Guide that addresses all of the objections asserted by Plaintiffs in the Amended Complaint. The revised Guide is consistent with the pronouncements in Florida's Parents' Bill of Rights (Sections 1014.01-1014.06, Florida Statutes)(2021) and recent amendments to Section 1001.42, Florida Statutes (Ch. 2022-22, Laws of Fla.

(2022)). The School Board's action in this regard moots Plaintiffs' claims for declaratory relief and at the very least merits the dismissal of Plaintiffs' state law constitutional claims for which only declaratory relief and injunctive relief are available.

To be sure, the School Board and Individual and Official Capacity Defendants submit that no provision of the U.S. Constitution or the Florida Constitution protects the right asserted by the Plaintiffs in this case.  Plaintiffs' Section 1983 claims assert that the Defendants' actions abridged their rights to substantive due process under the Fourteenth Amendment, and specifically infringe on their rights to familial privacy and to direct their child's education, mental health, and welfare. But no action of any defendant as alleged in the Amended Complaint burdened any of Plaintiffs' rights recognized by the Due Process Clause. In this vein, Plaintiffs do not allege any behavior that is "conscience-shocking" in a constitutional sense or that is sufficient to establish a substantive due process violation. Similarly, Plaintiffs are unable to establish that any right they enjoy under the Fourteenth Amendment extends to a constitutional obligation on the part of School Board staff to affirmatively inform parents of their child's name and pronoun preferences or of their child's gender identity. If anything, that right was not clearly established at the time of the purported violations, meaning the individual defendants should be dismissed from this action entirely under the doctrine of Qualified Immunity.

Plaintiffs' claims under the Florida Constitution fair no better as they seek improper relief, name inappropriate parties, and fail to raise viable claims for an invasion of their right of privacy or a violation of their substantive due process rights. For these reasons, the Amended Complaint should be dismissed.

### *Facts*[1]

Plaintiffs are the parents of A.G., a minor child who at all times relevant to the allegations in the Amended Complaint was enrolled at Deerlake, a school in the School Board's geographical district. (Doc. 38, pp. 4, 6). A.G. is not a party to this case. (*Id.*, p. 1). Rather, A.G.'s parents are suing Defendants for violations of their own rights purportedly held under federal laws, the U.S. Constitution, and the Florida Constitution. (*Id.*, p. 2).

As the 2020-2021 school year approached, A.G. asked Plaintiffs to be referred to by the name "J" and by "they/them" pronouns. (*Id.*, p. 24). Plaintiffs said A.G. could use "J" as a nickname at school but not be referred to by the pronouns "they/them." (*Id.*). A.G. previously expressed "gender confusion" to Plaintiffs. (*Id.*, p. 23).

The crux of the Amended Complaint concerns one meeting at Deerlake on September 8, 2020, involving A.G. and School Board staff without Plaintiffs present.

---

[1] The following facts are from the Amended Complaint. No part of this motion or its factual recitation should be deemed an admission the facts pled are true.

(*Id.,* pp. 24-34). This meeting took place after A.G. expressed "gender confusion" to Plaintiffs and requested to use "they/them" pronouns and go by the name "J." (*Id.*, pp. 23-24). Plaintiffs assert that at the September 8 meeting, Deerlake staff, including A.G.'s school counselor (Thomas), developed a support plan for A.G. that touched on topics including preferred names, pronoun use, and room sharing on field trips. (*Id.,* pp. 32-34). Plaintiffs assert that teachers and staff at Deerlake were told to refer to A.G. as "J" and with the pronouns "they/them" without their involvement or consent and contrary to their requests. (*Id.,* pp. 24-25, 33-34).

There is no allegation in the Amended Complaint that this was contrary to the wishes of A.G. or that any School Board employee coerced, encouraged, or forced A.G. to participate in the meeting or coerced, encouraged, or forced A.G. to keep anything from Plaintiffs. (*See* Doc. 38). The closest thing to such an allegation in the Amended Complaint is the allegation that Thomas "raised with A.G., without the knowledge or consent of [Plaintiffs], the idea of having a 'Transgender Support Plan' meeting with A.G. and other Deerlake Middle School staff." (*See id*. at p. 27). However, this allegation is not based on the Plaintiffs' personal knowledge but rather their information and belief. (*See id*.). In fact, the Amended Complaint states that A.G. approached Thomas requesting to use a different name and certain pronouns. (*See id.*, p. 24).

5

In any event, Plaintiffs allege the actions of School Board staff were taken pursuant to a version of the Guide that is no longer in effect. (Doc. 38-1). The Guide states, among other things, that the District strives to "ensure that students are healthy, present, and positive members of a safe learning community." (Doc. 38-1, p. 3). Plaintiffs characterize the Guide's content in varying ways but primarily take issue with one of the questions-and-answers in the Guide which provides as follows:

> **Q. A student has exhibited behavior in school leading administrators or teachers to believe the student is LGBTQ+. Should the parents or legal guardians be notified?**
>
> A. No. Outing a student, especially to parents, can be very dangerous to the students health and well-being. Some students are not able to be out at home because their parents are unaccepting of LGBTQ+ people out. As many as 40% of homeless youth are LGBTQ+ many of whom have been rejected by their families for being LGBTQ+. Outing students to their parents can literally make them homeless.

(*Id*. at p. 15). Plaintiffs also object to various portions of the "Leon County School District Transgender/Gender Nonconforming Student Support Plan" attached to the Amended Complaint and that was a part of the now-superseded Guide. Their objection is to School Board staff inquiring whether parents or legal guardians are aware of a student's gender transition and whether they support it, and also taking that information into account when considering the student's privacy interests. (Doc. 38-1, pp. 19-24).

Plaintiffs do not allege the School Board failed to involve them in any aspect of A.G.'s education other than the September 8 meeting, and they do not allege that

6

any other meeting occurred without their involvement. (Doc. 38). Indeed, at the core of Plaintiffs' claims is their contention that they should have been informed and involved in the September 8 meeting and that the failure to inform them violated their rights under the U.S. and Florida Constitutions. (*See id.*).

