## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JANUARY LITTLEJOHN**
**and JEFFREY LITTLEJOHN**

     *Plaintiffs*,

v.                        **Case No.: 4:21cv415-MW/MJF**

**SCHOOL BOARD OF LEON**
**COUNTY FLORIDA, et al.,**

     *Defendants*.

_____/

## ORDER GRANTING MOTION TO DISMISS

This Court has considered, without hearing, Defendants' motion to dismiss Plaintiffs' amended complaint, ECF No. 56, and Plaintiffs' response, ECF No. 57. Defendants move to dismiss Plaintiffs' amended complaint, ECF No. 38, in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This Court recognizes that Plaintiffs' amended complaint raises weighty questions about parental rights under the Federal Constitution and state law. Plaintiffs' federal claims turn on substantive due process rights—upon which the Supreme Court and the Eleventh Circuit have imposed considerably high burdens to establish at the pleading stage. These claims, as presently alleged, fail to clear the high standard that binding case law requires.

Relatedly, because Plaintiffs' remaining claims raise novel and complex issues of state law, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. A state court, not this Court, is best suited to answer these weighty questions of state law as a matter of first impression. Defendants' motion is **GRANTED**, and Plaintiffs' amended complaint is **DISMISSED without prejudice**.

I

In addressing Defendants' motion to dismiss, this Court accepts, as it must, Plaintiffs' factual allegations as true and construes them in the light most favorable to the Plaintiffs. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). Plaintiffs are the parents of A.G., a minor child who was enrolled at Deerlake Middle School ("Deerlake"), a public school within the Leon County School District ("LCS"). ECF No. 38 ¶ 18. A.G. has been diagnosed with ADHD and at all relevant times had in place an accommodation plan under Section 504 of the Rehabilitation Act of 1973 (the "504 Plan"). *Id*. Before the beginning of the 2020–2021 school year, A.G. was experiencing "gender confusion" and asked Plaintiffs' permission to use "J." as a name and "they/them" pronouns. *Id*. ¶ 91. Plaintiffs did not give A.G. permission to do so. *Id*. ¶ 94. After that conversation, Plaintiff January Littlejohn ("Mrs. Littlejohn") emailed A.G.'s homeroom teacher to tell her that (i) A.G. was expressing gender confusion, (ii) Plaintiffs were seeking a private counselor for

A.G., and (iii) Plaintiffs did not consent to A.G. using "J." as a name or "they/them" pronouns, but A.G. could use "J." as a nickname with teachers and classmates. *Id*.

Sometime after Mrs. Littlejohn's email to A.G.'s homeroom teacher, A.G. approached Defendant Rachel Thomas, a counselor at Deerlake, and requested to use a different name and different pronouns. *Id*. ¶ 95. In response to A.G.'s request, Mrs. Thomas suggested that A.G. meet with Mrs. Thomas and several other Deerlake staff to discuss the request and create a support plan for A.G. (the "Support Plan"). *Id*. ¶ 109. Defendant Thomas and several other Deerlake staff members met with A.G. on September 8, 2020 (the "September Meeting"), to develop the Support Plan, which allowed A.G. to choose a preferred name, preferred pronouns, preferred restroom, and preferred room sharing arrangements on school fieldtrips. *Id*. ¶¶ 98, 109, 132, 136, 146. Defendants implemented the Support Plan under the LCS 2018 Lesbian, Gay, Bisexual, Transgender, Gender Nonconforming, and Questioning Support Guide (the "2018 Support Guide"). *Id*. Defendant Kathleen Rodgers, an Assistant Superintendent, and the LCS LGBTQ+ Equity Committee, developed the 2018 Support Guide and helped train LCS faculty in accordance with the guide. *Id*. ¶¶ 20, 21. Defendant Rocky Hanna, the Superintendent of Leon County Schools, ultimately approved the 2018 Support Guide. *Id*. ¶ 23. The Leon County School Board was also aware of the 2018 Support Guide and its chairwoman publicly expressed support for it. *Id*. ¶ 75.

In accordance with the 2018 Support Guide, Plaintiffs were not notified about the September Meeting or invited to attend because A.G. did not ask for them to be present. *Id.* ¶¶ 109, 110. The Support Plan indicated that Plaintiffs were "aware, but not supportive" of A.G.'s decision to use a preferred name and preferred pronouns, however, Mrs. Thomas and Deerlake staff never asked A.G. about Plaintiffs' participation in the meeting. *Id.* ¶¶ 111, 134.