The following charts the Amended Complaint's counts and the relief requested:

| Count | Title | Defendants | Relief Requested |
|-------|-------|------------|------------------|
| I | Violation of Section 1983 and specifically of Plaintiffs' Substantive Due Process Right to Direct the Education and Upbringing of Their Children under the U.S. Constitution | All | Declaratory relief, nominal damages, compensatory damages, and attorneys' fees and costs |
| II | Violation of Section 1983 and specifically of Plaintiffs' Fundamental Right to Direct the medical and Mental Health Decision-making for their Children Under the U.S. Constitution | All | Declaratory relief, nominal damages, compensatory damages, and attorneys' fees and costs |
| III | Violation of Section 1983 and specifically Plaintiffs' Right to Familial Privacy Under the U.S. Constitution | All | Declaratory relief, nominal damages, compensatory damages, and attorneys' fees and costs |
| IV | Violation of Plaintiffs' Right to Privacy Under Article 1, §23 of the Florida Constitution | All | Declaratory relief, nominal damages, compensatory damages, and attorneys' fees and costs |

| V | Violation of Plaintiffs' Right to Substantive Due Process under Art. I, §9 of the Florida Constitution | All | Declaratory relief, nominal damages, compensatory damages, and attorneys' fees and costs |
|---|---|---|---|

The Guide though, that underlies and underscores almost every allegation in the Amended Complaint, has been superseded. On June 28, 2022, the School Board adopted a guidance document titled, "Inclusive School Guide for LCS Employees, Lesbian, gay, bisexual, transgender, queer, intersex, and asexual (LGBTQIA+) Students." (*See* Doc 55-1, Inclusive Guide for LCS Employees, Lesbian, gay, bisexual, transgender, queer, intersex, and asexual (LGBTQIA+) Students; and Doc 55-2, Actions of Leon County School Board – June 28, 2022, School Board Meeting, p. 3).[2] On that date, the School Board approved and implemented the revised Guide

---

[2] This Court can consider the revised Guide and School Board meeting agenda attached as exhibits to this motion to dismiss, because they strike to the subject matter jurisdiction of this Court. Under Federal Rule of Civil Procedure 12(b)(1), when a defendant challenges a court's subject matter jurisdiction on a factual basis, the court is not required to take the allegations of the complaint as true but is instead permitted to consider matters outside the pleadings, such as testimony and affidavits. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). Under such a jurisdictional challenge:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court

through a unanimous vote. (*See* Doc 55-2, p. 3). The revised Guide states that it is "intended to be a tool for school administrators and personnel to effectively navigate existing laws, regulations and policies that support LGBTQIA+ students." (*See* Doc 55-1, p. 3). As the revised Guide notes in its section on the importance of safe and supportive school environments, "having a school that creates a safe and supportive learning environment for all students and having caring and involved parents are especially important. Positive environments can help all youth achieve good grades and maintain good mental and physical health." (*Id.*, p. 4).

Pertinently, the revised Guide provides the following with respect to key areas implicated by Plaintiffs' claims, including the following (*Id.*, pp. 8-10):

<u>Student Expression</u>

| Individual Expression | **First Amendment guarantees** students have a right to individual expression and identity at school. | Schools will respect the rights of students who are open about their sexual orientation or gender identity, or who question their orientation or gender identity.   Also, see Topic **Privacy**. |
|---|---|---|

---

from   evaluating   for   itself   the   merits   of   jurisdictional   claims.

Additionally, a court may take judicial notice of matters of public record and consider those facts in resolving a motion to dismiss. *McDowell Bey v. Vega*, 588 Fed. Appx. 923, 926 (11th Cir. 2014); *see also Long v. Slaton,* 508 F.3d 576, 578 n. 3 (11th Cir. 2007) (recognizing a judge is not always limited to the four corners of the complaint at the Federal Rule of Civil Procedure 12(b)(6) stage and taking judicial notice of facts contained in a report from a state agency).

Names and Pronouns

| Names and Pronouns | **Neither federal nor Florida state law** requires or prohibits schools to call a student by a requested name or use gender pronouns consistent with their gender identity. However, **Chapter 1014, Florida Statutes** does reserve the right to the parent to direct the education and care as well as to direct the upbringing of his or her minor child. | The parent or student of legal age will notify the school of the preferred name and gender pronoun corresponding to their gender identity. The parent or student of legal age can add the preferred name and preferred pronoun into Student Information System portal or request it be done by the school.  Additional services (referral to student services personnel or community resources) may be needed.<br><br>Faculty and staff shall use the preferred name and pronoun listed in the Student Information System. |

Official Documentation

| Official Documents | **Official Documentation** is required to reflect a change in name and/or gender in a student's official school records.<br><br>FAC 64V-1.003: Birth Certificate Amendment documentary evidence requirements. | School will only modify student records to reflect a change in legal name or gender upon receipt of an official document.  While official student records must contain the student's legal name, schools should permit the use of preferred name on unofficial records to assist staff in calling the student the preferred name.  ***The guardian or student of legal age can add the preferred name and preferred pronoun in the Student Information System.*** |

Overnight Activities

| **Overnight activities** | **Neither federal nor Florida state law** requires or prohibits school personnel to adhere to the requests of a student. | All students are allowed to attend school overnight activities.  If parents or students have concerns about rooming assignments based on religious or privacy concerns, they may request accommodations.<br><br>If accommodations are desired, decisions should be made on a case-by-case basis, and should be student-focused, with the support of parents, and district and school staff.   School staff who are aware of a transgender student participating in overnight activities should refer to the student's LCS Welcoming and Affirming Plan for preferred accommodations and the student's preferences on who is allowed to know they are transgender.<br><br>*Language to be included in overnight activity permission form district-wide*: "All students are allowed to attend school sponsored overnight activities. Parents or students who have concerns about rooming assignments for their student's upcoming overnight event based on religious or privacy concerns may request an accommodation.  If you are requesting accommodations for your student, please contact school administration to discuss reasonable accommodation options." |
|---|---|---|

Parent Notification

| Parent Notification | Chapter 1014, Florida Statutes requires the parent to be notified if there is a change in a students' mental, emotional, or physical health or wellbeing. | School personnel will notify a parent if there is a change in a student's services or monitoring related to the student's mental, emotional, or physical health or wellbeing, unless a reasonably prudent person would believe that disclosure would result in abuse, abandonment, or neglect, as those terms are defined in s. 39.01. Under those circumstances school personnel must report the potential harm to the Florida Department of Children and Families. |
|---|---|---|

Privacy

| Privacy | **Article 1 Section 23 of Florida constitution recognizes the federal constitutional right to privacy,** which extends to students in a school setting**.** | School personnel will not disclose information about a student's sexual orientation, gender identity or questions they may have about their sexual orientation or gender identity. A student's sexual orientation, gender identity or gender expression should not be shared with others without their input and permission. All LGBTQIA+ students have the right to participate in the decision-making process for deciding when and to whom their gender identity or expression and sexual orientation is shared unless it is directly related to concerns about the student's health and safety. For parents who have concerns about their child's well-being and have contacted the school district, administration and guidance, a meeting will be coordinated with the parent and student. School personnel must not intentionally withhold information from parents unless a reasonably prudent person would believe that disclosure would result in abuse, abandonment, or neglect, as those terms are defined in s. 39.01. Under those |
|---|---|---|

12

| | | circumstances school personnel must report the potential harm to the Florida Department of Children and Families. |
|---|---|---|

### *Argument*[3]

I.   *Plaintiffs' Claims for Declaratory Relief and Nominal Damages under the U.S. Constitution, and for Florida Constitutional Violations have been Mooted by the Adoption of the Revised Guide*

"A case becomes moot—and therefore no longer a 'case' or 'controversy' for purposes of Article III —when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam))(cleaned up). The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)).

"[I]f . . . events transpire that make it impossible for this court to provide meaningful relief, the matter is no longer justiciable." *Rich v. Secretary, Florida Dept. of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013) (citing *Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 915 (11th Cir. 2009)). The Eleventh Circuit has summarized the justiciability requirement as follows:

---

[3] For the sake of brevity and because this Court is well-versed in the standard for adjudicating a motion to dismiss, it is omitted.