After learning from A.G. on September 14, 2020, that A.G. met with Deerlake staff who asked about restroom preferences, Mrs. Littlejohn asked Defendant Thomas and Defendant Robin Oliveri, an assistant principal at Deerlake, about the September Meeting. *Id.* ¶ 102. Defendants Thomas and Oliveri declined to provide Mrs. Littlejohn with information about the September Meeting, stating that A.G. was " 'protected' under a non-discrimination law that does not provide for parental notification or input" and that, "by law," A.G. had to be the one to request Plaintiffs' attendance at the meeting. *Id.* ¶¶ 103–04. Defendant Oliveri also stated that parents are not notified of such meetings without student approval in order to protect the student's safety, which Plaintiffs thought implied that A.G. would not be safe if Plaintiffs were informed about the Support Plan. *Id.* ¶¶ 106–07. On October 29, 2020, Mrs. Littlejohn spoke with Defendant Rodgers to obtain more information about the LCS policy that allowed school officials to meet with A.G. without

4

parental consent. *Id*. ¶ 120. During this conversation, Mrs. Littlejohn also declined Defendant Rodgers's request to have further private meetings with A.G. *Id*, ¶ 123.

After meeting with Deerlake staff on November 2, 2020, and requesting additional information about the September Meeting, Plaintiffs received a copy of A.G.'s Support Plan and more information about the meeting. *Id*. ¶ 124. Plaintiffs also learned that Defendant Rodgers had scheduled a private meeting with A.G. to discuss the Support Plan without notifying Plaintiffs and against Plaintiffs' wishes, which Plaintiffs directed Defendant Rodgers to cancel. *Id*. ¶ 129. During the November 2, 2020, meeting, LCS and Deerlake staff made misstatements about the law and were unable to provide Plaintiffs with any law that permits school officials to meet with students and discuss "LGBTQ (or any other) issues" without parental consent. *Id*. ¶ 137.

Plaintiffs allege that cutting them out of the decision-making process regarding A.G.'s preferred name used in school, preferred pronouns used in school, and A.G.'s Support Plan all harmed A.G., and that A.G. has suffered emotional distress. *Id*. ¶163. Plaintiffs also allege that Defendants' course of conduct exacerbated A.G.'s psychological and educational difficulties. *Id*. Plaintiffs also allege that Defendants' actions resulted in ongoing emotional and psychological damage to their family dynamic and increased costs associated with providing educational alternatives to A.G. *Id*.

Plaintiffs' amended complaint names multiple defendants, including Deerlake staff, LCS officials, and the Leon County School Board. *Id*. ¶¶ 10–14. Plaintiffs allege that Defendants acted with deliberate indifference to their constitutional rights as parents, and their claims are divided into five counts, as follows:

> Count I: Violation of Plaintiffs' right to direct the upbringing of their child under the U.S. Constitution, brought under the Fourteenth Amendment as enforced through 42 U.S.C. § 1983, *id*. ¶¶ 164–225;

> Count II: Violation of Plaintiffs' right to direct medical and mental health decision-making for their child under the U.S. Constitution, brought under the Fourteenth Amendment as enforced through 42 U.S.C. § 1983, *id*. ¶¶ 226–276;

> Count III: Violation of Plaintiffs' right to familial privacy under the U.S. Constitution, brought under the Fourteenth Amendment as enforced through 42 U.S.C. § 1983, *id*. ¶¶ 277–340;

> Count IV: Violation of Plaintiffs' right to privacy under Article 1, § 23 of the Florida Constitution, *id*. ¶¶ 341–406; and

> Count V: Violation of Plaintiffs' right to substantive due process under Article I, § 23 of the Florida Constitution, *id*. ¶¶ 407–471.

Counts I through III of Plaintiffs' amended complaint each allege substantive due process claims, so this Court uses the same legal framework to analyze each of those counts. Plaintiffs seek a declaration that Defendants' alleged conduct violated their rights under both the U.S. Constitution and the Florida Constitution, as well as nominal and compensatory damages for injuries that those alleged violations caused. *Id*. ¶¶ 115–20. Plaintiffs also seek to recover attorneys' fees and costs under 42 U.S.C. § 1988. *Id*. at 121. Plaintiffs make clear that it is "Defendants' course of

6

conduct, not the contents of the [2018 Support Guide], that is the focus of Plaintiffs' action." ECF No. 57 ¶ 8–9.

## II

At the outset, this Court holds that all claims for injunctive relief stemming from the 2018 Support Guide are moot, given that the 2018 Support Guide was amended on June 28, 2022. *See* ECF No. 57 at 8 (Plaintiffs' acknowledgment of the amendment). Normally, a defendant's voluntary cessation of allegedly harmful activity is not enough to render a claim moot, but government entities have "considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (holding that "the repeal of a challenged statute— or other similar pronouncement—is ordinarily one of those events that makes it absolutely clear that the allegedly wrongful behavior . . . could not reasonably be expected to recur"). This presumption can be rebutted if a plaintiff shows that there is a "substantial likelihood" that a government defendant will reenact a repealed or amended policy. *Id*. Plaintiffs, however, raise no such argument, claiming instead that it is "Defendants' course of conduct, not the contents of the [2018 Support Guide], that is the focus of Plaintiffs' action." ECF No. 57 at 8–9. In the absence of any argument that Defendants are substantially likely to reenact the challenged policy, this Court holds that Plaintiffs' claims for injunctive relief stemming from the 2018 Support Guide are moot.