> Justiciability is the term of art employed to give expression to this ...
> limitation placed upon federal courts by the case-and-controversy
> doctrine. A claim is justiciable if it is definite and concrete, touching
> the legal relations of parties having adverse legal interests. It must be a
> real and substantial controversy admitting of specific relief through a
> decree of a conclusive character .... The justiciability doctrines define
> the judicial role; they determine when it is appropriate for the federal
> courts to review a matter and when it is necessary to defer to the other
> branches of government.

*United States v. Rivera*, 613 F.3d 1046, 1049-50 (11th Cir. 2010) (internal citations

omitted) (finding lack of justiciability over challenge to a finding of fact, because

the appeal would not remedy a tangible injury and would not affect the government).

"The mootness doctrine is among the justiciability limitations that Article III

places on the federal judiciary." *See Coral Springs St. Sys., Inc. v. City of Sunrise*,

371 F.3d 1320, 1328 (1lth Cir. 2004) (citing *Vander Jagt v. O'Neill*, 699 F.2d 1166,

ll79 (D.C. Cir.1982) (Bork, J., concurring)). "Plainly, if a suit is moot, it cannot

present an Article III case or controversy and the federal courts lack subject matter

jurisdiction to entertain it." *Coral Springs St. Sys.*, 371 F.3d at 1328.  "Any decision

on the merits of a moot case or issue would be an impermissible advisory opinion."

*Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*,

225 F.3d 1208, 1217 (11th Cir. 2000). As such, a moot claim must be dismissed for

lack of subject matter jurisdiction. *See Al Najjar v. Ashcroft*, 273 F. 3d 1330, 1336

(11th Cir. 2001).

Here, the changes implemented by the School Board in the revised Guide go to the very heart of the justiciability of Plaintiffs' claims. This case is about Plaintiffs' complaints regarding the Guide and the alleged violations of their parental rights under the U.S. and Florida Constitutions that occurred when Deerlake staff privately met with A.G. one time to develop a support plan without the knowledge or consent of Plaintiffs. (*See* Doc. 38). Plaintiffs also generally take exception to the contents of the Guide, claiming it to be unconstitutional.[4] Plaintiffs ask for declaratory relief related to the Guide, including a declaration that Defendants violated the state and federal Constitutions:

> through development and implementation of Leon County Schools' 2018 Guide and associated policies and procedures, to the extent that they: (a) enabled Plaintiffs' child to change gender identity at school by, *inter alia,* selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's gender dysphoria, including any desired change in name and pronouns, educational records, privacy facilities use, and overnight accommodations, without first obtaining the children's consent; and (c) instructed or permitted teachers and other staff to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school.

(*See inter alia* Doc. 38, p. 115).

Regardless of what can be argued about the initial iteration of the Guide, the revised Guide addresses the declaratory relief sought by Plaintiffs. Specifically, it

---

[4] Although, Plaintiffs are not bringing a facial challenge to the Guide.

requires parental involvement to change pronouns (*See* Doc. 53-1, pp. 8-9), has explicit parental notification requirements concerning issues related to a student's sexual orientation, gender identity, or gender expression (*See id.* at pp. 9-10), and contemplates parental involvement in decision-making related to overnight trip accommodations, locker rooms and restroom use, and student records changes. (*See id.* at pp. 8-9). These changes, regardless of their impetus, moot Plaintiffs' claims for declaratory relief.

Indeed, at most, Plaintiffs have a claim for a declaration about an alleged past harm that is no longer presently occurring or has the capability to re-occur. Where past harm has occurred but "the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Adler v. Duval Cty. School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Stanley v. Broward Cty. Sheriff*, 773 F. App'x 1065, 1069 (11th Cir. 2019) (citing *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985). There is simply no live case or controversy for which declaratory relief is an appropriate remedy and the ordering of such relief would amount to nothing more than an advisory opinion regarding alleged past harm.

Plaintiffs also seek nominal and compensatory damages for the purported constitutional violations. (Doc. 38, pp. 115-121). "The granting of nominal damages—a trivial sum awarded for symbolic, rather than compensatory, purposes—may be closely analogized to that of declaratory judgments." *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia,* 868 F.3d 1248, 1268 (11th Cir. 2017) (abrogated on other grounds). "Nominal damages, like declaratory relief, are a remedy that may be granted by the federal courts upon a proper exercise of our jurisdiction; they are not themselves an independent basis for that jurisdiction." *Id.* Just like Plaintiffs' requests for declaratory relief are mooted by the revised Guide, so too are their requests for nominal damages.

Defendants do not concede that any of their actions ever violated any law. Subject to this reservation, Defendants submit that any suggestion that the voluntary cessation doctrine renders the mootness doctrine inapplicable to this case would be misplaced. Defendants recognize that voluntary cessation of allegedly illegal conduct does not necessarily always moot a case. *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992). Nevertheless, the exception to the mootness doctrine does not apply if the defendant can demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged

violation." *Seay Outdoor Advertising, Inc. v. City of Mary Esther, Fla.*, 397 F.3d 943 (11th Cir. 2005) (quoting *City of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

It should be noted that governmental entities and public officials are given more leeway than private parties in the presumption that they are unlikely to resume allegedly illegal activities. *Coral Springs St. System, Inc.*, 371 F.3d at 1328-29. "[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004). "When government law or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Id.; Freedom from Religion Foundation, Inc. v. Orange Cty. Sch. Bd.,* 30 F.Supp.3d 1358, 1364 (M.D. Fla. 2014).

Further, a plaintiff disputing a finding of mootness must present more than "[m]ere speculation that the [governmental entity] may return to its previous ways." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005). The doctrine of voluntary cessation does not apply when there is "no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the termination of the suit." *Keister v. Bell,* 29 F.4th 1239, 1250 (11th Cir. 2022) (quoting *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004)).

Here, the revised Guide adopted by the School Board on June 28, 2022, not only moots the issues complained of in the Amended Complaint, but it is also consistent with the pronouncements in Florida's Parents' Bill of Rights and F.S. §1001.42. There can be no speculation that the School Board will re-enact the provisions of the 2018 Guide upon termination of the suit considering the legal landscape and the fact that the Defendants are public servants. *See Troiano*, 382 F.3d at 1283.

Finally, for all of these reasons, Plaintiffs' Florida Constitutional law claims contained in Counts IV (Article 1, §23 – Right to Privacy) and V (Article 1, §9 – Substantive Due Process) are also moot and subject to dismissal in their entirety. It is axiomatic that a claim for damages for an alleged violation of the Florida Constitution cannot be maintained. *Holcy v. Flagler County Sheriff,* 3:05-CV-1324J-32HTS, 2007 WL 2669219, at *6 (M.D. Fla. Sept. 6, 2007) (Florida constitutional claims do not support claims for damages absent a separate enabling statute). *See also Smith v. Bell*, No. 06-60750, 2008 WL 868253, at **2, 9-10 (S.D. Fla. Mar. 31, 2008) (concluding that "no private cause of action exists under the constitutional right to due process" and no claim for money damages can be maintained for violations of the Florida Constitution); *Hill v. Dep't of Corrs.*, 513 So. 2d 129, 133 (Fla. 1987). Likewise, Article I, §§9 and 23 of the Florida Constitution contain no right to an award of attorneys' fees and costs for a prevailing party. Generally,

attorneys' fees are not recoverable in the absence of a statute or contractual agreement authorizing their recovery. *See Bidon v. Dep't of Prof'l Regulation, Florida Real Estate Com'n*, 596 So. 2d 450, 452 (Fla. 1992). There is no such authority for fees here. Once those potential monetary damages are stricken from Counts IV and V, all that remains is Plaintiffs' request for declaratory relief. Because such relief has been mooted, Counts IV and V should be dismissed.