Plaintiffs can still sue for damages that resulted from Defendants' alleged conduct. However, each of the individual Defendants in this case is entitled to qualified immunity. Qualified immunity provides "complete protection for government officials sued in their individual capacities" so long as the government official in question was "acting within the scope of [their] discretionary authority" and their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citations omitted). "The term 'discretionary authority' 'include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.' " *Patel v. Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020) (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). Plaintiffs argue that Defendants are not entitled to qualified immunity because (i) Defendants failed to show that they were acting within their discretionary authority and (ii) Defendants' alleged conduct violated clearly established constitutional rights. ECF No. 57 at 34–42. Plaintiffs, however, allege that each individual defendant was "at all times relevant herein, acting within the course and scope" of their employment—or within the scope of their "lawful authority" with respect to Defendant Hanna—and that each individual defendant's conduct was "consistent with the customs, policies, and practices of [Leon County Schools]." ECF No. 38 ¶¶ 11–14. This Court accepts Plaintiffs factual

8

allegations as true and need go no further. Each individual defendant was acting within their discretionary authority. And as indicated throughout the body of this Order, the law regarding substantive due process rights afforded to parents is an unsettled area of constitutional law, such that a reasonable person would not be able to know when their conduct is in violation of the law. Thus, this Court finds that the individual Defendants are entitled to qualified immunity.[1]

This leaves Plaintiffs with the School Board of Leon County. Plaintiffs may recover damages from the School Board for the conduct of the individual Defendants acting in their official capacities, since school boards in Florida are not entitled to qualified immunity or sovereign immunity. *See Travelers Indem. Co. v. Sch. Bd. of Dade Cnty.*, 666 F.2d 505, 508 (11th Cir. 1982). Nonetheless, as described below, Plaintiffs fail to state a plausible substantive due process claim because Defendants' conduct—as currently alleged—does not meet the high threshold of shocking the conscience as defined by binding case law.

---

[1] While "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). "Questions of qualified immunity should be resolved at the earliest possible stage in litigation." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003). This Court must grant a motion to dismiss on qualified immunity grounds where the "complaint fails to allege the violation of a clearly established constitutional right," *St. George,* 285 F.3d at 1337, such as the case here*.*

III

In evaluating a Rule 12(b)(6) motion to dismiss, federal courts are instructed to adhere to a two-pronged approach. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, this Court must accept as true all factual allegations in the complaint, except for legal conclusions "supported by mere conclusory statements." *Id*. at 678. Second, taking the well-pleaded facts, this Court draws on its "judicial experience and common sense" to determine if the complaint states a "plausible claim for relief" that allows this Court to infer more than the "mere possibility of misconduct" from a defendant. *Id*. at 679. "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Hunt*, 814 F.3d at 1221 (quoting *Ashcroft*, 556 U.S. at 678).

Plaintiffs allege that Defendants, acting with deliberate indifference, violated their substantive due process rights under the Fourteenth Amendment. "The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in life, liberty, or property without the due process of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013) (citations and quotations omitted). To state a valid substantive due process claim under section 1983, Plaintiffs must allege "(1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an

abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016). A parent's substantive due process right in the care, custody, and control of their child is a fundamental liberty interest that is protected by the U.S. Constitution. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000).

"Plaintiffs face a high bar when attempting to establish a substantive due process violation." *Maddox*, 727 F.3d at 1119. This is because "not every wrong committed by a state actor rises to the level of a constitutional tort, sufficient to trigger a substantive due process violation, as the Constitution does not protect against all encroachments by the state onto the interests of individuals." *Id*. (citations and quotations omitted). "[E]ven intentional wrongs seldom violate the Due Process Clause." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). Conduct by a state actor will rise to the level of a substantive due process violation only when "the [conduct] can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id*. "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense," and conduct considered conscience-shocking is typically "[c]onduct intended to injure in some way that is unjustifiable by any government interest." *Maddox*, 727 F.3d at 1119 (citations omitted). For conduct to be considered "egregious," it must also "shock the conscience—at the time the government actor made the decision." *Waddell*, 329

F.3d at 1305 (emphasis omitted). Mere negligence, however, is "categorically insufficient to rise to the level of a substantive due process violation." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).

Furthermore, this Court must approach substantive due process claims with great caution. *See Maddox*, 727 F.3d at 1120. The Supreme Court has warned against expanding the concept of substantive due process because the "guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended" and "judicial self-restraint requires [courts] to exercise the utmost care . . . ." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). This is particularly true for parental rights, which are a "murky area of unenumerated constitutional rights" where courts must "tread lightly" to avoid placing important matters "outside the arena of public debate and legislative action." *Maddox*, 727 F.3d at 1120 (citations omitted).