II.   *Plaintiffs' Claims Against Superintendent Hanna, Rodgers, Oliveri, and Thomas in their Official Capacities are Duplicative of their Claims Against the School Board*

Defendants School Board, Superintendent Hanna, and Rodgers have already explained in their initial motion to dismiss why "[O]fficial capacity suits generally represent only another way of pleading an action against the entity of which an officer is an agent." *Brandon v. Holt,* 469 U.S. 464, 472 n. 21 (1985). Rather than dismissing these clearly redundant claims, Plaintiffs went a step further and sued two more School Board employees in their official and individual capacities.

Suits against an individual acting in their official capacity impose liability on the governmental entity the official represents. *See Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon,* 469 U.S. at 471–72).

"Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly...." *Busby,* 931 F.2d at 776. Thus, when a suit is filed against both a governmental entity and its officers and employees in their official capacities, it is appropriate for a court to dismiss the named individual defendants in their official capacities as "redundant and possibly confusing to the jury." *Id.* The same rationale applies to the state law claims pled against the individual defendants in their official capacities. *See Braden Woods Homeowners Ass'n, Inc. v. Mavard Trading, Ltd.*, 277 So. 3d 664, 671 (Fla. 2d DCA 2019). *See also Kubany by Kubany v. School Bd. of Pinellas County*, 818 F. Supp 1504, 1507 (M.D. Fla. 1993) (filing a Section 1983 claim against school board members and principal in their official capacities was improper, because the plaintiff had sued the school board directly).

All the official capacity claims against Superintendent Hanna, Rodgers, Oliveri, and Thomas are also lodged against the School Board and are thus redundant. That is true even of the Superintendent and regardless of the fact he is an elected official. Florida law provides that school board superintendents operate as the secretary and executive officer of the school board. *See* § 1001.32, *Fla. Stat.* ("Responsibility and management of the schools and for the supervision of

instruction in the district shall be vested in the district school superintendent as the secretary and executive officer of the district school board, as provided by law."). Consequently, the Section 1983 claims against the School Board and Superintendent Hanna are duplicative. *Methelus v. Sch. Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1282 (M.D. Fla. 2017)(dismissing official capacity claims brought against superintendent of school board as duplicative of claims brought against school board).

In this case, where the declaratory relief sought is the same as to all defendants, including the School Board, and where the School Board and all the individual defendants are filing a single motion to dismiss directed at the Amended Complaint, the official capacity claims are simply unnecessary. Indeed, the individual defendants would conceivably be bound by or subject to any type of declaratory relief by virtue of their employment with the School Board. *See Braden Woods Homeowners Ass'n, Inc.*, 277 So. 3d at 671 (dismissing official capacity claims and distinguishing *Hatcher ex rel. Hatcher v. DeSoto Cty. Sch. Dist. Bd. of Educ.*, 939 F. Supp. 2d 1232, 1236 (M.D. Fla. 2013), where official capacity claims were allowed to proceed against an individual defendant because the defendant employer was contesting liability of the defendant-employee). This warrants dismissal of the official capacity claims lodged against each of the individual defendants.

*III.    Defendants are not Liable for any Alleged Violation of Section 1983*

Plaintiffs' substantive due process claims brought pursuant to Section 1983 contained in Counts I-III fail to state a claim with respect to any defendant, because the facts pled in support fall short of establishing any Constitutional violation.

Plaintiffs bring claims for interference with parental rights purportedly secured by the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 65-66 (2000); *see also Pierce v. Soc'y of Sisters,* 268 U.S. 510 (1925) (recognizing "liberty of parents and guardians to direct the upbringing and education of children under their control"). State interference with the parent-child relationship may give rise to a Section 1983 action for damages. *See Morrison v. Jones*, 607 F.2d 1269, 1275-76 (1979). "Absent a 'compelling state interest' and an infringement 'narrowly tailored' to serve that interest, the government may not violate" a fundamental right. *Hillcrest Prop., LLP v. Pasco Cty.*, 915 F.3d 1292, 1297 (11th Cir. 2019). However, "[s]ubstantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) (citing *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013)).

Plaintiffs face a high bar because they are asserting a substantive due process violation. *Maddox v. Stephens*, 727 F. 3d 1109, *1119* (11th Cir. 2013)*.* Indeed, "the Constitution does not protect against all encroachments by the state onto the interests of individuals," *Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir. 2005). "[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox*, 727 F.3d at 1119 (quoting *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)) (internal quotation marks omitted). "A deprivation is of constitutional stature if it is undertaken for improper motive and by means that were pretextual, arbitrary and capricious, and without rational basis." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (citation omitted).

"Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor must be egregious – that is, shock the conscience – the time the government actor made the decision." *Waddell*, 329 F.3d at 1305. Conduct intended to injure and unjustified by any government interest is most likely to be conscience-shocking. *Id.* Courts must conduct an "exact analysis

of circumstances before any abuse of power is condemned as conscience shocking." *Cty. of Sacramento*, 523 U.S. at 850.

Significantly, "the Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Maddox*, 727 F.3d at 1120 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). The Eleventh Circuit explained in *Maddox v. Stephens* that cases involving the assertion of a violation of parental liberty interests is a murky area of unenumerated constitutional rights and that courts thus must be careful and exercise the utmost care in analyzing claims in this subject area because the judiciary's constitutionalizing purported violations of parental liberty interests takes governmental decisionmaking outside the arena of public debate and legislative action. *Id.*

That is especially true here because the case involves school administration. Public education of children is unquestionably entrusted to the control, management, and discretion of school boards. *Epperson v. Arkansas,* 393 U.S. 97, 104 (1968). "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Id*. And the state of course, separate from any parental

interest, has an interest in the wellbeing of its youth. *Ginsberg v. New York*, 390 U.S. 629, 640 (1968).

Plaintiffs' Section 1983 claims must be dismissed as to all Defendants, because no constitutional rights of the Plaintiffs are implicated by any of Defendants' alleged actions. The crux of this case is Plaintiffs' contention they had the right to be informed of and present for the meeting on September 8 involving discussions between School Board personnel and A.G. concerning gender identity issues, such as preferred names and pronouns, overnight trip lodging accommodations, and bathroom use. The problem is there is no Constitutional liberty interest requiring such notification and involvement. Indeed, in cases involving a viable allegation of interference with parental liberty interests the state has either required or prohibited some activity. These cases focus on an element of state coercion missing here.