IV

Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted for Counts I through III. Specifically, Defendants contend that Plaintiffs fail to allege facts necessary to establish a substantive due process violation because

Defendants' alleged conduct does not shock the conscience as defined by binding case law.[2] ECF No. 56 at 23. This Court agrees.

A

This Court begins by determining the benchmark for when conduct rises to the level of conscience-shocking as a legal concept as opposed to a subjective judgment. There are very few cases where the Eleventh Circuit has found conduct to be conscience-shocking, which is not surprising given the high bar plaintiffs face in establishing such claims. This Court is aware of only one Eleventh Circuit case, *Maddox v. Stephens*, that addressed a substantive due process claim that involved parental rights and conscience-shocking conduct, albeit in the context of qualified immunity. [3] As such, this Court begins its analysis with *Maddox*.

---

[2] Defendants also argue that their alleged conduct does not infringe on Plaintiffs' constitutional rights at all, relying on cases like *Doe v. Irwin*, which held that a state-run health clinic with a program that provided free birth control to minors did not violate the plaintiffs' parental rights because (i) the program was completely voluntary and (ii) the program did not actually interfere with the parents' ability to participate in the decisions of their minor children on issues of sexual activity and birth control. 615 F.2d 1162, 1168–1169 (6th Cir. 1980). Though Plaintiffs do not allege that A.G.'s participation with the implementation of the Support Plan was involuntary, the present case is more complicated than *Doe*, as Plaintiffs allege that Defendants interfered with their protected liberty interest to make *mental health decisions* for their child. It cannot be said that Defendants did not interfere with that liberty interest, as Defendants implemented a Support Plan for A.G. that contradicted Plaintiffs' decisions regarding A.G.'s alleged gender confusion. This allegedly ran contrary to the mental health outcomes that Plaintiffs were seeking through private counseling and allegedly interfered with Plaintiffs' ability to make mental health decisions for A.G. Even so, since this Court is dismissing this case on other grounds, it need not resolve this question.

[3] This Court is aware of *Arnold v. Board of Education of Escambia County.*, in which the Eleventh Circuit determined that a school official allegedly coercing a minor child into obtaining an abortion unconstitutionally interfered with her parents' protected liberty interest in maintaining family relations. 880 F. 2d 305, 311–314 (11th Cir. 1989). This Court, however, does not find

In *Maddox,* a mother brought a substantive due process claim against a social worker for "interfering with her protected liberty interest in the care, custody, and management" of her hospitalized child, J.O., after the social worker determined that J.O. should be discharged to her grandmother and not her mother. *Maddox*, 727 F.3d at 1113–18. The social worker made this decision after finding that J.O.'s mother was unfit to care for her and that her grandmother, who was J.O.'s only living relative with the necessary training to care for her, should receive custody of J.O. after discharge. *Id.* At issue on appeal was whether the social worker was entitled to qualified immunity at the summary-judgement stage, which required the Eleventh Circuit to determine if the social worker's conduct—granting custody of J.O. to her grandmother instead of her mother—was "arbitrary or conscience shocking" such that a reasonable social worker would have been on notice that they were violating the plaintiff's substantive due process rights. *Id.* at 1119–20. The Eleventh Circuit ultimately ruled that the social worker was entitled to qualified immunity. It found that it would not have been clear to a reasonable social worker if her conduct was arbitrary or conscience-shocking, as well as that it would have been "unthinkable"

---

*Arnold* controlling in this case, because subsequent Supreme Court and Eleventh Circuit cases have made it clear that the "conscience-shocking" standard is used to determine if conduct rises to the level of a substantive due process violation. *Arnold* does not apply that test. Rather, the Eleventh Circuit in *Arnold* determined outright that parental rights are violated when minor children are coerced to refrain from discussing such intimate decisions with parents. Here, Plaintiffs do not allege that A.G. was coerced by Defendants, so *Arnold* is also distinguishable on those grounds.

14

to place J.O. in the custody of her mother given the mother's inability to care for her. *Id.* at 1126–1127.

Although *Maddox* proceeded to the summary-judgement stage, *Maddox* illustrates the high bar that Plaintiffs face in bringing their substantive due process claims, as the Eleventh Circuit ultimately found that even an intentional and direct interference with one's parental liberties was not enough to put a government employee on notice that his or her conduct shocked the conscience. Furthermore, *Maddox* also stands for the proposition that even the *most severe* infringement of parental liberties—intentionally depriving a parent of custody over their child—is not, by itself, conduct that is clearly conscience-shocking as defined by binding case law. In short, more is required for a government actor's conduct to rise to the conscience-shocking level.