Take for instance the cases cited by Plaintiffs for the purposes of establishing the existence of a parental liberty interest. *Troxel v. Granville*, involved parental liberty interests but in the context of the state's interference with the visitation rights of a minor child. 530 U.S. at 67-73. Similarly, *Parham v. J. R.*, involved state procedures governing the admission of children to psychiatric hospitals. 442 U.S. 584 (1979). *Prince v. Massachusetts*, involved a situation where child labor laws were construed to prohibit sales of religious tracts by children which the Supreme Court found unreasonably interfered with parental rights to raise those children. 321

U.S. at 166. There are numerous other cases, and the central point of them, is that the interference with parental rights is only actionable where the state is requiring or prohibiting some activity. *See*, *e.g.*, *Meyer v. Nebraska*, 262 U.S. 390 (1923)(striking down state's prohibition on teaching any language other than English).

Here, there is no allegation in the Amended Complaint that A.G. was forced to participate in a meeting with school personnel to discuss gender identity issues.[5] In fact, the Amended Complaint states that A.G. approached Thomas about pronoun use and preferred names. There is no allegation school personnel directed, coerced, or encouraged, A.G. to conceal anything from Plaintiffs, or that there was any attempt to do so. There is no allegation A.G. requested parental involvement in meetings with school personnel. The facts as pled by Plaintiffs sets this case apart from others finding interference with parental liberty interests secured by the

---

[5] One addition to the Amended Complaint that was not present in the initial Complaint is worth mentioning. The Amended Complaint pleads, based only on information and belief, that Thomas raised the idea of having a meeting with A.G. and teachers at Deerlake. (*See* Doc. 38, p. 27). Raising the idea of having a meeting is not coercion but, in any event, the allegation is only based on information and belief and not personal knowledge. Conclusory allegations made "on information and belief" need not be taken as true. *See Smith v. City of Sumiton*, 578 Fed. Appx. 933, 936 at n.4 (11th Cir. 2014). In evaluating a motion to dismiss under Rule 12(b)(6), courts separate the conclusory allegations from the remaining well-pleaded factual allegations to determine if the well-pleaded allegations, when accepted as true, plausibly give rise to an entitlement to relief. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).

Fourteenth Amendment. Indeed, Plaintiffs' claims fail for the simple reason that they cannot show how their rights were burdened by state action.[6]

*Doe v. Irwin*, a case out of the Sixth Circuit Court of Appeals, is instructive. 615 F.2d 1162 (6th Cir. 1980). At issue in *Doe* was a condom distribution program for minors set up by a state-run clinic. Parents challenged the program arguing it interfered with their parental rights secured by the Due Process Clause, because it provided no notice to parents their minor children were using the clinic's services. The Sixth Circuit found there was no unconstitutional interference with parental rights stressing the fact the program was completely voluntary and there was no requirement minors avail themselves of the services of the birth control clinic, nor was there any prohibition on parents participating in decisions related to sexual activity or birth control concerning their minor children. *Id*. at 1166–69. Cogently, the Sixth Circuit summed up the issue thusly:

> In the absence of a constitutional requirement for notice to parents, it is clearly a matter for the state to determine whether such a requirement is necessary or desirable in achieving the purposes for which the Center was established. There is no basis for a federal court to impose conditions in the absence of an overriding constitutional requirement.

---

[6] It is not enough to say that the "prohibition" on teachers from informing parents of discussions related to gender identity issues suffices to show "coercion" necessary to establish conscience-shocking behavior sufficient to establish a constitutional violation. Such coercion does not run to the child or the parents and none of the cases that explore this concept speak about the prohibition in such a manner. *Contra Meyer*, 262 U.S. 390 (prohibiting students from learning certain foreign languages).

> The desire of the parents to know of such activities by their children is understandable. However the only issue before the district court and this court is whether there is a constitutional obligation on the Center to notify them. The record before us does not establish that the Center infringes a constitutional right of the plaintiffs by its practice of distributing contraceptive devices and medication to unemancipated minors without notice to their parents.

*Id*. at 1169.

There are numerous cases that stand for the proposition that a failure on the part of school staff to notify parents of issues involving their children does not amount to an infringement of parental liberty unless there is an element of coercion involved. *See, e.g.*, *Curtis v. Sch. Comm. of Falmouth*, 420 Mass. 749, 754–60, 652 N.E.2d 580, 584–87 (Mass. 1995)(holding that voluntary condom distribution program in schools did not violate parental liberty interests under the Fourteenth Amendment because there was no coercion by the state, and no requirement that anyone participate in the program or prohibition of a constitutional nature); *Reardon v. Midland Cmty. Sch.*, 814 F. Supp. 2d 754, 767–72 (E.D. Mich. 2011)(holding that alleged counseling by school counselors that encouraged minor child to run away did not violate parents substantive due process rights because counselors did not exert coercive influence over minor child but merely provided counseling to her upon her request). *Doe v. Irwin, supra,* illustrates this point, as it involved coercion that is lacking in the allegations of the Amended Complaint.

Even cases that recognize a parental liberty interest in the upbringing of their children do not take that right to be unlimited. Cases that touch upon where these rights merge with the state's provision of education have interpreted the right only to mean that the state could not make public education mandatory. *See*, *e.g.*, *Runyon v. McCrary*, 427 U.S. 160 (1976)(holding that constitutional parental liberty rights do not interfere with school rights to determine the values and standards underlying educational programs). Indeed, courts have rejected attempts by parents to establish a fundamental right to dictate curriculum and program choices at public schools where they send their children. *Thomas v. Evansville-Vanderburgh School Corp.*, 258 Fed.Appx. 50, 53-54 (7th Cir. 2007) ("We agree that [plaintiff] has a fundamental right, secured by the due process clause, to direct the upbringing and education of her child.... But a right to choose the type of school one's child attends, or to direct the private instruction of one's child, does not imply a parent's right to control every aspect of her child's education at a public school.") (citing *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204-07 (9th Cir. 2005); *Leebaert v. Harrington*, 332 F.3d 134, 140-42 (2d Cir. 2003); *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995); *cf. Wisconsin v. Yoder*, 406 U.S. 205, 232-33 (1972)). Both the Sixth and Ninth Circuits have held that nothing in the Constitution prohibits public schools from making curriculum choices or to

even direct the school administration more generally. *See Parents for Priv. v. Barr,* 949 F.3d 1210, 1230–33 (9th Cir.), cert. denied, 141 S. Ct. 894 (2020)

An Eleventh Circuit case that did find "conscience-shocking" behavior in the context of a school official's actions sufficient to support a substantive due process violation of parental liberty interests shows how different that case is from this one. In *Arnold v. Bd. of Educ. of Escambia Cty. Alabama,* a school official coerced a child into seeking an abortion. 880 F.2d 305 (11th Cir.1989), *abrogated in part by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993). The minor children that conceived a child, along with their parents, sued the school district contending that their constitutional rights were infringed. Crucially, the parents alleged that the school official coerced the minor student into obtaining an abortion and to refrain from discussing it with her parents, assisted in procuring the abortion, and hired the student and her partner for menial jobs so that they could pay for the abortion. While the Eleventh Circuit held these actions could constitute infringement on the substantive due process rights of the parents, the key to that holding was the school officials' coercive pressure on a child to seek an invasive and controversial medical procedure, and to conceal that procedure and the condition that led to it from the child's parents. *Id.* at 312-314.