So, what else is necessary for a government actor's conduct to shock the conscience? The Eleventh Circuit has indicated that only "extraordinary circumstances," *Nix v. Franklin Cty. Schl. Dist.*, 727 F.3d 1109, 1379 (11th Cir. 2002), involving the "most egregious" government conduct, *Maddox*, 727 F.3d at 1119 (citations omitted), can be considered conscience shocking as defined by binding case law. Such was the case in *Neal v. Fulton County Board of Education*, where a high school coach allegedly violated a student's substantive due process right to be free from excessive corporal punishment. 229 F.3d 1069 (11th Cir. 2000).

In reversing the district court's dismissal, the Eleventh Circuit determined that a high school coach's alleged misconduct—deliberately striking a student in the eye with a metal weight, using enough force to cause permanent blindness—amounted to conscience-shocking conduct sufficient to state a claim. *Id*. To the Eleventh Circuit, the coach's alleged conduct "reflect[ed] the kind of egregious official abuse of force" that would give rise to a substantive due process claim, since the coach allegedly acted with the intent to harm the student using an "obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury." *Id.* at 1076.

Thus, *Neal* provides an answer for when conduct is egregious enough, and circumstances extraordinary enough, for conduct to cross the conscience-shocking threshold and become actionable under the substantive due process clause at the pleading stage. The "more" that is needed is evidence that the conduct was malicious or abusive in nature and was intended to cause harm. This analysis is consistent with how other circuits have approached the issue of when intentional conduct rises to a level that shocks the conscience. *See McConkie v. Nichols*, 446 F.3d 258, 261 (1st Cir. 2006) ("Even violations of the law resulting from bad faith do not necessarily amount to unconstitutional deprivations of substantive due process . . . [c]onscience-shocking conduct usually entails physical or psychological abuse . . . ."); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001) ("[M]alicious and

16

sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience."); *Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999) (holding that an elementary school teacher's alleged fabrication of sexual abuse allegations against plaintiffs—which allegedly caused the destruction of the plaintiffs' marriage and plaintiffs' loss of custody over their daughter for almost three years—amounted to an "abusive, irrational, malicious, and oppressive use of government power" that clearly shocked the conscience).

But what about conduct that falls short of egregious abuse that is intended to cause harm? In other words, how high is the bar for plaintiffs who bring claims based on a deliberate indifference to one's protected liberty interests? To answer that question, this Court turns to *Nix v. Franklin County School District*. 727 F.3d 1109 (11th Cir. 2002). In *Nix*, the Eleventh Circuit declined to hold that a high school teacher's conduct was conscience-shocking where the teacher's in-class experiment with a live wire during a "voltage-reading demonstration" resulted in the death of a student who touched an exposed section of the wire. *Id*. at 1374. The plaintiff in *Nix* alleged that the high school teacher acted with deliberate indifference to the risks his voltage-reading demonstration posed to students' safety, since the high school teacher was aware of the risk of electrocution associated with his demonstration and that students had electrocuted themselves and others during previous

demonstrations. *Id*. at 1376. Whether or not deliberate indifference could give rise to a substantive due process claim was a matter of first impression for the Eleventh Circuit, which required the *Nix* court to "decide if the due-process umbrella spreads wide enough to shelter claims of . . . deliberate indifference," which the court found to "fall in the middle range of culpability spectrum." *Id*. at 1377–78. Although the Eleventh Circuit declined to provide an ultimate answer to that question in *Nix*, it did decide that the high school teacher's conduct did not rise to the level of conscience-shocking. *Id*. The *Nix* court came to this conclusion by comparing the facts in *Nix* to those in *Dacosta v. Nwachukwa*, where the Eleventh Circuit had found that a college professor intentionally striking a student did not give rise to a substantive due process violation. *Id.* at 1378*; see also Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002). The *Nix* court interpreted *Dacosta* to stand for the proposition that even an "act at the upper end of the culpability spectrum—an intentional act—will not necessarily support a [substantive] due-process claim." *Nix*, 727 F.3d at 1378. The *Nix* court further reasoned that "if a teacher's intentional tort (as in *Dacosta*) does not 'shock the conscience,' the deliberate indifference attributed, in the case at bar, to [the high school teacher] cannot survive summary judgement." *Id*. at 1378–79. [4]

---

[4] This Court notes that just because the claims in *Nix* were addressed at summary judgement does not mean that Plaintiffs' claims necessarily survive a motion to dismiss. Here, this Court is required to determine if Plaintiffs state a claim for which relief can be granted. The Eleventh

*Nix* suggests that substantive due process claims based on deliberate indifference raise an already high bar even higher. Even a case where a government actor performed an electrical experiment with a live wire—knowing that students could electrocute themselves on exposed sections of the wire and had done so in the past—and which ultimately resulted in the *death of a student*, did not shock the conscience. *Id*. 1378–1379. The Eleventh Circuit's holding in *Nix* is by no means an isolated incident, as the Eleventh Circuit has routinely reiterated its wariness of substantive due process claims based on deliberate indifference to one's protected liberty interests. The Eleventh Circuit has made clear that deliberate indifference alone, no matter how severe the alleged injury, does not rise to the level of conscience-shocking as defined by binding case law. *See Davis v. Carter*, 555 F.3d 979, 980–984 (11th Cir. 2009) (holding that deliberate indifference to student safety by school officials, without more, is not conscience-shocking behavior); *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020) ("We doubt that deliberate indifference can ever be "arbitrary" or "conscience shocking" in a non-custodial setting."); *Brown v. Greer*, No. 21-10694, 2021 WL 5085352, at *3 (11th Cir. Nov. 2, 2021) (finding that "deliberate indifference to [the plaintiff's] safety in