No coercion has been alleged here. There is no allegation that A.G. was required to do anything, coerced into taking any action, or encouraged to conceal

anything from Plaintiffs. There is no allegation that this was even suggested to A.G. and, in fact, School Board personnel provided Plaintiffs information about the meeting with A.G. (Doc. 38, pp. 30-32, 34, 36).[7]

Defendants recognize that the Southern District of Florida in *Johnson v. Dade Cty. Pub. Sch.*, No. 91-2952-CIV-DAVIS, 1992 WL 466902, at \*5–6 (S.D. Fla. Nov. 25, 1992) did not interpret *Arnold* to require coercion to state a substantive due process claim in the parental rights context. But a close look at this unpublished, out-of-district decision reveals why it should not be relied on by this Court. The court in *Johnson* essentially held that it read *Arnold* to hold that coercion in the form of inducing a child not to communicate with their parents on a given subject was a

---

[7] The suggestion in the Amended Complaint that Oliveri and that Thomas infringed on Plaintiffs' constitutional rights by not disclosing or "concealing" the details of the meeting with A.G. when Plaintiffs first inquired about it is unsupported by the law. Never mind the fact that the Plaintiffs could have obtained information related to the meeting from A.G., and that A.G. had already raised all or nearly all of the gender identity issues subject of the meeting with Plaintiffs already, the fact remains that Plaintiffs were referred to Rodgers and very shortly after the meeting took place obtained information related to what occurred at the meeting and were assured that they would be part of all future meetings with A.G. But more importantly, the Eleventh Circuit recognized in *Arnold*, *supra* that parental rights are not unlimited and that guidance counselors played an important role as a "trusted confidant" to students. *See Arnold*, 880 F.2d at 313-314. Recognizing the important role that counselors play as a confidant to students, the Eleventh Circuit expressly disclaimed that it was constitutionally mandating that counselors inform parents of a minor that their child received pregnancy counseling. *See id.* at 314. This holding cannot be squared with the allegations of the Amended Complaint, and it can hardly be said that the facts of the complaint, and the context of those facts, "shocked the conscience" in a constitutional sense.

sufficient, but not necessary, condition to establish a substantive due process claim in the parental rights context. The court found it significant that two Supreme Court cases recognized a cause of action for interference with parental rights where coercion was not specifically mentioned. The first, *Pierce v. Society of Sisters,* 268 U.S. 510 (1925), where parents challenged a state ordinance requiring children to attend public school. The second, *Wisconsin v. Yoder,* 406 U.S. 205 (1972), where the Supreme Court struck down a school policy which prohibited Amish students from leaving traditional schooling after the eighth grade to attend vocational training within their community.

Respectfully, the Southern District got it wrong on both counts. Both *Pierce* and *Wisconsin v. Yoder* each involved situations where the state forced or required children to do something or prohibited children from doing something. In *Pierce*, children were required to attend public school. In *Wisconsin v. Yoder* children were prohibited from leaving school after eighth grade to attend vocational training in their community. Stated another way, in *Pierce* the child was forced or coerced to attend public school and, in *Wisconsin v. Yoder,* the child was forced or coerced to remain in school.

Second, the Southern District's interpretation reads the Eleventh Circuit's *Arnold* decision in a vacuum and in an obtuse way. Surely, the specific holding in *Arnold* was that a substantive due process claim could lie for interference with

parental rights where school officials engaged in overt acts to procure an abortion for a student without contacting her parents including exerting coercive pressure on the student to obtain an abortion and conceal it from her parents and helping the student procure funds for the abortion. *Arnold,* 880 F.2d at 308–09. Succinctly, Arnold held that "counselors must not *coerce* minors to refrain from communicating with their parents." *Id.* at 314.

But crucially, *Arnold* specifically rejected the notion that parental autonomy to direct the education of one's children is not beyond limitation. *Id.* at 313. The Eleventh Circuit explicitly recognized that not all infringements into parental rights by schools, including school counselors, was unconstitutional noting that "[w]hile counseling intrudes somewhat on parental control over a child, we acknowledge the important role a guidance counselor plays as a trusted confidant of many students. Counselors possess first amendment rights to free speech and we do not seek to curtail the beneficial use of counseling." *Id.* at 314. And directly applicable to this case, the Eleventh Circuit held that it was not "constitutionally mandating that counselors notify the parents of a minor who receives counseling regarding pregnancy." *Id.* While the Eleventh Circuit did hold that the coercive conduct in *Arnold* was sufficient to establish a substantive due process violation, a reading of the decision to find that coercion was not necessary to such a holding is superficial and ignores this qualification on the ultimate holding.

Numerous circuit courts and district courts throughout the country have found that coercive pressure on the part of a state actor is a necessary condition to stating a claim for a substantive due process violation in this context, some of them relying on *Arnold*. *See, e.g.*, *Doe v. Irwin*, *supra*; *Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256, 264 (3d Cir. 2007)(affirming dismissal of complaint asserting interference with parental constitutional rights where governmental official provided daughter with emergency contraception without notifying her parents stressing the lack of coercion and explicitly holding that a constitutional violation would not lie in this context where there was no "manipulative, coercive, or restraining conduct by the State."); *Reardon*, *supra*; *Leontiev v. Corbett Sch. Dist.*, 333 F. Supp. 3d 1054, 1064–65 (D. Or. 2018)(dismissing parental right interference case for lack of coercive pressure involving school employee assisting child to run away); *Benitez v. Gresham–Barlow School Dist.*, 2012 WL 3878419 (D. Or. Sept. 6, 2012)(emphasizing the lack evidence of coercion in dismissing case similar to *Leontiev*).

And truth be told, the core facts of this case are different from the *Johnson* case as well. In *Johnson*, the school promoted a telephone counseling service that provided recorded messages on sensitive topics such as masturbation, sexuality, pregnancy, stress management, and drug use that any student could access. *Johnson*, 1992 WL 466902, at *1. Furthermore, teachers played the messages in their

classrooms on occasion. *Id.* The plaintiffs in *Johnson* alleged that advertising and distributing information about the telephone counseling service and playing the messages from the service in the classroom infringed on their parental rights. *Id.* The children in *Johnson* were forced to listen to and be exposed to content that their parents objected to in class. *Id.* There is no allegation in the Amended Complaint that A.G. was forced to do anything. Rather, A.G. initiated contact with Thomas regarding her preferred pronouns and name. Plaintiffs just object that they were not told about it. Regardless of what you want to call it, there is no way for the allegations in the Amended Complaint to be squared with the Eleventh Circuit's pronouncement in *Arnold* that it was not "constitutionally mandating that counselors notify the parents of a minor who receives counseling…" *See* 880 F.2d at 314.