---

Circuit's holding in *Nix*, that the high school teacher's deliberate indifference to student safety does not shock the conscience, is instructive to this Court in its determination that Plaintiffs fail to state a claim for which relief can be granted.

a non-custodial school setting . . . ,without more, does not state a valid substantive due process claim").[5]

B

This Court now turns to the present case. Before this Court begins its analysis, however, it reiterates the high bar that all plaintiffs face when bringing a substantive due process claim. *See Nix*, 420 F.3d at 1379 ("Substantive due process is a doctrine that has been kept under tight reins, reserved for *extraordinary circumstances.*") (emphasis added). This high bar, however, should come as a shock to no one. Judges on the Eleventh Circuit have described substantive due process as being "untethered from the text of the Constitution," and that "on its face . . . the Due Process Clause guarantees no substantive rights, but only (as it says) process. . . ." *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (quotations omitted). Even a current Supreme Court justice does not believe that the due process clause permits a claim for substantive due process. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct.

---

[5] Within the Eleventh Circuit, substantive due process claims brought by students against school officials in public-school settings have only ever been allowed to proceed when students allege that they received unconstitutional corporal punishment. *See Brown* 2021 WL 5085352, at *3. This Court recognizes that such cases require courts to determine if a student received "intentional, obviously excessive corporal punishment," which requires additional analysis beyond just determining if a state actor's conduct is "conscience-shocking" as defined by binding case law. However, because these cases still require courts to determine if a state actor's conduct shocks the conscience, the Eleventh Circuit's analysis in these cases is helpful in deciding the present case. *See Neal*, 229 F.3d at 1076 ("[T]he ['intentional, obviously excessive corporal punishment' standard] that we adopt today will, we think, properly ensure that students will be able to state a claim *only* where the alleged corporal punishment truly reflects the kind of egregious official abuse of force that would violate substantive due process protections in other, non-school contexts.")

2228, 2301 (2022) (Thomas, J., concurring) ("[S]ubstantive due process is an oxymoron that lacks any basis in the Constitution . . . [t]he notion that a constitutional provision that guarantees only 'process' before a person is deprived of life, liberty, or property could define the substance of those rights strains credulity for even the most casual user of words.") (citations omitted). Nonetheless, binding precedent recognizes a right to substantive due process and this Court must apply that precedent, including the cases that establish the high bar Plaintiffs face in establishing their claims.

Although it should be apparent, this Court also emphasizes that "conscience-shocking" is a term of art used to describe a legal standard that is independent of the subjective feelings of Plaintiffs, other parents of students at Deerlake, or the community at large. It also does not represent the subjective views of this Court, but instead represents a standard that has been developed through case law over the course of several decades. As such, this Court notes that "[e]ven conduct that is untoward, unfortunate, and understandably upsetting does not necessarily rise to the level of a substantive due process violation." *Maddox*, 727 F.3d at 1127 (citations omitted).

Returning to Plaintiffs' claims, they allege that Defendants acted with deliberate indifference to their protected liberty interests in familial privacy, directing the upbringing of A.G., and directing the medical and mental health

decision-making for A.G. At its core, this is a case where Defendants allegedly (i) let A.G. voluntarily chose a preferred name and pronouns that they knew Plaintiffs didn't agree with, (ii) didn't seek Plaintiffs' input regarding A.G.'s name choice, pronoun choice, or other elements of A.G.'s Support Plan, (iii) didn't notify Plaintiffs about the September Meeting or the Support Plan because they knew Plaintiffs would not agree with A.G.'s decision, and (iv) dragged their feet in disclosing the September Meeting and Support Plan to the Plaintiffs. This is not a case where Plaintiffs allege that their child was singled out by Deerlake staff and forced to adopt a support plan against their child's will. Nor is this a case where Plaintiffs allege that Deerlake staff publicly accused Plaintiffs of abusing their child or tried to cause Plaintiffs to lose custody of their child. This is also not a case where Deerlake staff were forewarned that a child's support plan was exacerbating the child's mental health concerns, but they pursued it regardless of such warning, resulting in the child's self-harm or suicide.