The real problem alleged by Plaintiffs is not that the state actors *interfered* with them as parents; rather, it is that the state actors did not *assist* them as parents or affirmatively *foster* the parent/child relationship. *See Anspach*, 503 F.3d 256 (rejecting underlying core of claim in parental rights case that really was about state assisted fostering of the parent/child relationship). Plaintiffs are not entitled to that assistance under the Due Process Clause. Indeed, the Constitution "does not require the Government to assist the holder of a constitutional right in the exercise of that right." *Haitian Refugee Center, Inc. v. Baker,* 953 F.2d 1498, 1513 (11th Cir. 1992); *see also Ye v. United States,* 484 F.3d 634, 636 (3d Cir. 2007) (no

affirmative act constituting deprivation of liberty where publicly employed doctor wrongly assured patient that there was nothing to worry about and that he was fine); *Youngberg v. Romeo,* 457 U.S. 307, 317 (1982) ("As a general matter, a State is under no constitutional duty to provide substantive services for those within its border"); *Harris v. McRae,* 448 U.S. 297, 317-318 (1980) (no constitutional obligation to fund abortions or other medical services). As the Supreme Court recognized in *Harris:* "Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference ..., it does not confer an entitlement to such [governmental aid] as may be necessary to realize all the advantages of that freedom." 448 U.S. at 317-318.

Fairly summarized, no action of the School Board, School Board personnel, or any of the Defendants in this action burdened or infringed on any rights that Plaintiffs enjoy under the Due Process Clause. Certainly, no action of the School Board, its personnel, or the Defendants was "conscience-shocking" sufficient to establish a Constitutional violation. As such, dismissal of Plaintiffs' Section 1983 claims is warranted. *See Doe*, 615 F.2d at 1169 (finding no need to consider whether there was a compelling state interest involved because there was no unconstitutional infringement of parental liberty interests).

IV.  *The Individual Defendants are Entitled to Qualified Immunity with Respect to Plaintiffs' Section 1983 Claims*

Qualified immunity offers complete protection for government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Critical public policy considerations, such as the "social costs [associated with claims against public officials] including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office" are bedrock principles of the qualified immunity defense. *Id.* at 814. Thus, "courts should think long and hard before stripping defendants of immunity." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*). "Because qualified immunity is a defense not only from liability, but also from suit," it must be resolved "at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam)).

Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law," *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). It is a "muscular doctrine that impacts on the reality of the workaday world as long as judges remember that the central idea is this pragmatic one: officials can act without fear of harassing litigation only when they can

reasonably anticipate—*before* they act or do not act—if their conduct will give rise to damage liability for them." *Foy v. Holston,* 94 F.3d 1528, 1534 (11th Cir.1996) (citing *Davis v. Scherer,* 468 U.S. 183, 195 (1984)). "If objective observers cannot predict—at the time the official acts—whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the official deserves immunity from liability for civil damages." *Id.* (citing *Elder v. Holloway,* 510 U.S. 510, 513–15 (1994)).

Qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231. Qualified immunity "operates as a shield against civil damages due to mistaken judgments." *Harris v. Coweta Cty.*, 21 F.3d 388, 390 (11th Cir.1994). Stated differently, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Carroll v. Carman*, 574 U.S. 13, 17 (2014) (per curiam).

To receive qualified immunity, a public official must first establish they were "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194. Superintendent Hanna, Rodgers, Oliveri, and Thomas were acting within their discretionary authority as to the acts alleged in the Complaint. "[A] government official proves that he acted within his discretionary authority by showing objective circumstances which would compel the conclusion

that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotation marks omitted); *see also*, *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (stating an official acts within her discretionary authority where she "perform[s] a legitimate job-related function…through means that [are] within his power to utilize").

The focus here is whether the discretionary action is of a type that fell within the employee's job responsibilities. *Id.* at 1266. First, courts are tasked with asking whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), and whether they were performing that function (b) through means that were within his power to utilize. *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." (emphasis added)).

Just because it is alleged that the governmental actor violated someone's constitutional rights does not mean that the act was not a legitimate job-related function or within the scope of the governmental actor's authority. *Holloman v.*, 370 F.3d at 1266. As the Eleventh Circuit explained in *Harbert Int'l, Inc. v. James*, "the inquiry is not whether it was within the defendant's authority to commit the

allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation marks and citation omitted). Courts look to the general nature of the governmental actor's actions "temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman v.*, 370 F.3d at 1266. For example, in *Sims v. Metropolitan Dade County,* 972 F.2d 1230 (11th Cir.1992), the Eleventh Circuit "did not ask whether it was within the defendant's authority to suspend an employee for an improper reason;" instead it asked whether the "discretionary duties included the administration of discipline." *Harbert,* 157 F.3d at 1282.

The second prong of this inquiry, whether the governmental actor is executing a job-related function — that is, pursuing his job-related goals — in an authorized manner extends to situations where governmental employees exercise powers that legitimately form a part of their jobs. *Holloman,* 370 F. 3d at 1266-67 (citing *Harlow,* 457 U.S. at 819 & n. 34). As explained in the *Holloman* when discussing this prong:

> Each government employee is given only a certain "arsenal" of powers with which to accomplish her goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

*Id*. at 1467.

The actions alleged by Plaintiffs all implicate the discretionary authority of the individual Defendants as they focus on actions core to their duties as public officials – that is, managing the affairs of schools within the District, applying school procedures, and interacting with parents concerning the education and welfare of students in District schools. Moreover, with respect to Thomas specifically, and the other individual Defendants more generally, meeting with a student requesting counseling services is within their discretionary authority as educators and educational administrators of a school board that serves *in loco parentis* to students in its schools. Indeed, the Guide and the revised Guide concern efforts by school officials to ensure students are healthy, comfortable, and safe so that they can excel physically, mentally, and academically within the learning environment.

Because the individual defendants were acting within their discretionary authority, the burden shifts to Plaintiffs to establish that qualified immunity is inappropriate. *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1194 (11th Cir. 2002). To do so, Plaintiffs must satisfy the following two-part test: (1) that they have alleged a violation of a constitutional right; and (2) that the right was "clearly established" at the time of the misconduct. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 236 and *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)). The steps in the test may be considered in whatever order is

deemed appropriate for the case. *Pearson*, 555 U.S. at 241-242. Meaning, this Court can determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all. *See, e.g.*, *Loftus v. Clark–Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).

The individual Defendants are entitled to qualified immunity under this framework. As already explained, no constitutional right was violated. At the very least, any such right was not "clearly established" at the time of the violation. A right may be clearly established for qualified immunity purposes in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis,* 561 F.3d at 1291–92 (internal citations omitted). Plaintiffs cannot establish that any purported constitutional right violated was clearly established in any way.

First, the undersigned can identify no case establishing that the alleged actions of the individual Defendants, as pled, give rise to a constitutional violation. The cases cited in the Amended Complaint purporting to establish these rights are distinguishable as addressed hereinabove.