Essentially, Plaintiffs allege that Defendant Thomas and others met with A.G. to discuss and implement a plan regarding the child's preferred name and pronouns, that they did so without informing Plaintiffs and wrongfully concealed the September Meeting and Support Plan from Plaintiffs, and that elements of the

Support Plan were contrary to Plaintiffs' express wishes.[6] Once the September

Meeting came to light,[7] Plaintiffs allege Defendant Oliveri implied to them that A.G.

would not be safe at home when explaining the reason for concealing the September

Meeting and Support Plan.[8] Plaintiffs also allege that the Leon County School Board

and Defendant Hanna authorized Deerlake faculty to conceal information from

parents through enacting the 2018 Support Guide, and that Defendant Rodgers

trained them to do so. Plaintiffs also take issue with Defendants' alleged

misrepresentation of the law and misstatements about the law that Defendants knew

or should have known with respect to the 2018 Support Guide in general, A.G.'s

---

[6] Plaintiffs do not allege that that A.G. was forced or coerced into attending the September Meeting or was otherwise an unwilling participant. To the contrary, Plaintiffs allege that A.G. approached Defendant Thomas and asked directly to use a preferred name and preferred pronouns. ECF No. 38 ¶ 109. Plaintiffs do not allege that A.G. was forced or coerced into choosing a preferred name, preferred pronouns, or other elements of the Support Plan. Nor do Plaintiffs allege that A.G. requested Plaintiffs to be present at the September Meeting during the creation of the Support Plan or that Defendants ignored such requests.

[7] Plaintiffs do not allege that Defendants forced or coerced A.G. into keeping the September Meeting or Support Plan secret from Plaintiffs. To the contrary, Plaintiffs allege that they learned of the September Meeting after A.G. brought it up to them. ECF No. 38 ¶ 102. Furthermore, Plaintiffs allege that Defendants' policy regarding the disclosure of student support plans was enacted for student safety and Plaintiffs do not allege that information was withheld maliciously. ECF No. 38 ¶¶ 47, 107 (noting language from the 2018 Support Guide, which states that "[s]ome students are not able to be out at home because their parents are unaccepting of LGBTQ+ people . . . [a]s many as 40% of homeless youth are LGBTQ+, many of whom have been rejected by their families . . . . Outing students to their parents can literally make them homeless").

[8] It is questionable that this is a reasonable inference that can be drawn from Defendant Oliveri's statement, as Plaintiffs also allege that she was speaking about the 2018 Support Guide generally. ECF No. 38 ¶ 107 ("Mrs. Oliveri further stated that *the protocol* of not including parents without children's approval was in place to protect *the children's* safety. . . .") (emphasis added).

Support Plan, A.G.'s school records, and A.G.'s privacy rights in general.[9] And Plaintiffs point to A.G.'s 504 Plan and ADHD diagnosis—which Plaintiffs argue are "particular circumstances" that support a showing that Defendants alleged conduct shocks the conscience.[10]

Accepting all of Plaintiffs' allegations as true and construing them in a light most favorable to Plaintiffs, Plaintiffs do not state a substantive due process claim. In other words, Plaintiffs do not plead sufficient facts that demonstrate that Defendants' alleged conduct was so egregious, or created such extraordinary circumstances for Plaintiffs, that a reasonable jury would be permitted to find that Defendants' deliberate indifference to their liberty interests shocks the conscience as defined by binding case law. Considering the Eleventh Circuit's decision in *Nix*, that if a government actor's deliberate indifference to serious risks to student safety that he himself created—which ultimately resulted in the *death of a child*—does not shock the conscience, then Plaintiffs' allegations also fall short of this standard.[11] *See Nix*, F.3d 1379.

---

[9] When considering Defendants' alleged conduct in its totality, Defendants alleged misstatements about the law that they "knew or should have known" cannot elevate Defendants conduct to the conscience-shocking level as defined by binding case law, because negligence is insufficient to establish a substantive due process violation. *Lewis*, 523 U.S. at 848.

[10] Plaintiffs do not allege that Defendants acted with the intent to exploit A.G.'s ADHD diagnosis during the September Meeting or the implementation of A.G.'s Support Plan.

[11] This Court does not seek to minimize or downplay the alleged damages that Plaintiffs claim to have suffered as a result of Defendants' alleged conduct, which include allegedly severe

C

Plaintiffs also filed a notice of supplemental authority with this Court, ECF No. 63, that included a copy of *Tatel v. Mount Lebanon School District*, No. CV 22-837, 2022 WL 15523185, at *2 (W.D. Pa. Oct. 27, 2022). *Tatel* is a recent decision from the U.S. District Court of the Western District of Pennsylvania, where the *Tatel* court allowed the plaintiffs' substantive due process claims to proceed against a school board, several school officials, and a first-grade teacher. The claims challenged the schools' policy of permitting the teacher's mandatory instruction on gender dysphoria and transgender transitioning to her students. *Id*. at *1–2. This Court does not find the decision in *Tatel* persuasive because the circumstances in that case differ significantly from those here. The most important distinction is that *Tatel* involved a challenge to an elementary school's de facto policy. *Id*. at *1. Thus, the claims in *Tatel* are entirely different from those in the present case, where Plaintiffs seek to recover damages based on Defendants' alleged conduct—not the contents of the amended 2018 Support Guide. Accordingly, *Tatel* did not determine, nor did it need to, whether the defendants' alleged conduct in that case rose to the