43

Second, the undersigned can similarly identify no broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right of Plaintiffs that was abridged. It is certainly relevant to both inquiries that there are a multitude of cases, already cited and analyzed herein, that hold the exact kind of conduct purported to be unconstitutional was completely lawful. Also relevant is the historical deference that courts give to educational institutions and administrators to make decisions governing school administration. If anything, it is established that school administrators and school boards are typically given wide latitude to run schools, accountable to the will of the local electorate, and that constitutionalizing administrative decision-making in the school sphere is not done lightly.

Finally, no conduct alleged in the Amended Complaint is so egregious that a constitutional right was clearly violated in the total absence of case law that would put the individual defendants on notice that their conduct was unlawful. Indeed, this third category is "narrow" and "encompasses those situations where 'the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Loftus,* 690 F.3d at 1205 (quoting *Terrell v. Smith,* 668 F.3d 1244, 1257 (11th Cir. 2012)). As discussed, no alleged conduct of any of the individual defendants "shocked the conscience" in a

constitutional sense, and none of the conduct lies at the core of Due Process Clause of the Fourteenth Amendment sufficient for the Plaintiffs to establish that any individual defendant is not entitled to qualified immunity.

"The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Loftus*, 690 F. 3d at 1204 (quoting *Coffin v. Brandau,* 642 F.3d 999, 1013 (11th Cir.2011) (en banc)). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna,* 577 U.S. ——, 136 S.Ct. 305, 308 (2015)).

The alleged constitutional violation in this case, the failure to inform Plaintiffs about, and involve them in, <u>one</u> meeting held at school with their child concerning gender identity issues, was certainly not clearly established and, in fact, the Eleventh Circuit explicitly condoned the alleged constitutional violation. As explained, the Eleventh Circuit has only recognized a viable substantive due process claim for the interference with parental rights when there is an element of coercion that is lacking here. *See Arnold*, 880 F.2d at 314 ("*Coercing* a minor to obtain an abortion or to assist in procuring an abortion and to refrain from discussing the matter with the parents unduly interferes with parental authority in the household and with the parental responsibility to direct the rearing of their child." (emphasis added)). And

more to the point, the Eleventh Circuit in *Arnold* explicitly held that it was not "constitutionally mandating that counselors notify the parents of a minor who receives counseling…" *Id.*

Given this legal landscape, no reasonable person would have known that any action pled in the Amended Complaint violated Plaintiffs' Constitutional rights warranting dismissal of the Section 1983 claims against Hanna, Rodgers, Oliveri, and Thomas in their individual capacities. Because any claim for declaratory relief is moot, these defendants should be dismissed from this action entirely for this independent reason.[8]

## V.   *Plaintiffs' Florida Constitutional Claims are Without Merit Even if Found not to be Mooted by the Revised Guide*

Even assuming, *arguendo*, that Plaintiffs' claims under the Florida Constitution are not moot and subject to dismissal as a matter of law due to the form of relief sought (i.e. damages), they should be dismissed for a host of other reasons.

First, the Florida Constitution does not create a cause of action against private persons. Therefore, the individual capacity claims in Counts IV and V against

---

[8] Even if this Court were to find claims to declaratory relief were not moot, or that the Plaintiffs' substantive due process claims were not otherwise viable, the application of qualified immunity to the individual defendants would still warrant dismissing them entirely from this action, because injunctive relief cannot be obtained from an individual capacity defendant. *See Brown v. Montoya*, 662 F.3d 1152, 1161 (10th Cir. 2011)(citing *Hafer v. Melo,* 502 U.S. 21, 30, 27 (1991))("Plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.").

Superintendent Hanna, Rodgers, Oliveri, and Thomas should be dismissed. *Blanco v. City of Clearwater, Fla.*, 9 F. Supp. 2d 1316, 1319 (M.D. Fla. 1998). *See also Riggins v. Beseler*, 3:10-CV-1187-J-25JBT, 2013 WL 12086790, at *17 (M.D. Fla. Mar. 26, 2013), *aff'd*, 568 Fed. Appx. 850 (11th Cir. 2014)("a violation of the privacy provision of the Florida Constitution does not serve as a basis for a cause of action against an individual…"); *Garcia v. Reyes*, 697 So. 2d 549, 550 (Fla. 4th DCA 1997)(affirming dismissal of claim under Article I, §9 of the Florida Constitution against and holding, "[t]o allow Garcia to bring a cause of action based on a violation of our state's constitution, where no concomitant duty arises for private citizens, would extend the waiver of sovereign immunity beyond the stated intent of the statute. It would also create a duty of care arising from the state constitution where none has previously existed").

Second, Defendants recognize that parents have a fundamental right to parent their children and that such right is protected through the Florida Constitution. *D.M.T. v. T.M.H.*, 129 So. 3d 320, 335 (Fla. 2013). But nothing about the Defendants' alleged actions interferes with Plaintiffs' right to parent their child. Instead, Plaintiffs' Constitutional claims surmise that school personnel in Florida have an affirmative duty under the Florida Constitution to notify parents every time their child requests that their school treat them as a particular gender, refer to them by a preferred name, or address "other matters" related to their gender identity

regardless of the circumstances. (Doc. 38 at pp. 83-84) The Florida Constitution does not create such a broad duty to provide such notification. *See In re T.W.*, 551 So. 2d 1186 (Fla. 1989)(finding Florida law that required minors to obtain parental consent before getting an abortion to be a violation of minors' rights of privacy under the Florida Constitution). Therefore, Count IV, asserting a violation of the Florida Constitution's privacy provision, should be dismissed.

Finally, as it pertains to Count V (asserting a violation of the Florida Constitution's substantive due process clause), Florida courts recognize that the due process clause in the Florida Constitution provides no greater protection than the U.S. Constitution. *See Barrett v. State*, 862 So. 2d 44, 47 (Fla. 2d DCA 2003)(case involving alleged procedural due process violation); *Fla. Canners Ass'n v. Fla. Dep't of Citrus*, 371 So. 2d 503, 513 (Fla. 2d DCA 1979) ("We consider the federal and Florida constitutional guarantees as imposing the same standard"). Thus, substantive due process claims arising under the Florida Constitution and U.S. Constitution are analyzed under the same framework. As such, Count V fails for the same reasons as Plaintiffs' claims brought under the U.S. Constitution.

## *Conclusion*

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety with prejudice.

### *Request for Oral Argument*

Defendants request oral argument on this motion. Defendants estimate that one hour is needed for argument.

Respectfully submitted this 15th day of July 2022.

*/s/ Jeffrey D. Slanker*
**JEFFREY D. SLANKER**
Florida Bar No. 100391
jslanker@sniffenlaw.com
*/s/ Terry J. Harmon*
**TERRY J. HARMON**
Florida Bar No. 0029001
tharmon@sniffenlaw.com
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
mspellman@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Defendants*

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and this Court's Order enlarging the word count limitation (Doc. 54) as it contains 11,990 words, including headings, footnotes, and quotations, as well as the case style, signature block and Certificates of Word Count and Service.

/s/ *Jeffrey D. Slanker*
**JEFFREY D. SLANKER**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 15th day of July 2022, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Jeffrey D. Slanker*
**JEFFREY D. SLANKER**