---

emotional distress and an exacerbation of A.G.'s psychological and educational difficulties, ongoing emotional and psychological damage to Plaintiffs' family dynamic, and costs associated with providing educational alternatives to A.G. These are all serious damages, especially for a child as young as A.G. However, under *Nix*, this Court must not look to the severity of Plaintiffs' alleged injuries alone to determine if Plaintiffs state a valid substantive due process claim. Plaintiffs must also allege that Defendants' conduct was malicious or abusive and was intended to cause harm.

level of conscience-shocking necessary to support a substantive due process claim. Instead, its analysis focused on the level of scrutiny applicable to the school's de facto policy and the application of that scrutiny. *Id*. at 7–9. In short, the plaintiffs in *Tatel* challenged a policy and Plaintiffs here challenge conduct, making Tatel is distinguishable.

*     *     *

Parental liberty interests under the U.S. Constitution are a "murky area of unenumerated constitutional rights," *Maddox*, 727 F.3d at 1120, and this Court must exercise great caution when reviewing such cases. The Eleventh Circuit has repeatedly recognized that plaintiffs face an incredibly high bar when bringing substantive due process claims, especially claims based on deliberate indifference, and that the U.S. Constitution does not protect against every encroachment of one's liberty interests. While Defendants alleged conduct may give rise to other claims, Plaintiffs fail to state a substantive due process claim because Defendants' alleged conduct does not rise to the level of conscience-shocking as defined by binding case law. Accordingly, Plaintiffs' federal claims are **DISMISSED without prejudice**.[12]

---

[12] To be clear, this Court is not holding that Plaintiffs have no claims against Defendants or that there are no additional facts that Plaintiffs could allege that would elevate Defendants' alleged conduct to the level of conscience-shocking as defined by binding case law. This Court has simply determined that Plaintiffs do not, at this juncture, allege sufficient facts in their amended complaint to meet the high bar to state a substantive due process claim.

V

In addition to their federal substantive due process claims, Plaintiffs allege two claims under the Florida Constitution. In bringing these claims, Plaintiffs ask this Court, as a matter of first impression, to define the contours of the Florida Constitution and decide what substantive due process rights it provides to parents. The Eleventh Circuit has routinely encouraged district courts to decline supplemental jurisdiction when federal claims are dismissed prior to trial, such as the case here. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."). This is because "concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed." *Silas v. Sheriff of Broward Cnty.,* --- F.4th ---, 2022 WL 17662925, at *2 (11th Cir. 2022). The Supreme Court has also cautioned district courts against exercising supplemental jurisdiction over state-law claims once federal claims are dismissed, holding that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise [supplemental] jurisdiction . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Given that Plaintiffs' state-law claims raise novel and complex issues of law under the Florida Constitution, the "balance of factors" here undoubtedly points toward declining supplemental jurisdiction. Florida courts should decide such questions regarding the rights afforded to Florida citizens under the Florida Constitution. As such, it is within this Court's discretion to decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims on these grounds. *See* 28 U.S.C. § 1367(c)(1), (c)(3) ("The district courts may decline to exercise supplemental jurisdiction [] if . . . (1) the claim raises a novel or complex issue of state law . . . (3) the district court had dismissed all claims over which it has original jurisdiction . . . ."). Accordingly, Plaintiffs' state-law claims are also **DISMISSED without prejudice**.[13]

Accordingly,

**IT IS ORDERED:**

1. Defendants' motion to dismiss, ECF No. 56, is **GRANTED**.

2. Plaintiffs' amended complaint, ECF No. 38, is **DISMISSED without prejudice**.

---

[13] The period of limitations for Plaintiffs' state-law claims "shall be tolled while the claim[s are] pending and for a period of 30 days after [they are] dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). This Court notes that it cannot remand this case to state court because it was filed in federal court first, and thus, must be dismissed.

3. Plaintiffs may file a second amended complaint **on or before January 9, 2023.**[14] Plaintiffs may also forgo amending their complaint and choose instead to appeal this Order or to pursue their claims in state court. If Plaintiffs decide to appeal this Order or pursue their claims in state court, Plaintiffs shall file a notice with this Court in lieu of an amended complaint **on or before January 9, 2023**, so that this Court may enter judgment and close the file.

**SO ORDERED on December 22, 2022.**

<u>s/Mark E. Walker</u><br>
**Chief United States District Judge**

---

[14] Normally, this Court gives plaintiffs fourteen days to file an amended complaint. However, given that there are several major holidays at the end of December, this Court will allow Plaintiffs to have additional time to amend.